IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
Northern Division

GREAT LAKES EXPLORATION
GROUP LLC

      Plaintiff        Civil Action No. 1:04-CV-375

v.                HON. ROBERT HOLMES BELL

The Unidentified, Wrecked and (For
Salvage-Right Purposes), Abandoned
Sailing Vessel, her tackle, apparel,
appurtenances, cargo, etc. located
within a circle having a radius of 3.5
statute miles, whose center point is at
coordinates 45° 32.8' North latitude and
86° 41.5' West longitude,

      *In Rem*

      Defendant.

and

MICHIGAN DEPARTMENT OF HISTORY,
ARTS AND LIBRARIES AND MICHIGAN
DEPARTMENT OF ENVIRONMENTAL
QUALITY,

      Intervening Defendants

---

### AFFIDAVIT OF WAYNE LUSARDI IN
### SUPPORT OF MOTION TO DISMISS

STATE OF MICHIGAN   )
              )
COUNTY OF _____ )

  Now comes Wayne Lusardi, and, being first duly sworn, states as follows:

  1.  I am employed by the Michigan Department of History, Arts and Libraries as State Maritime Archaeologist stationed at Thunder Bay National Marine Sanctuary and

Underwater Preserve in Alpena. I received a MA degree in Maritime History and Nautical Archaeology from East Carolina University in 1998 and a BS in Anthropology (Archaeology) from Illinois State University in 1990.

2. Before arriving at Thunder Bay, I was employed as an archaeological conservator for the Mariners' Museum in Newport News, Virginia, and led the museum's excavation of the USS *Monitor's* turret after its recovery in August 2002. Prior to working on the *Monitor* project, I spent four years on the Blackbeard shipwreck project in North Carolina. I also worked as an archaeologist for Tidewater Atlantic Research, Texas A&M University, and the Illinois State Museum. I have an extensive background in maritime and terrestrial archaeology, artifact conservation, and material culture studies.

3. I am responsible for the research, documentation, preservation, and management of nearly 200 shipwrecks located in or around Thunder Bay. I regularly conduct fieldwork, research, education, and outreach programs. As state maritime archaeologist, I am also involved with submerged cultural resources' research and management of the nearly 1,500 shipwrecks located throughout the state of Michigan.

4. The discovery of a 45 ton, 40-60 foot long, wooden, hand-built sailing vessel with a beam of 10-22 feet, and a crew of five, lost and abandoned near Poverty Island prior to the 20th Century, would, without question, be a significant find. Small sailing craft are particularly rare in the archaeological record of the Great Lakes, and a vessel of this description would greatly enhance our understanding of vernacular craft. The allegation that the original owners never salvaged the wreck indicates it is truly an abandoned vessel, and increases the probability of material remains such as cargo, tools, arms, and personal effects, being associated with the shipwreck. Even if broken apart and distributed widely across the lake bottom, shipwrecks can

be valuable in our understanding of past technologies, trade patterns and commerce, as well as social, political and religious realms. If this vessel can be linked to a particular person or expedition of historic significance it would greatly contribute to the maritime heritage of not only the state of Michigan, but also the Great Lakes' region and the nation as a whole. If the wreck represents a foreign vessel operating with the authority of and possibly under the auspices and/or control of a foreign sovereign, the historic implications will automatically transcend international boundaries.

5. Without information concerning the specific location and condition of a vessel, it is difficult to accurately determine its historical significance.

6. On June 22, 2004, I received several digital images from Steve Libert, which are attached to this affidavit as Exhibit A. He represented the images as photos of a wreck site in northern Lake Michigan, and he expressed his belief that the photos show a part of a vessel. His description of what he believes the photos represent was consistent with the description of the alleged vessel in the amended complaint.

7. The photos attached as Exhibit A portray an isolated wooden artifact, apparently less than ten square feet in area, the original function of which cannot be determined from the photos alone. It appears that the artifact has been driven into the bottomland with sufficient force to be sustained by the soil in an upright position and affixed so that it would be necessary to use mechanical devices to reveal the base of the artifact. It appears heavy, so that it would be necessary to use mechanical devises to lift it from the bottom. There is no visible evidence in the photos of any other vessel structure below the bottomland surface or of any other structure that is sustaining the artifact in the vertical position. The dimly lit photos indicate that any structure

sustaining the vertical artifact has been completely incorporated into the bottomland and that it will be necessary to dredge to reveal anything to which the vertical artifact is attached.

8. Finds of the sort portrayed in Exhibit A are often reported to the Department of History, Arts and Libraries as shipwrecks or parts of shipwrecks. I have personally investigated several such reports. Investigations seldom provide sufficient information to allow for determination that the isolated structures were constituents of a vessel or to allow for reasonable determination of its origin or age.

9. I do not know the location of this particular find and cannot reasonably initiate a search for the object portrayed in exhibit A nor for any other wrecked wooden sailing vessel located within the subject 38.5 square mile area of Lake Michigan based only on the description of a vessel as provided in the Amended Complaint.

10. So far as I know, Great Lakes Exploration, LLC has not requested any of the state permits necessary to remove any mineral, organic, or other material from the bottomland or waters of Lake Michigan by any means, nor to remove, alter, or destroy any abandoned property in, on, under, or over the bottomlands of Lake Michigan, and it has not transmitted any abandoned property so removed to the Department of History, Arts and Libraries, as required by MCL 324.76107.

11. I state the matters asserted herein of my own knowledge and if called upon to testify concerning these matters would so testify.

FURTHER AFFIANT SAYETH NOT.

_Wayne Lusardi_
Wayne Lusardi

Subscribed and sworn to before me
this _29_ day of _September_, 2004

_Christine A. Accetta_, Notary Public
_Alpena_, County, Michigan
My Commission Expires: _12-13-07_

**CHRISTINE A. ACCETTA**
Notary Public, Alpena County, MI
My Commission Expires Dec. 13, 2007

s:nrd/ac/cases/open/great lakes exploration 04ag/AFFIDAVIT LUSARDI