IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
Northern Division

GREAT LAKES EXPLORATION
GROUP LLC

          Plaintiff                      Civil Action No. 1:04-CV-375

v.                                          HON. ROBERT HOLMES BELL

The Unidentified, Wrecked and (For
Salvage-Right Purposes), Abandoned
Sailing Vessel, her tackle, apparel,
appurtenances, cargo, etc. located
within a circle having a radius of 3.5
statute miles, whose center point is at
coordinates 45° 32.8' North latitude and
86° 41.5' West longitude,

          *In Rem*

          Defendant.

and

MICHIGAN DEPARTMENT OF HISTORY,
ARTS AND LIBRARIES AND MICHIGAN
DEPARTMENT OF ENVIRONMENTAL
QUALITY,

          Intervening Defendants

---

| | |
|---|---|
| Richard Thomas Robol | James R. Piggush |
| Robol & Winkler LLC | Assistant Attorney General |
| 555 City Park Avenue | Environment, Natural Resources, |
| Columbus, OH  43215 | and Agriculture Division |
| 614/559-3846 | P.O. Box 30755 |
| | Lansing, MI  48909 |
| Roger W. Boer | 517/373-7540 |
| Roger W. Boer, LLC | |
| 161 Ottawa Avenue, NW | |
| Grand Rapids, MI  49503 | |
| 616/235-3500 | |

---

BRIEF IN SUPPORT OF MOTION TO DISMISS
ORAL ARGUMENT REQUESTED

## Introduction

Plaintiff, Great Lakes Exploration Group, LLC, has filed its Complaint, asking the court to arrest "an unidentified, wrecked and (for salvage-right purposes), abandoned sailing vessel, her tackle, apparel, appurtenances, cargo, etc located within a 38.5 square mile area with a radius of 3.5 miles whose center point is at coordinates 45 degrees, 32.8' North latitude and 86 degrees, 41.5' west longitude." Plaintiff claims to know that the original owner was an unnamed foreign research expedition. But, Plaintiff does not describe any physical evidence of a ship or identify its find, except by giving a range of dimensions the supposed ship might have had at the time of its sinking and saying that it sank sometime during the over two hundred year period before the 20th century, when such sailing ships were used on the Great Lakes, and that it now rests somewhere in a 38.5 square mile area of Lake Michigan. Plaintiff requests that after the arrest of the alleged sailing vessel, the court grant it exclusive title to the ship, and dominion and control as salvor-in-possession, exclusive possession and the court's protection. Alternatively, Plaintiff requests a salvage award of $35,000,000, based upon the alleged marine peril of the vessel and Plaintiff's voluntary rescue services. And, once again, Plaintiff asks for the court's protection from interference by others in its activities within the 38.5 square mile area.

Interveners, Michigan Department of History, Arts and Libraries (DHAL) and Michigan Department of Environmental Quality (DEQ), request the court to dismiss this action for lack of jurisdiction. Not only is it impossible for the court and any claimants to identify the res that is to be arrested, but, based upon the allegations of the Amended Complaint together with additional information Plaintiff has provided to Interveners, the court lacks subject matter jurisdiction. That information discloses that any vessel such as that described in the complaint belongs to the State of Michigan and is not subject to salvage award.

### I. Based upon the present pleadings, the court lacks jurisdiction in this matter because it is unable to authorize arrest of any recognizable res.

As this court noted in its June 23, 2004 Order, this action is governed by Fed R Civ P Suppl E(2), which imposes special pleading requirements in an in rem action.

(2) Complaint; Security.

   (a) Complaint. In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

Plaintiff's Amended complaint purports to provide the description of a vessel when it went down, a description that applies to vessels that have plied this area of the Great Lakes for over three centuries. Plaintiff only eliminates boats built in the most recent century from the inventory of ships that might satisfy the physical description of the original vessel. The Amended Complaint fails to disclose the present condition or the wreck or describe any of its elements and fails to disclose the present location of the wreck within a 38.5 square mile area. It is impossible to inspect the supposed wreck, since the Amended Complaint merely invites a fishing expedition for an unrecognizable prey that allegedly occupied no more than 1300 square feet when it went down. Additional information reported to Mr. Wayne Lusardi, reveals that the "wreck" occupies about one square foot of bottomland and has a surface area of about 10 square feet. (Affidavit of Wayne Lusardi).

