# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
## Northern Division

| | | |
|---|---|---|
| GREAT LAKES EXPLORATION GROUP LLC | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:04-CV-375 |
| The Unidentified, Wrecked and (For Salvage-Right Purposes), Abandoned Sailing Vessel, her tackle, apparel, appurtenances, cargo, etc. located within a circle having a radius of 3.5 statute miles, whose center point is at coordinates 45° 32.8′ North latitude and 86° 41.5′ West longitude, | ) ) ) ) ) ) ) ) ) ) | HON. ROBERT HOLMES BELL<br><br>**INTERVENORS' REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS** |
| *In Rem* | ) ) | |
| Defendant, | ) | |

v.

STATE OF MICHIGAN DEPARTMENT
OF HISTORY, ARTS, AND LIBRARIES
AND MICHIGAN DEPARTMENT OF
ENVIRONMENTAL QUALITY,

        Intervenors.
_____/

| | |
|---|---|
| Richard Thomas Robol<br>Robol & Winkler LLC<br>555 City Park Avenue<br>Columbus, OH  43215<br>614/559-3846 | James R. Piggush<br>Assistant Attorney General<br>Environment, Natural Resources,<br>and Agriculture Division<br>P.O. Box 30755<br>Lansing, MI  48909<br>517/373-7540 |
| Roger W. Boer<br>Roger W. Boer, LLC<br>600 Waters Building<br>161 Ottawa Avenue NW<br>Grand Rapids, MI  49503<br>616/235-3500 | |

**INTERVENORS' REPLY TO PLAINTIFF'S
RESPONSE TO MOTION TO DISMISS**

Abandoned Shipwreck Act Guidelines, 55 FR 50116, admonish states to protect "shipwrecks that are particularly significant historically" from commercial salvage, treasure hunting and personal collecting activities. Section F, Guideline 7. Yet, Plaintiff claims that its private treasure hunting activities have provided unspecified public service, [1] so the court should allow it to appropriate an "archaeological site," lest the governmental agencies protecting it stand in the way of Plaintiff's effort to advance "public and private education, to the benefit of present and future generations of students, scholars, and the public." Plaintiff asks the court to wrest possession of 38.5 acres of Michigan lands and waters from the State for its use as a private research enclave, without so much as demonstrating salvage or prospect of salvage. [2]

---

[1] Plaintiff shows no participation of any "professional underwater archaeologist," in the operation. The Guidelines require that such a person control all phases of any study of historic shipwrecks. Id. Section F, Guideline 4b. Mr. Demel's affidavit fails even to describe whether the "Field Museum" has such professionally qualified persons on its staff. See affidavit of Mr. John Halsey. (Exhibit 1). Mr. Lusardi's affidavit indicates that Mr. Lusardi has such qualifications.

 Despite its mention, Field Museum participation here is suspect. Mr. Demel's April 21, 2004 letter to Mr. Libert (Exhibit 2), reported when the Field Museum would become interested in the find: "If we could confirm that the wreck is the Griffin then we would have more of an official interest and participation in the excavation, recovery and display of the artifacts and participation in the excavation, recovery and display of the artifacts and wreck. Until then, we cannot formally commit the Field Museum to anything more than the fact that some of the Anthropology Department curators and staff are interested in the research potential of the project." Mr. Demel is apparently an interested curator. Regarding the local presence of the Captain Lawrence, Mr. Demel also said: "We also find it intriguing that a second shipwreck at the same location may have been initially built for Marshall Field, and that this is a project that potentially will continue the work of George Quimby, a former Field Museum Anthropology curator."

[2] Nowhere does Plaintiff represent that any foreign sovereign has, by any purported protocol or otherwise, granted it authority to salvage, authority that is necessary to salvage a foreign, historic vessel. *International Aircraft Recovery, LLC v Unidentified Wrecked and Abandoned Aircraft*, 218 F3d 1255, 1263 (11th Cir, 2000). The complaint declares that a research expedition, not a foreign sovereign, originally owned the find, and there is no evidence to support foreign ownership. See, affidavit of James Bruseth. (Exhibit 3).

