IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
Northern Division

GREAT LAKES EXPLORATION
GROUP LLC

                Plaintiff                          Civil Action No. 1:04-CV-375

v.                                              HON. ROBERT HOLMES BELL

The Unidentified, Wrecked and (For
Salvage-Right Purposes), Abandoned
Sailing Vessel, her tackle, apparel,
appurtenances, cargo, etc. located
within a circle having a radius of 3.5
statute miles, whose center point is at
coordinates 45° 32.8' North latitude and
86° 41.5' West longitude,

                *In Rem*

                Defendant.

and

MICHIGAN DEPARTMENT OF HISTORY,
ARTS AND LIBRARIES AND MICHIGAN
DEPARTMENT OF ENVIRONMENTAL
QUALITY,

                Intervenors.

---

## INTERVENORS' RESPONSE TO REQUEST FOR ARREST WARRANT

<u>The complaint does not provide a foundation upon which the court can authorize arrest and acquire in rem jurisdiction.</u>

**Introduction.**

      Plaintiff has requested the court to issue an Order On Warrant for Arrest "of such

portions of the Defendant, the Unidentified, Wrecked and Abandoned Sailing Vessel, etc., as

may be found within the District," for delivery of a warrant to the U.S. Marshall for service, by

which the court will claim "constructive possession of the shipwreck itself, the shipwreck site, and everything that is a part thereof." The requested warrant would take custody not of a wreck, but of a 38.5 square mile "site," which consists of navigable waters and lands of the State of Michigan. Plaintiff would have the court take custody of this area and these lands without having ever informed the court, or anyone else, of the location of a single element of the find, without presenting or identifying a single salvaged object, and without even claiming to have rescued a single object. Given these failures, Plaintiff has not shown the conditions for an in rem action, and the court cannot grant the relief requested.

Supplemental Rule C of the Federal Rules of Civil Procedure describes the conditions that authorize the court to issue an order for a warrant of arrest.

> (ii)(A) In other actions, the court must review the complaint and any supporting papers. If the conditions for an in rem action appear to exist, the court must issue an order directing the clerk to issue a warrant for the arrest of the vessel or other property that is the subject of the action. FR Civ P, Suppl C.

First to be noted is that the rule does not authorize the court to arrest anything but the vessel or other property that is the subject of the in rem action. This action is not in rem over Michigan bottomlands, over the navigable waters of the state, or over a "wreck site." But, review of the complaint does not indicate any conditions whatsoever for an in rem action.

**Review of the Complaint**

The Amended Complaint asserts not that Plaintiff, but that Plaintiff's "Principals" have been engaged in an "operation" for the recovery, search and salvage of a so-called "unidentified and abandoned sailing vessel," alleged to be of significant age, prior to the 20th century. The location of the vessel is withheld from the court and the public, Plaintiff urging in subsequently filed papers that it has a right to avoid "premature disclosure," even though the location and condition of a vessel relate to whether the court has jurisdiction. *Fathom Exploration, LLC v The*

*Unidentified Shipwrecked Vessel*, 352 F Supp2d 1218, 1226 (SD Ala, 2005). Whether any vessel is involved in this action and its condition cannot be independently determined. To the extent that the subject of the arrest is supposed to be a vessel in place, the Marshall will be hampered in any effort to make an arrest or accurately identify the vessel.

Plaintiff asserts that it is involved in an "operation for recovery" (¶ 2), and that it is conducting an "analysis, investigation, and operations" (¶ 4). Plaintiff does not assert that it or even its principals have recovered or salvaged any artifacts during this "operation." In the complaint, Plaintiff does not identify the "entity" it "believes" to be the successor to the original owner, which is undisclosed and characterized as "a foreign research expedition," that allegedly was "authorized and perhaps under the control" of an unnamed "foreign sovereign." Outside the complaint, these allegations morph into the claim that the vessel was not owned by the expedition after all.[1]

The complaint describes salvage activities leading to recovery of artifacts only in the future tense: "the salvaged portions of the in rem Defendant shipwreck will be within the actual and/or constructive jurisdiction of this district during the pendancy of this action." (¶ 9).

