IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
Northern Division

GREAT LAKES EXPLORATION
GROUP LLC

        Plaintiff

v.

The Unidentified, Wrecked and (For
Salvage-Right Purposes), Abandoned
Sailing Vessel, her tackle, apparel,
appurtenances, cargo, etc. located
within a circle having a radius of 3.5
statute miles, whose center point is at
coordinates 45° 32.8' North latitude and
86° 41.5' West longitude,

        *In Rem*

        Defendant.

and

MICHIGAN DEPARTMENT OF HISTORY,
ARTS AND LIBRARIES AND MICHIGAN
DEPARTMENT OF ENVIRONMENTAL
QUALITY,

        Intervening Defendants

Civil Action No. 1:04-CV-375

HON. ROBERT HOLMES BELL

---

## AFFIDAVIT OF JOHN ROBERT HALSEY.

Now comes John Robert Halsey, 1602 Colorado Drive, East Lansing, Mi 48823-1916, and being first duly sworn, states as follows:

1.    I currently hold the position of State Archaeologist, a position I hold on the basis of my experience and training in Anthropology, having received a Ph.D. from the University of North Carolina at Chapel Hill in 1976, and M.A. from the University of Michigan in 1967, and of my

1

Dockets.Justia.com

subsequent 30 years of service to the state. In the application of the principles and methods of the disciplines of anthropology and archaeology, I have overseen the development of Michigan's maritime preservation program for almost three decades and was instrumental in the establishment of Michigan's system of Great Lakes state bottomland preserves. At this time I also represent the State of Michigan on the Joint Management Committee for the Thunder Bay National Marine Sanctuary and Underwater Preserve. I have regularly presented my work to my colleagues and authored articles for a number of journals and edited volumes and books, most notably *Beneath the Inland Seas: Michigan's Underwater Archaeological Heritage* (1990) and "The Great Lakes States" in *International Handbook of Underwater Archaeology* (2002). I have also reviewed maritime archaeological surveys and nominations of shipwrecks to the National Register of Historic Places. I have worked directly with maritime archaeologists from both the National Park Service and the National Oceanic and Atmospheric Administration in assessing the significance of Great Lakes shipwrecks. I am also a member of the Marine Protected Areas Federal Advisory Committee, being the only archaeologist on that panel. A copy of my Vita is attached.

2. I have reviewed the affidavit of Mr. Scott Demel and do not find any formal representations concerning the institutional commitment, if any, of the Field Museum to the investigation he describes. I know the Field Museum to be a private foundation, but whose experience, if any, in marine archaeology and their ability and commitment to conserve underwater artifacts, both organic and inorganic, I do not know. Mr. Demel's affidavit does not provide any information on these matters. Neither does it indicate Mr. Demel's field experience in underwater archaeologist.

2

3. Doing a photomosaic is a time, personnel and equipment-intensive exercise. It may not be the most efficacious means of documenting a wreck site's debris field, and other forms of mapping may be more appropriate in particular cases.

4. It is the policy of the State of Michigan to protect the location of its archaeological sites from inappropriate public disclosure and to protect them from private exploitation. Plaintiff's initiation of legal action to acquire possession of an archaeological site from the State of Michigan before it can be documented by or for the state heightens the risk that subsequent investigations will have notoriety and increases the likelihood of disturbance before authorized investigations. Michigan provides for severe penalties for removal of objects from its wreck sites without a permit.

5. In 2004, I provided Mr. Demel with permit application forms to perform work on Michigan bottomlands, but neither he nor any representative of the Plaintiff has ever submitted a completed application.

6. The State of Michigan reserves to itself the exclusive right and privilege of exploring, surveying, excavating and regulating abandoned property of historical or recreational value found upon or within any lands owned by or under the control of the state and reserves a possessory right or title superior of that of a finder of abandoned property of historical or recreational value found on the state owned bottomlands of the Great Lakes.

7. Mr. Lusardi, the State Marine Archaeologist, reports that he unsuccessfully attempted to obtain a commitment from Mr. Libert to dive the site that is the subject of this action. Plaintiff has since indicated, as in its response to Intervenor's Motion to Dismiss, p. 18, n 17, that its disclosure of the location of the site is subject to conditions that do not appear to be consistent with Michigan's responsibilities to its antiquities.

3

8. The State of Michigan currently lacks information concerning any physical objects Plaintiff has identified to date, a detailed description of a debris field, evidence of any concentration of anomalies, evidence that anything found to date is part of any vessel whatsoever. Nothing provided to date allows independent confirmation of the location or condition of the alleged find. Michigan does not have information on which to base an application for inclusion of any such find in the National Register of Historic Places, a designation that would appear to be appropriate for the vessel described in the complaint.

9. An historic vessel such as described in the complaint and indicated in sealed affidavits would have quantities of diagnostic goods on board. Nothing provided by Plaintiff makes a single reference to any diagnostic artifact.

10. The suggestion that the find in question involves a debris field extending over 38.5 square miles is not only inconsistent with my experience of shipwrecks on the upper Great Lakes, but also with my expectations for the small vessel indicated in the complaint. In so large an area, it would be extremely difficult to isolate the elements of any particular wreck from other debris. If the wreck is strewn over so large an area, it seems unlikely that any significant shipwreck structure is present anywhere.

11. I have had the opportunity to review the information provided by Dr. James Bruseth concerning LaSalle's activities in the Upper Great Lakes before he undertook to found a French colony on the lower Mississippi. Given the differences between LaSalle's missions in those two areas and the different origins of the two ships, the Griffin and the Belle, I do not know of any evidence on which a foreign government could state a claim to LaSalle's vessel, the Griffin.

4

11. Removal of any artifacts from an archaeological site before documentation of the site may well cause irreparable damage to the site and be inconsistent with the applicable standard of care required of archaeologists.

12. I state the facts asserted above on the basis of my personal knowledge and the opinions on the basis of that knowledge and the application of recognized methods and principles of archaeological investigation developed in the course of my professional training and experience.

FURTHER, AFFIANT SAYETH NOT.

John Robert Halsey

Subscribed and sworn to before me
this 29th day of April, 2005

Nancy E Hart
Nancy E. Hart  Notary Public
Ingham County, Michigan
My Commission Expires: July 10, 2006
s:nrd/ac/cases/open/great lakes exploration 04ag/Affidavit halsey

NANCY E HART
NOTARY PUBLIC STATE OF MICHIGAN
INGHAM COUNTY
ACTING IN:
Ingham County
MY COMMISSION EXP. JULY 10, 2006