IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
Northern Division

GREAT LAKES EXPLORATION
GROUP LLC

        Plaintiff

v.

The Unidentified, Wrecked and (For
Salvage-Right Purposes), Abandoned
Sailing Vessel, her tackle, apparel,
appurtenances, cargo, etc. located
within a circle having a radius of 3.5
statute miles, whose center point is at
coordinates 45° 32.8' North latitude and
86° 41.5' West longitude,

        *In Rem*

        Defendant.

and

MICHIGAN DEPARTMENT OF HISTORY,
ARTS AND LIBRARIES AND MICHIGAN
DEPARTMENT OF ENVIRONMENTAL
QUALITY,

        Intervening Defendants

Civil Action No. 1:04-CV-375

HON. ROBERT HOLMES BELL

---

Richard Thomas Robol
Robol & Winkler LLC
555 City Park Avenue
Columbus, OH 43215
614/559-3846

Roger W. Boer
Roger W. Boer, LLC
600 Waters Building
161 Ottawa Avenue NW
Grand Rapids, MI 49503
616/235-3500

James R. Piggush
Assistant Attorney General
Environment, Natural Resources,
and Agriculture Division
P.O. Box 30755
Lansing, MI 48909
517/373-7540

---

## INTERVENING DEFENDANTS' REPLY TO MOTION FOR PROTECTIVE ORDER

Depending upon the status, location and condition of the Defendant that Plaintiff seeks to salvage, which is located somewhere within a 38.5 square mile area of northern Lake Michigan, the Defendant may belong to the State of Michigan or to France. In either case, this court may well lack in rem jurisdiction. Michigan filed a limited appearance to challenge Admiralty jurisdiction, pointing to the Supplemental Rules governing in rem actions, Rules C and E; to provisions of the law of finds, *Chance v Certain Artifacts Found & Salvaged from the Nashville*, 606 F. Supp. 801, 806-807 (D Ga, 1984), and to the Abandoned Shipwreck Act, 43 USC 2101, *et seq*. France has not appeared to assert any claims that it owns a vessel buried within Michigan's soil, and it might well appear and invoke the sovereign immunity of the wreckage of a state craft, See, 69 Fed Reg, No 24, p 5647, and section 1406(c) and (d), or under Sunken Military Craft Act, Oct. 28, 2004, P.L. 108-375, Div A, Title XIV, 118 Stat. 2094, which also suspends the law of finds and the law salvage.

To supplement the proofs already presented in support of their Motion to Dismiss, Intervenors requested Plaintiff to produce materials to which Plaintiff alluded in its complaint that Plaintiff will have to present to establish its claims and obtain a judgment. (Exhibit 1). During argument on the pending motion to dismiss, Plaintiff acknowledged the relevance of the requested materials. But, according to Plaintiff's formal response to the Request to Produce (Exhibit 2), virtually all items requested will be designated "confidential," and not subject to public disclosure, based on the claim that they contain confidential information. Plaintiff has now filed a motion for a Protective Order and expresses its intent to continue to hide the subject of this action from the public, the Intervenors and this Court.

Suppl. Fed. R. Civ. P (2)(b) requires that, to state an in rem complaint, Plaintiff must describe the subject property with reasonable particularity. Plaintiff regards disclosure as

1

premature. Fed. R. Civ. P 26(b) requires Plaintiff to disclose information relevant to the claim or defense of any party. To obtain a protective order, Plaintiff must describe the things not produced or disclosed so that the parties can assess the applicability of any expressly asserted privilege or protection to the specific documents, communications, or things, Fed. R. Civ. P 26(b)(5) and must show good cause for the requested protection. Fed. R. Civ. P 26(c).

Plaintiff does not describe the material to be protected, except by its prospective, private designation of that material in good faith as "confidential" and shows no basis for the requested protection. No claim of work product protection can extend to information about the location of property that is the subject of an action, where there is no other way for the court, the public or the Intervenors to locate or identify the subject or to reasonably obtain independent information. Fed. R. Civ. P 26(b)(3). Plaintiff itself must disclose the information at time of trial to state its claim.

Upon consideration of the motion, the court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense," including the orders specified in Fed. R. Civ. P, 26(c), which set terms and conditions for discovery.

The point of Plaintiff's motion for protective order, submitted without legal or factual support, is not to protect trade secrets, copyrighted materials or private property. The proposed order is a stealth attempt to achieve a remedy far beyond any legally sanctioned final outcome in the present action.

The requested order purportedly preserves the Intervenors' right to prosecute this action (Paragraph 3A)[1]. But, despite their limited appearance, it purports to give the court permanent,

---

[1] References without further description are to paragraphs of the draft order.