The description provided in the Amended Complaint incidentally includes the area where Mr. Libert, who executed the verified Amended Complaint, believes that the Captain Lawrence, a vessel originally build for Marshall Field of Chicago, lies. (Affidavit of Thomas Graf). Mr. Libert admits that the Captain Lawrence has obsessed him due to his belief that it is a ship of gold. See, *Fairmont Int'l Exploration, Inc v The Shipwrecked Vessel, known as the Captain*

*Lawrence*, 105 F3d 1078, 1080 (6th Cir, 1997), vacated, 523 US 1091, 140 LEd 2d 790, 118 S Ct 1558 (1998). The state's ownership of the Captain Lawrence has been established by final judgment. *Fairmont Int'l Exploration, Inc v The Shipwrecked Vessel, known as the Captain Lawrence*, 245 F3d 857 (6th Cir 2001). Although the Captain Lawrence is not identified as the subject of the complaint, its location was represented to be within the locus of the purported wreck of a sailing vessel that Plaintiff seeks to reduce to its exclusive custody, control, possession and dominion, and seeks to salvage, exercising exclusive dominion and control over salvage operations. The arrest of the undefined ship described in the complaint would likely interfere with the state's preservation of any wreck of the Captain Lawrence, the ownership of which has been conclusively established.

The extraordinary claim of $35,000,000, salvage value makes it unlikely that any 18th or 19th century owner of a lost ship that drifted to the area of Poverty Island before reaching its final resting place would recognize its 45 ton, hand-crafted vessel as the vessel in question and state its claim in this action. [1]

The inability to arrest the vessel on the present complaint prevents the court from exercising in rem admirably jurisdiction, the only jurisdictional basis on which Plaintiff can obtain the title that it requests. *Dluhos v The Floating and Abandoned Vessel, Know as "New York,"* 162 F3d 63, 71 (2d Cir 1999).

Plaintiff previously amended the complaint in an effort to meet the requirements of Rule E. Given Plaintiff's failure to sufficiently identify the alleged vessel, Plaintiff may well seek to amend once again. However, to allow such amendment would not be consistent with justice. The amendment could not withstand a motion to dismiss. *Wade v Knoxville Utils Bd*, 259 F3f

---

[1] The requested salvage award suggests that Mr. Libert, who verified the Amended Complaint for Plaintiff still has gold, in mind.

452, 459-60 (6th Cir 2001). A complaint is properly dismissed where the court lacks subject matter jurisdiction. *Neighborhood Development Corp v Advisory Council on Historic Preservation*, 632 F2d 21, 23 (6th Cir 1980). The allegations of the Amended Complaint, together with additional facts Mr. Libert has disclosed to the Interveners reveal that the Court lacks jurisdiction to grant the requested relief.

> II. **Even if the complaint were specific enough to allow identification of the vessel, the complaint, together with the information plaintiff has provided the intervener, establishes that this action cannot proceed under the law of finds or salvage so that the court cannot exercise in rem jurisdiction because the vessel belongs to the State of Michigan.**

When considering a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. Rule 12(b)(1), the district court may look beyond the jurisdictional allegations in the complaint and consider whatever evidence is submitted. The burden is then on the Plaintiff to establish jurisdiction. *Fairport Int'l Exploration v. Shipwrecked Vessel Known as the Captain Lawrence*, 105 F.3d 1078, 1081 (6th Cir, 1997).

> Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Rogers v. Stratton Industries, Inc*., 798 F.2d 913, 915 (6th Cir. 1986). Moreover, the court is empowered to resolve factual disputes when subject matter jurisdiction is challenged. *Rogers*, 798 F.2d at 915, 918 (contrasting analysis under Rule 12(b)(6) where existence of genuine issues of material fact warrants denial of the motion to dismiss). *[Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir., 1990)]

When considering matters presented from outside the complaint on motion to determine jurisdiction, the court applies the standard for motion under Fed R Civ P 56, which was recently described, as follows:

> Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A dispute is genuine if a

reasonable jury could return judgment for the non-moving party. Id.