1

The admiralty law that plaintiff invokes here does not authorize private appropriation of state-owned, historic shipwrecks. There is no maritime jurisdiction, no title transfer available to the "rescuer" of abandoned, historic or embedded shipwrecks. *Yukon Recovery LLC v Certain Abandoned Property,* 205 F3d 1189, 1196 (9th Cir, 2000). And, salvage of such vessels and their cargo is available, "only in a rare case where the governmental owner gives express or implied consent to salvage. . . . . [T]he government has full power to reject or prohibit the services." *International Aircraft Recovery, LLC v Unidentified Wrecked and Abandoned Aircraft,* 218 F3d 1255, 1263 (11th Cir, 2000), quoting, 2 Thomas J. Schoenbaum, Admiralty and Maritime Law § 16-1 (2d Ed 1994).

Although the complaint fails to comply with the rules governing the specificity of in rem Admiralty complaints, FR Civ P Supp C(2)(b) and E(2)(a), Plaintiff also provided Intervenors with sufficient information outside the complaint to reveal that the court lacks jurisdiction. Plaintiff failed to show otherwise in its response to the FR Civ P, 12(b)(1) motion.[3]

**I. The Court lacks jurisdiction over property in the possession of the state of Michigan upon which Plaintiff bases its claim to in rem jurisdiction.**

Plaintiff's reliance upon *California v Deep Sea Research*, 523 US 491, 118 S Ct 1464, 140 L Ed2d 626 (1998), as applied in *Fairmont International Exploration, Inc v The Shipwrecked Vessel*, 177 F3d 491 (6th Cir, 1999), and in *Fairmont International Exploration, Inc v the Shipwrecked Vessel*, 72 F Supp 2d 795 (WD MI, 1999) is misplaced. *California* describes the procedure when a state lacks actual possession of a res, has no more than constructive possession, and claims immunity only pursuant to provisions of the Abandoned Shipwreck Act

---

[3] Intervenors agree that the Plaintiff bears the burden of proving jurisdiction in response to Intervenors' FR Civ P, 12(b)(1) motion to dismiss and that the court is empowered to resolve factual disputes on the motion, since supplementation of the record to show that the find is embedded, wherever it is and whatever it is, does not convert the motion into a Rule 56 motion for summary disposition. *Rogers v Stratton Industries, Inc*., 798 F2d 913, 915 (6th Cir, 1986).

(ASA), 43 USC 2101, *et seq*. 523 US at 504; 506. Intervenors' claim here does not depend upon constructive possession, and it is not solely under the ASA.[4] The objects in question are in Michigan's soil and have been deserted by their owners, allegedly for centuries. Michigan has them in its possession, claims them as its own, and prohibits their removal from its soil. The 11th Amendment prevents this court from exercising jurisdiction over property in the state's possession. *California*, 523 US at 506-507. *Zych v Unidentified, Wrecked & Abandoned Vessel Believed to be SB "Seabird"*, 811 F Supp 1300, 1312 (ND Ill, 1992).

The ASA removed the management of underwater cultural heritage from the federal courts by transferring title of federally-owned wrecks to the states, 43 USC 2105, and suspending the application of the law of finds and the law of salvage to those vessels, 43 USC 2106. Federal courts can determine whether ASA federal ownership conditions apply, without violating the 11th Amendment, since that ownership depends on prior federal ownership. *See, California*, 523 US at 499. But, before the ASA, Admiralty law recognized that buried items that have been abandoned belong to the owner of the property and are not subject to the law of finds. *Zych v Unidentified, Wrecked & Abandoned Vessel,* 19 F3d 1136, 1141 (7th Cir, 1994). As noted in *Klein v The Unidentified Wrecked & Abandoned Sailing Vessel*, 758 F2d 1511, 1514 (11th Cir 1985), states could hold title to abandoned wrecks before the ASA:

> The common law of finds generally assigns ownership of the abandoned property without regard to where the property is found. Two exceptions to that rule are recognized: First, when the abandoned property is embedded in the soil, it belongs to the owner of the soil; Second, where the owner of the land where the property is found (whether on or embedded in the soil) has constructive possession of the property such that the property is not "lost," it belongs to the owner of the land.

Where a claim is based upon constructive possession—that is, possession such as is implied when a state lists a ship in an inventory of ships it intends to preserve, *Klein*, 758 F2d

---

[4] The ASA specifically reserved the rights of any state under the Submerged Lands Act, 43 USC 1311.

1514 -- *California* establishes that the court has jurisdiction to determine ownership. 523 US at 506. But, *California* leaves standing *Ex Parte New York,* 256 US 503, 41 S Ct 592; 65 L Ed 1063 (1921), as set forth in *Florida Dept of State v Treasure Salvors, Inc*, 458 US 670, 699; 102 S Ct 3304; 73 L Ed2d 1057 (1982). The federal courts lack in rem Admiralty jurisdiction where a state invokes 11th Amendment immunity and has actual possession of allegedly abandoned property. Although lost, the property here is embedded in Michigan's soil. Michigan's ownership claim does not depend upon the ASA.