Plaintiff alleges expenditures to develop a plan for recovery (¶ 11) and states that it is engaged in the process of reducing the shipwreck to its exclusive custody, control, possession and dominion.[2] This process of achieving exclusive control, possession or dominion would appear unnecessary, if it had been successful to achieve control or possession.

---

[1] The complaint does not allow defense because it is contradictory. Additional representations show that it is necessary to determine whether to defend against the complaint, or against the contradictory, shadow allegations. But, whether the complaint or the shadows is considered, no basis for in rem jurisdiction appears.

[2] Given that the wreck is in the soil of Michigan, Plaintiff cannot legally assume exclusive possession or control without permit from Michigan.

The complaint does not describe any acts underlying the affirmation that Plaintiff "has taken such actions as were necessary to constitute dominion and control of the shipwreck as salvor-in-possession" (¶ 16), even though these actions are the basis on which Plaintiff claims exclusive possession of, if not title to, the alleged wreck, and to the court's protection. They do not appear to be salvage activities.

The complaint lists "research, search and survey" operations as salvage operations, (¶19) and lists these activities as the assistance Plaintiff has provided to the vessel, purportedly removing it from a helpless condition of marine peril. The complaint does not identify any objects removed from the "peril," and the only "peril" identified is that of "premature disclosure."

By way of its Motion to Dismiss, Intervenors have argued to the court that, when taken together with photos provided by Plaintiff, the allegations of the complaint disclose that the court does not have jurisdiction because the subject belongs to the state of Michigan, which prohibits removal of the alleged objects from its bottomlands without permit. But, even without consideration of Michigan's claim and ownership, the Plaintiff has not shown a basis for the arrest upon which this court's in rem jurisdiction depends.

**Plaintiff has not shown the lien necessary to sustain in rem jurisdiction.**

According to FR Civ P. Suppl C(1)(a), an in rem action must be based upon a maritime lien. No basis for lien appears in the complaint or supporting papers. Disclosure of a lien is necessary to allow for arrest of a vessel or its parts, and for the court to have jurisdiction. *Dluhos v The Floating and Abandoned Vessel, known as "New York*," 162 F3d 63, 68-69, 73 (2d Cir 1998).

The court does not have in personam jurisdiction over various parties to determine their relative claims as salvors-in-possession.  This in rem action must set forth a lien based upon the law of finds or the law of salvage. *Fairport Int'l Exploration Inc v The Shipwrecked Vessel, Known as the Captain Lawrence*, 177 F3d 491, 498 (6th Cir 1999).

> Under maritime law, those who wish to raise sunken ships are governed by either the law of salvage or the law of finds. The law of salvage applies when the original owner retains an ownership interest in the ship; a salvor receives a salvage award, but not title to the ship. See, e.g., *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 640 F.2d 560, 567 (5th Cir. 1981). Where the owner has abandoned the ship, however, recent doctrine applies the law of finds, vesting title in the finder of the ship. See *Columbus-America*, 974 F.2d at 464; *Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked and Abandoned Steam Vessel*, 833 F.2d 1059, 1064-65 (1st Cir. 1987); *Treasure Salvors*, 640 F.2d at 567. Whether the owner abandoned the ship thus determines which law applies, and, subsequently, who owns the ship. Intent on protecting the property rights of owners, admiralty courts recognize a presumption against finding abandonment. See, e.g., *Hener v. United States*, 525 F. Supp. 350, 356-57 (S.D.N.Y. 1981).
>
> The 1987 passage of the ASA altered this approach. The ASA transfers to a State the title to all abandoned shipwrecks embedded in the submerged lands of the State. See 43 U.S.C. § 2105. The ASA expressly rejects the application of the maritime laws of salvage and finds. See 43 U.S.C. § 2106(a) ("The law of salvage and the law of finds shall not apply to abandoned shipwrecks to which section 2105 of this title applies."). If a diver now discovers a long-lost ship embedded in the submerged lands of a State, a finding of abandonment leaves the diver with neither title nor a salvage award (unless state law provides otherwise).