2

personal jurisdiction over the intervening state agencies (8G), and gives Plaintiff permanent dominion over the cultural assets Intervenors seek to protect. Once Plaintiff asserts information is "confidential," Plaintiff acquires permanent control (6A, 8H) over that information and any subsequent findings (2C).[2] Michigan cannot use any "confidential" information about the Defendant except to support its motion to dismiss (3A, 8A). Accordingly, the order effectively and permanently enjoins Michigan from enforcing criminal laws that protect its cultural heritage, even against Plaintiff. MCL 324.76107. The state is denied information needed to administer its permitting program within the designated area. MCL 342.76108 -- 76109. The order prevents compliance with court subpoena and laws requiring disclosure of public information. (7). Despite the 11th Amendment, the order authorizes the court to award damages against the state Intervenors (8E). Further, the court can award damages and enforce the restrictions, even if Plaintiff has no objective rights in the information it claims to be confidential. The rights arise from Plaintiffs' designation alone (2A). All of these provisions make the court's final judgment superfluous to Plaintiff's ability to exercise dominion over the subject wreck.

By the terms of the draft order, protection arises not because of Plaintiff's demonstrated, objective rights, but because Plaintiff has designated some information or thing as "confidential," relying upon its "good faith belief" that the information or thing embodies, contains, or reflects "trade secrets, non-public research or other similar non-public information, confidential or proprietary information, or other information covered by legitimate privacy right or interest," including any "information about the location, nature, composition and/or characteristics of the

---

[2] Plaintiff presents no authority for the proposition that it can have a proprietary interest in information about a wreck in public waters and Michigan soil.

3

search for, and exploration of, the site which is the subject of this proceeding." (2A)[3]. The principal category protected by the draft order is "information," whether it is actually produced by Plaintiff or Michigan derives it after Plaintiff's disclosure. Protection extends to all documents and information and tangible things produced in response to discovery and to all testimony, matters in evidence and information exchanged by the parties or produced by a third party witness (1). But, the State of Michigan cannot use any information about the Defendant or about any other things and activities relating to the Defendant, unless the State of Michigan has filed specific information concerning the location of the Defendant under seal with the court before Plaintiff makes any disclosure, or it satisfies Plaintiff or the Court that it independently developed that information prior to Plaintiff's disclosure (8B). The Plaintiff's designation of information as "confidential" is final and controls the information disclosed and all other information about the Defendant. Intervenors can only disclose or use information they can trace to knowledge held by Intervenors prior to Plaintiff's designation. Any person who watches Plaintiff's recovery or exploration operations and then dives the site will be better able to describe any wreck to students in Michigan Schools than the intervening state agencies, even

---

[3] The subject of this proceeding is a wrecked vessel or its salvage, not a site. The analogy is to an ongoing salvage operation where a court controls the behavior of persons over whom it has personal jurisdiction, limiting their interference with the salvage operation in a specific area. *Hener v. United States*, 525 F Supp 350, 355, 357 (SD NY, 1981). Plaintiff has not demonstrated any salvage operation or any interference with such operation. Mere observation of a wreck site cannot be enjoined. *RMS Titanic, Inc. v. Haver*, 171 F3d 943, 969-970 (4th Cir, 1999). And, the intent to investigate creates no rights to salvage. "The mere chase of silver no more establishes its possession than the chase of wild beasts." *Hener*, 525 F Supp 357.

The defendant here is purportedly a wrecked vessel. The Court does not have general personal jurisdiction over anyone and cannot limit the actions of third parties by a restraining order. Fed. R. Civ. P 65(d). *RMS Titanic*, 171 F3d at 958.

Plaintiff seeks dominion over lands that are controlled by and belong to the State of Michigan and over Michigan waters that are subject to the public trust. The relief would incidentally preclude exploration of the area where Plaintiff's principal last reported – without disclosure at that time either—the Captain Lawrence, lies buried, with its cargo of gold.

though the subject is in Michigan's possession, affixed to its soil, and is state property, unless claimed by a person with better title.[4]

Procedurally, the proposed order imposes limitations that prevent effective use of disclosed information in the present litigation. The "confidential information" will be disclosed only to Intervenors' trial counsel (3B(i)), and he may not divulge the information, except to a single employee of the Intervenors, if that employee is to use the information to prepare for a search of an area designated by Plaintiff (3B(ii)). Or, Intervenors can try to convince Plaintiff that some additional person to whom they propose to disclose information will not cause Plaintiff injury (3C), in which case Plaintiff might authorize such additional disclosure (3B(iv)). Intervenors' counsel cannot request help to interpret confidential information from any outside expert, either before or after the search, unless to support the search and to support the motion.