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)). [*DIRECTV, Inc. v. DeVries*, 302 F. Supp. 2d 837, 838 (WD MI, 2004)]

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992). [*Olson v. Home Depot*, 321 F. Supp. 2d 872, 876 (ED MI, 2004).]

In the present case, Plaintiff must respond to Intervener's motion by showing that the court has jurisdiction to award Plaintiff title and/or salvage pursuant to principles of admiralty in an in rem action. Based upon the record and the pleadings, it cannot do so. Defendant is entitled to dismissal for lack of jurisdiction.

The court summarized the law governing the present action *In Fairport International Exploration, Inc, v The Shipwrecked Vessel known as the Captain Lawrence,* 177 F3d 491, 498 (6th Cir, 1999):

> Under maritime law, those who wish to raise sunken ships are governed by either the law of salvage or the law of finds. The law of salvage applies when the original owner retains an ownership interest in the ship; a salvor receives a salvage award, but not title to the ship. See, e.g., *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 640 F.2d 560, 567 (5th Cir. 1981). Where the owner has abandoned the ship, however, recent doctrine applies the law of finds, vesting title in the finder of the ship. See Columbus-America, 974 F.2d at 464; *Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked and Abandoned Steam Vessel*, 833 F.2d 1059, 1064-65 (1st Cir. 1987); *Treasure Salvors*, 640 F.2d at 567. Whether the owner abandoned the ship thus determines which law applies, and, subsequently, who owns the ship. Intent on protecting the property rights of owners, admiralty courts recognize a presumption against finding abandonment. See, e.g., *Hener v. United States*, 525 F. Supp. 350, 356-57 (S.D.N.Y. 1981).

6

The 1987 passage of the ASA altered this approach. The ASA transfers to a State the title to all abandoned shipwrecks embedded in the submerged lands of the State. See 43 U.S.C. § 2105. The ASA expressly rejects the application of the maritime laws of salvage and finds. See 43 U.S.C. § 2106(a) ("The law of salvage and the law of finds shall not apply to abandoned shipwrecks to which section 2105 of this title applies."). If a diver now discovers a long-lost ship embedded in the submerged lands of a State, a finding of abandonment leaves the diver with neither title nor a salvage award (unless state law provides otherwise).

In this motion Michigan does not contest Plaintiff's allegations that the original owner abandoned the vessel and that no efforts have been made by or on behalf of the parties that Plaintiff believes to be the original owners "to salvage the wrecked and abandoned vessel, her engines, tackle, apparel, appurtenances, cargo, etc on any occasion." Such allegations relate to the rights of plaintiff under the law of finds.[2] *Fairport International, supra*. But, the Abandoned Shipwrecks Act (ASA), 43 USC 2101, *et seq*., establishes that an abandoned ship that is embedded, as disclosed by the photos attached to the affidavit of Mr. Wayne Lusardi as his affidavit Exhibit A, is not subject to the law of finds or law of salvage, and so, not subject to admiralty jurisdiction. 43 USC 2105(c).

By the ASA, the states are to protect the cultural heritage in certain abandoned shipwrecks embedded in or on state bottomlands. The United States recognizes that shipwrecks, understood to mean any vessel, wreck, cargo and other contents, 43 USC 2102, embedded in the submerged lands of a state, and/or on submerged lands of a state and included in or determined to be eligible for inclusion in the *National Register of Historic Places*, 43 USC 2105, are

---

[2] In the amended complaint, Plaintiff claims to know the successor-in-interest of the unnamed foreign research expedition that originally owned and then abandoned the vessel, never to attempt her salvage. The present willingness of that owner's successor to allow salvage is immaterial to the effort to obtain title, where the owner has already abandoned the vessel. The present owner of the vessel, that is, the State of Michigan, does not seek salvage as a matter of public policy.