Despite the obfuscation of the complaint, purportedly to prevent "premature disclosure" of whatever Plaintiff is talking about, Plaintiff's photos, however old and dimly lit, disclose an artifact that is buried in the soil of the state of Michigan, whether or not removal would require use of the devices described in the ASA definition of "embedded", which was designed in part to ensure vessels are historic. Where a portion of a find is firmly affixed to the land, with portions lying in loose surface soil, title to the entire find resides in the land owner. *Chance v. Certain Artifacts Found & Salvaged from The Nashville*, 606 F. Supp. 801, 806-807 (D. Ga., 1984).

The affidavits filed in opposition to Intervenors' motion establish Michigan's dominion. They describe only "inquiries", not salvaged artifacts. To describe general conditions, they refer to sedimented shipwrecks in the area and the presence of sandy soil and fine silt. Mr. Demel acknowledges that "the next phase of inquiry may be to employ the use of mechanical devices in a limited capacity to aid in further testing and perhaps also in the actual excavation and recovery of the vessel and its components," and he acknowledges there will be a need for state excavation permits. The affidavit says that they have investigated the "visible part" of the wreck.

The affidavits reveal that further investigation to locate any vessel must be by side scan sonar; and survey conducted by sub-bottom profiling. The investigation so far has involved limited testing but no "formal excavation." Mr. Libert refers to gradual sedimentation that

4

typically covers ships in the area and he indicates that the sedimentation here is such as occurs over a period of centuries. He indicates that the next contemplated phase of study could proceed by hand excavation.

Criticism of Mr. Lusardi's understanding as incomplete does not modify the salient acknowledgments made by Mr. Demel and Mr. Libert: the stuff Plaintiff has found is buried, as appears in the pictures described by Mr. Lusardi. Where a res is embedded in soil, or a portion affixed to the land with other portions in loose surface soil, title to the whole resides in the owner of the land. *Jupiter Wreck Inc., v The Unidentified, Wrecked and Abandoned Sailing Vessel, etc.*, 691 F Supp 1377, 1386 (SD Fla, 1988).

Michigan exercises control over its lands. Any dredging, that is to say, any removal of material from bottomlands, R 322.1001(h), requires a permit, MCL 324.32512(c), and, if the material in the bottomlands has been deserted and left behind and attempts at reclamation abandoned by owners, any alternation requires an additional permit. MCL 324.76107(1). Michigan asserts its exclusive right to excavate abandoned property[5] of historic value in its bottomlands and declares a state possessory right or title that is superior to that of the finder. MCL 324.76102. Just as a pearl lost in a home cannot be looted by neighbors before found by the homeowners, abandoned objects lost in Michigan lands cannot be appropriated by trespass in violation of statutes and rules governing access to state lands. MCL 750.552.

The amended complaint describes the wreck as a wreck that sank "scores of years ago" (¶ 11) and the supposed ship as of "significant age," "prior to the 20th century." The complaint explicitly describes the res as abandoned "for salvage right purposes," although Plaintiff attempts

---

[5] Michigan protects watercraft and cargo "which have been deserted, relinquished, cast away, or left behind and for which attempts at reclamation have been abandoned by owners and insurers." MCL 324.76101(a). By MCL 324.76102(1), "The state reserves to itself the exclusive right and privilege . . . of exploring, surveying, excavating, and regulating through its authorized officers, agents, and employees, all . . .abandoned property of historical or recreational value found upon or within any of the lands owned by or under the control of the state."

to state claims beyond mere salvage.[6] The abandonment of the res appears to be clear, although the property is in the possession of the state, so that the court cannot proceed to take jurisdiction over the res or adjudicate such claim.

Since a salvage claim relies on the fiction of continuing ownership, the law of finds sometimes applies to award title to ancient vessels and to avoid the absurdity of pretending that they still have an owner after centuries have passed. *Treasure Salvors, Inc v Unidentified, Wrecked and Abandoned Sailing Vessel*, 569 F2d 330 (5th Cir 1978). *Fairmont*, supra, 177 F3d at 500, observed that it is absurd to require express abandonment in the case of ancient shipwrecks, and abandonment may be shown by inference.