But for operation of the Abandoned Shipwreck Act (ASA), 43 USC 2101, *et seq*., which suspends the operation of the law of finds and the law of salvage, 43 USC 2106, the complaint appears to be an attempt to claim a wreck based on the law of finds.  That law recognized that it is absurd in the case of historic wrecks to try to sustain the fiction of continuing ownership, which is invoked to support a salvage lien.  *Treasure Salvors, Inc v Unidentified, Wrecked and Abandoned Sailing Vessel*, 569 F2d 330 (5th Cir 1978), *Klein v The Unidentified, Wrecked and Abandoned Sailing Vessel,* 758 F2d 1511, 1514 (11th Cir 1985.  Where an historic wreck is discovered centuries after loss of a ship and it was originally owned by a natural person, who

made no efforts to salvage the ship and then went on to other activities in other parts of a continent and for whom no salvage efforts were made, the circumstances come close to defining when it is absurd to find continuing ownership by the owner and his successors. But, the ASA suspends of the law of finds where objects are embedded in the soil of a state, as the law of finds recognizes title in the land owner in such circumstances. The law of finds does not provide a basis for a lien in this matter.

Salvage law is intended to foster recovery and return of goods into the stream of commerce. 3A Martin J. Norris, Benedict on Admiralty 232 at 19-3. Actual recovery is one of the elements of a salvage claim:

> A claim for a salvage award requires that three elements be shown:
>
> (1) A maritime peril from which the ship or other property could not have been rescued without the salvor's assistance.
>
> (2) A voluntary act by the salvor – that is, he must be under no official or legal duty to render the assistance.
>
> (3) Success in saving, or in helping to save at least part of the property at risk.

*Klein,* supra, 758 F3d at 1515. None of these elements is clearly set forth in the complaint or the materials submitted in support of arrest, and the last element is completely missing.

Here the vessel is purportedly lost and in peril, although it has survived to its present condition over the course of one or more centuries and could purportedly be discovered at will by the State of Michigan, if it chose to use devices available to it for two generations. The peril that Plaintiff seeks to avoid is of its own making. Plaintiff describes its find as subject to destruction and looting upon "premature" disclosure of its exact location, which it withholds from the public and from the parties until Plaintiff can undertake its research, search and survey activities.

To avoid the threats that arise from public disclosure of archaeological sites, Michigan protects abandoned historical objects in place, MCL 324.76107(1), requires forfeiture of materials removed from abandoned wrecks without authorization, MCL 324.76110, imposes grave penalties for unpermitted removal of abandoned artifacts, MCL 324.76107(4), provides for emergency creation of Great Lakes Bottomlands Preserves, MCL 324.76111, and protects archaeological sites from disclosure. MCL 15.243(1)(o). Plaintiff's proposed exploration is what creates the peril from which it seeks protection. See, Affidavit of John Halsey. The peril arises from its effort to acquire rights to Michigan property against the world by an in rem admiralty action, so it can engage in sustained research activities as an exclusive property right. In *Klein*, the court properly denied a salvage award where the unauthorized disturbance "did more to create a marine peril than to prevent one." 758 F2d at 1515.

The second element of a salvage claim is also inadequately stated. Plaintiff may have volunteered its "assistance". But, it also describes its current investigations as according to a protocol and someone's written permission, suggesting possible contractual activities. The compliant does not state any duty Plaintiff had to perform. The duty Plaintiff does have is not to dredge any material from Michigan bottomlands without the required permit, MCL 324.32512, and not to remove any abandoned, historical, or embedded artifacts without the state-required permit. MCL 324.76107(1). Any such objects collected had to be transferred to the state.

The final, fatal flaw in the materials submitted to support arrest is their failure to show any rescue. Although a person entitled to a salvage lien has a protected right to retain rescued goods, no one acquires a lien by mere discovery. *RMS Titanic v The Wrecked and Abandoned Vessel*, 286 F3d 194, 205 (4th Cir 2002). Discovering the location of property does not create a right to prevent others from inspecting that property or trying to recover the property, if it is legal to do so. Competing searchers are entitled to enter the area where the abandoned property is and

7

to seek to reduce it to his possession, if he or she can act without infringing on the concurrent rights of other searchers. *Hener v United States*, 525 F Supp 350, 354 (S.D.N.Y. 1981). No rights arise from a mere search, even from success in finding abandoned property. The complaint is silent concerning whether Plaintiff has recovered any artifacts whatsoever during the "salvage" operations that involved "research, search and survey" activities.