If Intervenors receive any "confidential" information from Plaintiff and are successful on their motion to dismiss, or if they otherwise establish that the find is an abandoned vessel that belongs to Michigan, they will still be foreclosed from using the information received or discovered thereafter to fulfill their legal responsibilities under Michigan law. Discovery becomes a poisoned pill-- if Intervenors can even pay for the price of the medication.

In its motion, Plaintiff represents to the court that it is prepared to produce "assembled" materials "forthwith." But, Plaintiff has not produced even documents relative to which it does not claim privilege, such as the resumes of certain witnesses. And, Plaintiff has indicated it will produce only copies of the materials Intervenors asked Plaintiff to produce for review, and only at a price. (Exhibit 3). Intervenors must pay an initial fee of $5000 toward the cost of

---

[4] *Chance*, 606 F Supp 806. Plaintiff appears to claim that it has proprietary rights (its lien in recovered objects?!), that prevent anyone from accessing the entire area it has chosen or acquiring information about its find, which is located in public waters. No such rights exist.

5

production of these copies. And, as if to dispel any belief that the copying will sustain the integrity of the originals, Plaintiff indicates that no side scan sonar print outs will be produced until Intervenors pay Plaintiff $30,000, so Plaintiff can hire a contractor to excise from the scans all information disclosing their location, after which Plaintiff will produce only excised copies. (Id). According to its responses, even if the Court enters the protective order Plaintiff will withhold information that would "compromise the coordinates of the shipwreck." (Exhibit 2).

Plaintiff presents nothing to the court to support any claim that it has any proprietary interest in the information for which it seeks protection, very likely because it has none. There is no objective basis for Plaintiff's claimed right to protect the information it has and that others might obtain about the condition, location, status and identity of any wreck.

Plaintiff comes before this court claiming to be a salvor[5] of a wreck in public waters and affixed to Michigan lands. A salvor may obtain a lien in recovered goods, *Dluhos v The Floating and Abandoned Vessel Known as "New York,"* 163 F3d 63, 68-69, 73 (2d Cir 1998), and may have a right to continue a salvage operation and prevent third parties from interfering with it. A salvor does not have any peculiar right to search public waters or to observe what is present in those waters and lands. *Hener, supra.*

The law of salvage developed to secure the prompt return of vessels and goods to commerce. Salvage activity gives rise to a lien in the goods salved, which attaches only to the saved property, and authorizes an in rem action against those goods to secure payment for the services rendered. *RMS Titanic, 171 F3d at 963.*

---

[5] Plaintiff apparently abandons its claim to title to an abandoned vessel. It purports to limit its status to that of a salvor and to limit the scope of its pleading that the wreck is abandoned. As originally stated in Intervenors' motion to dismiss, the state owns any abandoned ship with the historical qualities asserted in the complaint, particularly when embedded in state lands, as this find indisputably is. Intervenors also deny that Plaintiff can invoke the law of salvage.

6

Salvage of historical vessels may create a problem for salvors, since the maximum amount that can be awarded for successful salvage is the present market value of the property saved. *Platoro, Ltd v Unidentified Remains of Vessel, etc.*, 695 F.2d 893, 904 (5th Cir., 1983); *R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 323 F. Supp. 2d 724 (D. Va., 2004). Courts have burdened salvage operations of ancient wrecks by basing their determination of the appropriate salvage award in part upon the extent to which the operations have protected archaeological values, see, *Columbus-America Discovery Group v. Atlantic Mut. Ins. Co.*, 974 F.2d 450, 468 (4th Cir, 1992), even though such protection may restrict the salvor's ability to recovery the goods upon which the lien can be stated. At least when not filled with treasure, the greatest value of an ancient wreck is likely to be its archaeological value, not its salvage value. As a result, salvors have urged the courts to extend the law of salvage to include the right to exploit the cultural object itself.[6]

This effort came to an end in the Titanic litigation, where the salvor found it impossible to recover its expenses from the recovered materials, and, for a time, the court was persuaded to extend an exclusive right to photograph the vessel. The Fourth Circuit Court of Appeals summarized the situation and the limitations of salvage law, which prevent a salvor from exploiting for the salvors own benefit goods that are not yet recovered:

> We are aware of no case in the United States or in the body of jus gentium, however, that has expanded salvage rights to include this type of a right. More importantly, we are not satisfied that the law of salvage would be properly extended to give salvors exclusive image recording rights in yet to be saved property. The underlying policy of salvage law is to encourage the voluntary assistance to ships and their cargo in distress. . . . And the salvage service is useful to owners only when it effects a saving of the specific property at risk. The law does not include the notion that the salvor can use the property being salvaged for a commercial use to compensate the salvor when the property saved might have inadequate value. Traditionally, the inducement for salvage service is

---

[6] *Columbus America*, a case involving the open ocean, was an early proponent of this position.