7

irreplaceable resources for tourism, biological sanctuaries and historical research. 43 USC 2103(a)(1). Congress found that the responsibility for management of abandoned shipwrecks belongs to the states, 43 USC 2101. To implement that responsibility, the United States asserted title to any such abandoned shipwrecks and then simultaneously transferred title to those wrecks to the states. 43 USC 2105. This transfer extends to abandoned vessels firmly affixed in the submerged lands "such that the use of tools of excavation is required in order to move the bottom sediments to gain access to the shipwreck, its cargo, and any part thereof." 43 USC 2102(a). The ASA protects the states from any claims of ownership or interest based upon the maritime law of salvage or finds. 43 USC 2106.

Photos of the visible elements of the purported wreck reveal that, if it is a ship, it is embedded in the bottomland, as is the artifact that is currently visible. Attached to the affidavit of Wayne Lusardi, Michigan Marine Archaeologist, is a series of pictures Mr. Libert, Plaintiff's representative, represented to be pictures of the purported wreck. The photos show an artifact that appears to have been driven into the bottomland and is so deeply embedded into the bottomland that it is sustained in a vertical position, purportedly for at least a hundred years. There is no visible evidence at the surface of the bottomlands of anything below the surface to which the vertical artifact might be affixed, and, particularly, no indication of a ship superstructure below the surface to which it might be attached. The visible object appears to be stable and would probably have to be lifted from the soil by flotation devices, or the soil would have to be removed from the base to reveal any additional wreck. If the artifact in the photos relates to any ship, that ship is firmly buried in the bottom of Lake Michigan.

The photos do not portray a ship like the Brother Jonathan, the superstructure of which was visible on the surface and accessible beneath a thin layer of fine, loose and powdery

sediment that could be brushed aside by a diver's glove. *Deep Sea Research v The Brother Jonathan*, 883 F Supp 1343, 1355-1356 (D Cal, 1995), aff'd in part and vacated in part and remanded as *California v Deep Sea Research*, 523 US 491, 118 S Ct 1464, 140 L Ed2d 626 (1998). Nothing in the photo except the vertical artifact itself indicates anything below any sediment.

Based upon the allegation that Plaintiff has found an abandoned vessel and the condition of that vessel as disclosed in the photos, any such abandoned vessel is, by the operation of the ASA, the property of the State of Michigan, not subject maritime jurisdiction. 43 USC 2106(a). Consistent with the policies of the ASA that call for state regulation, 43 USC 2103, Michigan regulates the appropriation and exploration of such elements of its underwater cultural heritage, and itself declares its possessory right or title superior to that of any finder. MCL 324.76102(2).

### III.    Michigan possesses and owns vessels embedded in its bottomlands.

To the extent abandoned vessels are not covered by the ASA, the law of finds still applies. 43 USC 2106(b). However, by the common law exception to the law of finds relating to embedded vessels, *Klein v Unidentified, Wrecked and Abandoned Sailing Vessel*, 758 F2d 1511, 1514 (11th Cir 1985), any vessel evidenced by the photos attached to the Affidavit of Mr. Lusardi belongs to Michigan, subject to its regulation and to its sovereignty, even if the ASA does not apply.

Michigan is the owner of the unpatented Great Lakes bottomlands of the Great Lakes, since the inland waters and lands were transferred to the state at the time of statehood. *Pollard's Lessee v Hogan,* 44 US 212; 11 L Ed 565 (1845); *Illinois Central R Co v Illinois*, 146 US 387,

435; 13 S. Ct. 110; 36 L. Ed. 1018 (1892); *Nedwig v Wallace*, 237 Mich 14, 21, 208 NW 51 (1927); *Hilt v Weber*, 252 Mich 198, 203; 233 NW 159 (1930).

*Jupiter Wreck, Inc v Unidentified, Wrecked & Abandoned Sailing Vessel*, 691 F Supp 1377, 1386 (D Fl, 1988), stated the common law, embeddedness standard and described its application to shipwreck artifacts buried six and more inches deep in soil.