> Rigid adherence to a doctrine requiring express abandonment would require courts to "stretch [] a fiction to absurd lengths, '*Treasure Salvors, Inc v Unidentified Wrecked and Abandoned Sailing Vessel*, 569 F2d 330, 337 (5th Cir 1978), where courts encountered claims to ancient shipwrecks with long-forgotten and undiscoverable owners.

When stating that lapse alone may not show abandonment, the 6th circuit referred to a discussion in *Columbus—America Discovery Group v the Unidentified Wrecked and Abandoned Sailing Vessel*, 974 F2d 450, 464-465 n5 (4th Cir, 1992), which allows an inference of abandonment from an ancient and long-lost shipwreck.

> Should the property encompass an ancient and long lost shipwreck, a court may infer an abandonment. Such an inference would be improper, though, should a previous owner appear and assert his ownership interest; in such a case the normal presumptions would apply and an abandonment would have to be proved by strong and convincing evidence.

---

[6] In the complaint, Plaintiff plead that the vessel had been abandoned. The recent recitation that the abandonment claim only applies to Plaintiff's salvage claim is disingenuous, given Count I, which seeks legal title to the ship, as the rightful owner (¶ 16). *Stathos v The Maro*, 134 F Supp 330, 332 (ED VA, 1955). A claim of ownership must be based upon the law of finds by one in possession. *Hener v United States*, 525 F Supp 350, 356 (S.D.N.Y., 1981). It cannot be based upon salvage activities and a claimed right to continue the project. Plaintiff's secrecy indicates an effort to assert possession so as to make an ownership claim under the law of finds.

The complaint alludes to an original owner, characterized as a research expedition, from centuries ago. Apparently to raise the specter that there must be explicit abandonment, Plaintiff also refers to a sovereign successor, which it does not identify in the complaint.[7] By this device, Plaintiff raises the specter that Michigan will have to prove explicit abandonment on the basis that the vessel is a ship of state.

A foreign sovereign can appear in an action, as in *Sea Hunt, Inc. v The Unidentified Shipwrecked Vessel*, 221 F3d 634 (4th Cir, 2000), but Plaintiff cannot present the claim of a foreign sovereign. See, *Luzzato v the Steamship "Pesaro,"* 255 US 216, 41 S Ct 308, 65 L Ed 592 (1921); *Compania Exponola de Navegacion Maritima, S.A. v The Navemar*, 303 US 68, 58 S Ct 432, 82 L Ed 667 (1938). Absent appearance and consent to jurisdiction, the Foreign Sovereign Immunities Act,[8] denies the courts jurisdiction over sovereign vessels.

Under the 11th Amendment, the federal courts may not seize and arrest property that is in the possession of a state and held by a state under a claim that the property belongs to the state. *Ex Parte New York*, 256 US 503, 41 S Ct 592, 65 L Ed 1063 (1921). Neither can a federal court adjudicate a state's claim. See, *Florida Dept of State v Treasure Salvors, Inc*., 458 US 670, 682; 102 S Ct 3304, 73 L Ed2d 1057 (1982). *California,* involved a vessel on, not in, state lands and

---

[7] Plaintiff provides no foundation for any expression of opinion about the ownership of the vessel by any foreign nation. In substitution for proof, Mr. Libert's affidavit invokes an article that purportedly quotes Mr. John Halsey, State Archaeologist, concerning the possibility that this case involves the Griffin and that it belonged to France. Discovery has since disclosed that any such statements were made "in reference to and in reliance upon independent representations made to Mr. Halsey by Mr. Steve Libert indicating that Mr. Libert had discovered a vessel and had evidence that it was the Griffin, and in reference to and reliance upon the mistaken belief that the Republic of France would come forward with evidence demonstrating that the vessel in question was a ship of state." (Exhibit 4). The State has since reviewed available evidence, which shows that the Griffin was a private vessel, conceived, constructed and paid for by Cavalier de LaSalle, who subsequently abandoned his activities in the north county in favor of an expedition to the Gulf of Mexico, an expedition that did involve French vessels. See, Affidavit of James Bruseth.
[8] 28 USC 1604.

not in the state's possession. 523 US at 497. There the Court found guidance in federal sovereign immunity law indicating that a lien cannot be enforced against property in the actual possession of a state: "proceedings in rem to enforce a lien against property of the United States are only forbidden in cases where, in order to sustain the proceeding, the possession of the United States must be invaded under process of the court." *The Davis*, 77 US (10 Wall) 15, 19 L Ed 875(1870). Such proceedings are forbidden here.