To protect a salvor's lien in recovered artifacts that are to be restored to the stream of commerce, the salvor may have to demonstrate the he or she documented the wreck and undertook appropriate archaeological surveys. *Columbus-America Discovery Group v Atl. Mutual Ins. Co.*, 974 F2d 450, 458 (4th Cir 1992). Federal salvage law does not "sanction salvaging methods which fail to safeguard items and the invaluable information associated with the artifacts saved." *Cobb Coin Co. Inc. v the Unidentified, Wrecked and Abandoned Sailing Vessel*, 525 F Supp 186, 208 (SD Fl, 1981). However, salvage is for the benefit of the owner, and a salvor does not obtain rights in the salvaged property of the wreck itself for its own sake. As a result, in *RMS Titanic, Inc v Haver*, 171 F3d 943, 970 (4th Cir, 1999) the court rejected the claimed exclusive right, in the name of salvage service, to photograph a shipwreck. Where no artifacts are salvaged, services do not give rise to any lien or to any right to continue salvage efforts; the lien is in the recovered objects.

The complaint does not identify any artifacts recovered, and explicitly represents that their recovery will occur in the future. Given that neither Plaintiff nor any its agents has even requested a permit from the state to remove any abandoned articles of historical or recreational significance or to dredge Michigan bottomlands, it is unlikely that this fatal flaw in Plaintiff's in rem salvage claim is an oversight. Recovery of abandoned property in, on, under, or over the bottomlands of the Great Lakes without a permit requires forfeiture of the property MCL 324.76107(2), and can result in severe penalties. MCL 324.76107(4). There is nothing that

8

indicates Plaintiff has done anything other than conduct preliminary investigations of a single location, which it speculates may be part of a larger, as yet unexplored "debris field." Intent upon preserving the location intact on the chance that the only value of the site may well be its condition in place, Plaintiff has not rescued anything at all. The find remains in its original peril, subject to the peril of disclosure.

Salvage services may not be imposed over objection of the owner, *International Aircraft Recovery*, 218 F3d at 1263. Michigan law declares a state policy that objects of historical value abandoned on state lands are not to be salvaged without permit; the state reserves the right to survey and recover to itself. MCL 324.76102.

**No order of arrest can be issued based on the complaint and the materials submitted in support of the request.**

Neither the complaint nor any other materials submitted in support of the request for an order for arrest show a lien that supports in rem jurisdiction over any vessel or artifacts. They only declare investigations and operations that might lead to salvage, if later authorized by an unidentified owner other than the State of Michigan, since Michigan does not authorize salvage of abandoned, historic artifacts. Plaintiff cannot state a claim under the law of finds by secretly "possessing" a wreck. Abandoned historic or embedded vessels transfer to the State of Michigan by operation of the ASA, and do not transfer to a finder, just as title to buried abandoned objects vested in the owner of the land by exception to the law of finds. There is no historical basis on which any third party can claim continuing ownership, so that the natural inference that any vessel that has been lost for centuries has been abandoned should control this action.

The complaint describes activities other than salvage activities. It does not identify any rescued objects, or identify any vessel in place. Any vessel remains in place, subject to whatever

forces and perils have operated on it, for however long it has been in place. The U.S. Marshall will not be able locate any object described in the complaint to effect an arrest. The complaint does not allow any object to be located or identified. There is no basis shown for a lien against any identified object.

WHEREFORE, Intervenors request the Court to deny the requested order for warrant.

Respectfully submitted,

Michael A. Cox
Attorney General

/s/ James R. Piggush

James R. Piggush
Assistant Attorney General
Environment, Natural Resources,
and Agriculture Division
P.O. Box 30755
Lansing, MI 48909
517/373-7540

Dated: May 2, 2005
s:nrd/ac/cases/open/gr lakes exp 04ag/ response to request for arrest warrant