> limited to the court's award of compensation and reward, which may be enforced in personam against the owner without regard to the property saved or in rem against the property saved.
>
> To award, in the name of salvage service, the exclusive right to photograph a shipwreck, would, we believe, also tend to convert what was designed as a salvage operation on behalf of owners into an operation serving the salvors. The incentives would run counter to the purpose of salvage. Salvors would be less inclined to save property because they might be able to obtain more compensation by leaving the property in place and selling photographic images or charging the public admission to go view it. [*RMS Titanic v Hener*, 171 F3d 969-970.]

In the end, the court reduced the amount of recovery due after sale of salvaged artifacts by the amounts the salvor had collected by controlling photography of the Titanic. *RMS Titanic*, 323 F Supp2d 743. There is no right to appropriate the use of a find in place.

Plaintiff's effort to assert a proprietary right to exploit its find in place is a continuation of the rejected effort to exploit matters that are not appropriately salvaged but are appropriately studied in place and never returned to the stream of commerce.

Admiralty law of salvage and law of finds provide private parties with some incentive to find and exploit ancient wrecks. To remove those incentives and to protect the cultural value of ancient wrecks in state waters, Congress passed the Abandoned Shipwreck Act, which removed federal protection from ancient wrecks. But, Congress could not prevent private interests from trying to find ways to profit from their discoveries.

Here Plaintiff tries to sustain an interest in its find by insinuating that it acts as an agent of France, which may claim an interest and allow Plaintiff to conduct archaeological and salvage activities at a profit. But, France is not a party. And, Plaintiff has not actually pleaded that France owns the find, perhaps in an effort to sustain court jurisdiction despite France's sovereign immunity.

The court initially declined to dismiss this case, anticipating that the Plaintiff would disclose the location of the subject wreck and allow Michigan, as a possible owner, to investigate and obtain additional facts disclosing the condition and perhaps the identity of the find. Intervenors request the court to determine whether it has jurisdiction before considering whether to enter a protective order. Under *Chance*, the fact that the find is affixed in Michigan lands establishes Michigan ownership, unless claimed by the original owner. The court should not enforce any order that would control a sovereign state, its lands and cultural property on the basis of asserted rights, with no demonstrated basis, unless there is some showing of jurisdiction.

When the court denied Intervenors' motion as a motion for a more definite statement, the order provided that Plaintiff could file materials that would disclose the precise location of the defendant under seal. Such a procedure is consistent with Michigan's policy of avoiding unnecessary disclosure of archaeological sites. To implement that order and to facilitate resolution of the pending motions and this case, Intervenors are prepared to accept mutual limitations upon use of documents that disclose the precise location of the alleged defendant. Intervenors' draft order, Exhibit 4, recognizes the lines of authority within state government, avoids unnecessary public disclosure in case the court ultimately lacks jurisdiction over the sovereign property of France or Michigan, and preserves the ability of those states to protect property from public disclosure.

In light of Plaintiff's failure to show any privilege or ownership interest that limits its obligation to respond to the requests for production, Intervenors request that, if the Court determines that it has in rem admiralty jurisdiction and that discovery should proceed under the present pleadings, it also:

1. Reject Plaintiff's proposed order requesting provisions that violate the 11th amendment and the Intervenors' limited appearance.

2. Deny Plaintiff's Motion for Protective Order, at least until such time as Plaintiff submits particular items to the court and makes a showing that those particular items or categories of items are protected by some recognized privilege or ownership interest.

3. Order Plaintiff to produce the materials requested, unexpurgated and without excessive cost, under seal, if appropriate, even when they show the location, condition or identity of the subject find.

4. Order Plaintiff to disclose the precise location of the defendant under seal so that Intervenors can present their motion to dismiss and defend this action and the Court can grant relief, avoiding unnecessary disclosure of the location of the find by filing it under seal, until further order of the court.

5. Control the filing and dissemination of materials that disclose the precise location of the Defendant, as by the order proposed by Intervenors and attached as Exhibit 4.

Respectfully submitted,

Michael A. Cox
Attorney General

James R. Piggush (P29221)
Assistant Attorney General
Environment, Natural Resources,
and Agriculture Division
P.O. Box 30755
Lansing, MI 48909
517/373-7540

Dated: June 29, 2005
s:nrd/ac/cases/open/great lakes exploration 04ag/ intervening defendants' reply to motion for protective order