> Here, there can be little doubt that under the embeddedness exception to the common law of finds, JWI does not have a likelihood of success on the merits as to its claim to title and possession of the res. While perhaps only some of the artifacts may be buried or partially buried, it is established
>
>> that property need not be totally buried to satisfy the embeddedness requirement. What is affixed to the land belongs to the owner of that land. . . . Where a portion of a find is firmly affixed to the land, then even though other portions of it lie in loose surface soil, title to the entire find nevertheless rests with the land owner.
>
> *Chance[v Certain Artifacts Found and Salvaged from the Nashville]*, 606 F. Supp. [801] at 806-07 [(D. GA, 1984)]. Clearly, the res is embedded in soil which is owned by the state.

The court in *Chance v Certain Artifacts Found and Salvaged from the Nashville*, 606 F. Supp. 801 (D. GA, 1984) considered what portion of a shipwreck needs to be buried and found the answer is the rationale for the common law rule. The embeddedness exception to the law of finds it intended to secure lands to their owners and prevent continuing trespass.

> However, plaintiffs have not cited nor has this Court found any case which requires that the property be totally buried in order to satisfy the embeddedness requirement. In fact, case precedent is to the contrary.
>
> \*        \*        \*
>
> First, courts reason that a trespasser should not benefit from his wrongdoing. See, e.g., *Favorite v. Miller*, 176 Conn. 310; 407 A.2d 974 (1978). Second, courts seek to protect against the spoil and waste of the owner's property interest. *Elwes v. Briggs Gas Co.*, 33 Chancery Division English Law Reports, 562. Thus, in *Elwes*, noted above, Judge Chitty explained that:

> the chattel was vested in the plaintiff for the following reasons: Being entitled to the inheritance, and in lawful possession, he was in possession of the ground; not merely of the surface, but of everything that lay beneath the surface down to the center of the earth; and consequently in possession of the boat . . .. The boat was embedded in the land. A mere trespasser could not have taken possession of it. He could only have come at it by further acts of trespass involving spoil and waste of inheritance. The plaintiff then being in possession of the chattel, it follows then that the property in the chattel was vested in him."
>
> Similarly, in the instant case, the plaintiffs' diving has involved continuous acts of trespass. Further, their use of an airlift resulted in the type of waste anticipated by the *Elwes* ruling. [*Chance*, 606 F. Supp. at 805, 807.]

The artifact visible in the photos provided to Mr. Lusardi is affixed to Michigan bottomland, embedded so that is sustained in a vertical position. Michigan is the owner of any vessel embedded in its bottomlands as a matter of the maritime law of finds.

### IV. Michigan claims ownership and possession, superior to that of any finder, of abandoned property of historical value found on or within the bottomlands of the Great Lakes, and regulates activities concerning such objects

Based upon the ownership of embedded vessels established by the ASA and by its ownership of the bed of the Great Lakes and upon its sovereignty, Michigan regulates the manner in which any salvage or disturbance of a wreck site occurs. By Part 325, "Great Lakes Submerged Lands," MCL 324.32501, *et seq*., of NREPA, Michigan regulates fill, alteration or modification of all unpatented Great Lakes Bottomlands within its territory that were conveyed to it at statehood, MCL 324.32502. State Park Regulations apply by virtue of 1899 PA 171, now part 415, NREPA, MCL 324.41508, 1976 OAG No 5078, p 680. Also, by Part 761, "Aboriginal Records and Antiquities," MCL 324.76101, *et seq*., of NREPA., Michigan has asserted a possessory right and title to abandoned ships such as alleged in the complaint and reserved the right of exploration and excavation to itself, except according to law. *People v Massey*, 137 Mich App 480; 358 NW2d 615 (1984).

A ship, its gear, fittings, trappings, and equipment, that have been deserted, relinquished, cast away, or left behind and for which attempts at reclamation have been abandoned by owners and insurers, MCL 324.76101(a), and that relates to or is illustrative of Michigan history, including the statehood, territorial, colonial and historic periods, MCL 324.76101(f), or that is of recreational value, that is, of value to activity such as scuba diving that the public may engage in, belongs to the state, as follows:

> (1) The state reserves to itself the exclusive right and privilege, except as provided in this part, of exploring, surveying, excavating, and regulating through its authorized officers, agents, and employees, all aboriginal records and other antiquities, including mounds, earthworks, forts, burial and village sites, mines or other relics, and abandoned property of historical or recreational value found upon or within any of the lands owned by or under the control of the state.
> (2) The state reserves to itself a possessory right or title superior to that of a finder to abandoned property of historical or recreational value found on the state owned bottomlands of the Great Lakes. This property shall belong to this state with administration and protection jointly vested in the department and the department of history, arts, and libraries. [MCL 324.76102.]