Based on the record before the court, the artifacts in issue in this case are contained in state soil and in the state's actual possession, and, by virtue of the 11th Amendment to the United States Constitution, are not subject to seizure or adjudication in an Admiralty action in a federal court.

**II. The Court cannot assume jurisdiction over the alleged shipwreck pursuant to FR Civ P. Supp C, because Plaintiff's complaint does not that satisfy FR Civ P. Supp E. and show that the conditions for an in rem action exist.**

Although Plaintiff claims superior knowledge of Admiralty law and procedure, it claims that its complaint needs to satisfy only a pleading standard lower than the notice pleading characteristic of the Rules generally. [9] To the contrary, like FR Civ P 9(b), Supplemental Rule E imposes a particularity requirement that obliges the pleader to "state circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." *Riverway Co v Spivey marine & Harbor Service Co* 598 S Supp 909, 913 (SD Il, 1984). The rule is "plainly written," needs little interpretation, and "means precisely what it says." *United States v Mondragon*, 313 F3d 862, 865 (4th Cir, 2002). The complaint must specifically describe the subject vessel and show that the court has maritime jurisdiction by showing a maritime lien, which must be specifically pleaded, *GEA Power Cooling Systems, Inc*

---

[9] And states that it need only file portions of a form complaint that would, if taken as complete, excuse Plaintiff from stating any claim whatsoever.

*v M/V Nurnberg Atlantic*, 748 F Supp 303, 304 (ED PA, 1990), and "must afford a reasonable belief that the claim has merit." *Riverway, supra*, 598 F Supp 913.

In *Fathom Exploration, LLC v The Unidentified Shipwrecked Vessel,* 352 F Supp2d 1218, 1226 (SD Ala, 2005), where state and national governments were potential claimants, the complaint omitted available information concerning the location and embeddedness of the wreck. The court held that Rule E requires a Plaintiff to file a complaint providing available information relating to the applicability of the Abandoned Shipwreck Act, 43 USC 2101, *et seq*:

> In investigating its claims under the ASA, the State's chief concerns are whether the Shipwreck is located in Alabama waters, whether the vessel or vessels are "embedded" within the meaning of the ASA, and whether the vessel or vessels may be property classified as "abandoned" under the ASA. Depending on the facts relating to these particular issues, the State may or may not have a viable claim. In the absence of such information, any responsive pleading that the state might file will of necessity be speculative and conditional (i.e., the State's denial of Fathom's salvage and finders rights will be contingent on the Shipwreck consisting of one of more abandoned vessels embedded in submerged Alabama lands), and the State's ability to initiate an investigation of frame its responsive pleading will be impaired by the fragmentary allegations set forth in the Complaint.
>
> ***
>
> To say that Fathom is not required to be omniscient about the Shipwreck from the outset of its salvage operations is not to declare that Fathom may omit from its Complaint reasonably available basic information in its possession that might aid potential claimants in assessing the validity of their claims.

Plaintiff had to specify the location of the vessel within the 2 nautical mile area already described in the complaint and to describe the portions of the find above and below the ocean floor.

The complaint here must specify the known location and positions of the find, even if only to allow someone else to recognize their property, if not a vessel, and to allow defense under the ASA and common law.

Despite Plaintiff's protestations that there are really important reasons for it to ignore Rule E, and the unstated provisions of an undisclosed protocol, Plaintiff cannot bring this Admiralty action without satisfying rules applicable to an in rem action. The sufficiency of its

pleadings is tested by the applicable rules, not by in camera hearing, as this court has already held in this case. Sealed affidavits are no less in camera to an in rem defendant and no more effective in bringing its pleadings into compliance with the rules.

Plaintiff has not shown itself to be a salvor-in-possession. Based upon the evidence before the court, the state, not plaintiff, is in possession of the subject find. Plaintiff has not rescued anything, and, in the circumstances, rescue is contrary to Michigan and federal public policy. Plaintiff plead the obvious: a centuries-old vessel, never salvaged by the original owner, was abandoned long ago. The record shows that its find is embedded in the soil of the State of Michigan, which owns it by exception to the law of finds, if not by operation of the ASA.

Respectfully submitted,

Michael A. Cox
Attorney General

/s/ James R. Piggush

James R. Piggush
Assistant Attorney General
Environment, Natural Resources,
and Agriculture Division
P.O. Box 30755
Lansing, MI 48909
517/373-7540

Dated: May 2, 2005
s:nrd/ac/cases/open/great lakes exploration 04ag/reply to pl's response to motion to dismiss

10