The Act regulates the right to recover, alter, or destroy abandoned property, MCL 324.76107—324.76117, and requires a finder to deliver any property recovered without the required permits to the Department of History, Arts, and Libraries and the Department of Environmental Quality. MCL 324.76107(2).

The allegations of the complaint, together with information showing the present condition of the item that Plaintiffs characterizes as a shipwreck and its location in and on the bottomland, disclose that any such abandoned vessel is of historic value and controlled and owned by the state under Part 761. Wayne Lusardi, the State Aquatic Archaeologist, notes:

> A 45 ton, 40-60 foot long, wooden, hand-built sailing vessel with a beam of 10-22 feet, and a crew of five, lost and abandoned near Poverty Island prior to the 20th Century, would be a significant archaeological find. Small sailing craft are particularly rare in the archaeological record of the Great Lakes, and a vessel of this description would greatly enhance our understanding of vernacular craft. The fact that the wreck appears never to have been salvaged by the original owners or

> anyone thereafter indicates it is truly an abandoned vessel, and increases the probability of material remains such as cargo, tools, arms, and personal effects, being associated with the shipwreck. Even if broken apart and distributed widely across the lake bottom, shipwrecks can be valuable in our understanding of past technologies, trade patterns and commerce, as well as social, political and religious realms. If this vessel can be linked to a particular person or expedition of historic significance it would greatly contribute to the maritime heritage of not only the state of Michigan, but the Great Lakes' region and the nation as a whole. If the wreck represents a foreign vessel operating with the authority of and possibly under the auspices and/or control of a foreign sovereign, the historic implications will automatically transcend international boundaries. [Affidavit of Wayne Lusardi].

Accordingly, whether the purported abandoned vessel falls within the embedded standard of the ASA or only the standard of the common law, it is in or on the bottomlands of the State of Michigan and is of historical value as originally described, and belongs to the State of Michigan, not only as a matter of Michigan law, but also of the law of finds.

The State of Michigan, as owner of the soil, has declared its possession superior to that of any finder. A ship embedded in the soil belongs to the owner of the soil. *Klein v Unidentified Wrecked & Abandoned Sailing Vessel*, 758 F2d 1511, 1514 (11th Cir 1985).

The scope of the vessel's historical significance remains to be determined, including its eligibility for inclusion in the National Register of Historic Places. Those determinations depend upon disclosures about the wreck that Plaintiff so far declines to make, in hope that it can avoid Michigan regulation of the manner of any salvage created to serve protection of cultural heritage, not the rescue of vessels and their cargo fostered by Maritime law. *Subaqueous Exploration & Archaeology, LTD., v Unidentified, Wrecked and Abandoned Vessel*, 577 F Supp 597, 609 (D Md 1984); *Jupiter Wreck, Inc., v Unidentified, Wrecked and Abandoned Sailing Vessel*, 691 F supp 1377, 1393 (SD Fl 1988).

When reviewing an application to explore a wreck, the Department of Environmental Quality and Department of History, Arts, and Libraries are to determine whether the abandoned

property to be recovered has substantial historical value in itself or in conjunction with other abandoned property to be recovered. They may condition any permit to protect the resources, the public trust and general interest. MCL 324.76109(5).

> (5) The department and the department of history, arts, and libraries shall, with the advice of the committee, approve or disapprove an application for a permit within 30 days after the date a complete application is filed with the department. The department and the department of history, arts, and libraries may approve an application conditionally or unconditionally. A condition to the approval of an application shall be in writing on the face of the permit. The department and the department of history, arts, and libraries may impose such conditions as are considered reasonable and necessary to protect the public trust and general interests, including conditions that accomplish 1 or more of the following:
>   (a) Protect and preserve the abandoned property to be recovered, and the recreational value of the area in which recovery is being accomplished.
>   (b) Assure reasonable public access to the abandoned property after recovery.
>   (c) Conform with rules applying to activities within a Great Lakes bottomlands preserve.
>   (d) Prohibit injury, harm, and damage to a bottomlands site or abandoned property not authorized for removal during and after salvage operations by the permit holder.
>   (e) Prohibit or limit the amount of discharge of possible pollutants, such as floating timbers, planking, and other debris, which may emanate from the shipwreck, plane wreck, or salvage equipment.
>   (f) Require the permit holder to submit a specific removal plan prior to commencing any salvaging activities. Among other matters considered appropriate by either the department or the department of history, arts, and libraries , or both, the removal plan may be required to ensure the safety of those removing or assisting in the removal of the abandoned property and to address how the permit holder proposes to prevent, minimize, or mitigate potential adverse effects upon the abandoned property to be removed, that portion of the abandoned property which is not to be removed, and the surrounding geographic features.

As owner of the wreck according to the laws of the United States, according to general maritime law, and according to Michigan law, Michigan is entitled to determine whether any vessel such as described in the complaint is best left in place to illustrate the state's underwater cultural heritage, can be carefully explored and recovered under archaeological supervision, or is properly salvaged, as provided for by Michigan law. The State, as owner, cannot be compelled

to accept salvage. *Merritt & Chapman, Derrick & Wrecking Co v Unites States*, 274 US 611, 613; 47 S Ct 663l 71 L Ed 1232 (1927); *International Aircraft Recovery, LLC v Unidentified, Wrecked & Abandoned Aircraft*, 218 F3d 1255, 1263 (11th Cir 2000).

### V. This Court cannot adjudicate rights in property of the State of Michigan

The State of Michigan has not waived its 11th amendment Immunity, so that, once it is recognized that the subject of this action belongs to the state of Michigan, the court cannot exercise jurisdiction. *California v Deep Sea Research, Inc.,* 523 Us 1091; 118 S Ct 1558, 140 L Ed 2d 790 (1998); *Florida Dep't of State v Treasure Salvors, Inc*, 458 US 670, 102 S Ct 3304, 73 L Ed 2d 3304 (1982); *Zych v Unidentified, Wrecked & Abandoned Vessel*, 811 F Supp 1300, 1315 (ND Il, 1992). Michigan has possession of the subject of this action, superior to that of any finder of that property. No finder can be in lawful possession of any articles associated with any such wreck, or article of historical value, or material from the bottomland, without having obtained a permit to do so, and Mr. Graf has stated in his affidavit that no one associated with the Plaintiff has applied for or received any permit to dredge up any wreck or to recover, alter or destroy any allegedly abandoned property from bottomlands within the area identified in the Amended Complaint.

## VI. Conclusion

The Amended Complaint asserts the existence of an abandoned vessel within a 38.5 square mile area, but it is impossible for claimants to recognize the vessel and wreck in question, even to investigate and state a claim. But, if the abandoned ship is present as described in the present complaint is located within the area described, it belongs to the State of Michigan as a matter of the law of the United States, maritime law and the law of Michigan because of its location in the bottomlands and because of the historical significance of a vessel of the sort alleged. The court cannot maintain jurisdiction over property of the State of Michigan to make a salvage award. Michigan law has set forth how such finds are governed and established the procedures to be followed by anyone who finds such property. Plaintiff needs to bring any claim of the sort expressed here to the State of Michigan.

WHEREFORE, Intervenors request the court to dismiss this action for lack of jurisdiction.

Respectfully submitted,

Michael A. Cox
Attorney General

/s/

James R. Piggush (P29221)
Assistant Attorney General
Environment, Natural Resources,
and Agriculture Division
P.O. Box 30755
Lansing, MI 48909
517/373-7540

Dated: October 14, 2004
s:nrd/ac/cases/open/great lakes exploration/brief in supp of proposed motion to dismiss