Great Lakes Exploration Group LLC v. Unidentified Wrecked and (For Sa...bandoned Sailing Vessel, The                                    Doc. 46

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
Northern Division

GREAT LAKES EXPLORATION
GROUP LLC

                Plaintiff,

v.

The Unidentified, Wrecked and (For
Salvage-Right Purposes), Abandoned
Sailing Vessel, her tackle, apparel,
appurtenances, cargo, etc. located
within a circle having a radius of 3.5
statute miles, whose center point is at
coordinates 45° 32.8' North latitude and
86° 41.5' West longitude,

                *In Rem*

                Defendant,

and

MICHIGAN DEPARTMENT OF HISTORY,
ARTS AND LIBRARIES AND MICHIGAN
DEPARTMENT OF ENVIRONMENTAL
QUALITY,

                Intervenors.

Civil Action No. 1:04-CV-375

HON. ROBERT HOLMES BELL

---

Robol & Winkler LLC
555 City Park Avenue
Columbus, OH  43215
614/559-3846

Roger W. Boer
Roger W. Boer, LLC
161 Ottawa Avenue, NW
Grand Rapids, MI  49503
616/235-3500

James R. Piggush
Assistant Attorney General
Environment, Natural Resources,
and Agriculture Division
P.O. Box 30755
Lansing, MI  48909
517/373-7540

---

**INTERVENORS' REPLY TO MOTION**
**<u>FOR PROTECTIVE ORDER</u>**

Dockets.Justia.com

The court has entered a protective order that very specifically controls use of information concerning the precise location of the defendant. Left unanswered by the represent motion is what discovery requests and information will be controlled by the permanent restrictions Plaintiff now requests and why?

After the May hearing, the court denied the Intervenors' Motion to Dismiss (15), "predicated upon Plaintiff's compliance with Intervenors' request for documents and exhibits and the precise location of Defendant."[1] It proposed to hold an additional hearing concerning in rem jurisdiction in mid-July, after Plaintiff responded to Intervenors Requests to Produce (31), and Intervenors investigated the Defendant in place. Intervenors are to report back to the court within 30 days of receiving the requested information (39). Delay until July would also allow France to determine whether to assert any claims it might have to the defendant.

On July 13, the court issued its order concerning the handling of documents filed under seal as authorized by under the May 10 order. The order limits dissemination of materials relating to the precise location of the defendant (44) to avoid unnecessary disclosure of the location of archaeological sites, but sanctions Plaintiff's dissemination only by loss of the restrictions imposed upon the Intervenors.

Now Plaintiff propounds the extraordinary view that it can hide a laundry list of so-called "trade secrets", from disclosure, most categories of which are not even implicated by the present discovery requests. But, if the court adopts the three requested inserts and the proposed deletion, Intervenors will have the burden of showing that particular material has been improperly designated. And, Plaintiff can distribute the very same information to any others. The proposed

---

[1] Plaintiff characterizes this action as a court directive, but only to disclose the precise location of the shipwreck and debris fields (45, p. 2). If that's what the court directed, it didn't matter: Plaintiff still has not provided the precise location of anything under any circumstances.

order would limit Intervenors to their present state of knowledge concerning the location, nature, composition and/or characteristic [of the], search for, research regarding or exploration of the Defendant, even in efforts to protect the defendant under Michigan environmental and criminal law. And again, the order shifts the burden. If Plaintiff "discloses" anything within Intervenors' current knowledge, (even information contained in Michigan libraries, if Plaintiff "researches" and designates it), it still becomes Plaintiff's property unless, within 10 days of Plaintiff's first disclosure, Intervenors prove that they have the same knowledge. That should keep Intervenors busy! Anything Plaintiff designates is protected, unless challenged. The protection will outlast the litigation, even if Plaintiff is not otherwise successful, effectively creating a property interest not otherwise recognized by law.

Supp R Civ P E(2)(a) , requires an in rem litigant to sufficiently describe the circumstances from which an *in rem* claim arises to allow investigation of the facts without moving for a more definite statement.[2] Intervenor turned to discovery for needed information.

F R Civ P 34(b) imposes an affirmative duty to permit inspection of documents as requested, or to object to the request. Intervenors have requested numerous matters referenced in the complaint (See, Exhibit 1). Plaintiff has not produced any of the materials to which it has stated no objection. The objections Plaintiff presented to court in its motion for protective order (40) were rejected, except as provided for by the July 13, 2005 Order. Given Plaintiff's failure to

---

[2] Even though it now declares that information concerning the wreck must be protected because it was created at great expense and is not easily duplicated, Plaintiff has also claimed that, given the description of the defendant in the complaint, it would be an easy matter for any interested party to locate the defendant and get any needed facts for themselves. Given the delays, Intervenors anticipate that they must take Plaintiff at its initial word and begin the unnecessarily difficult search for the subject of this litigation or they will lose the entire diving season and any opportunity to independently document its condition. If they wait until Plaintiff is ready, they may also have to debate the source of information with Plaintiff. Intervenors may look to Plaintiff for excess costs imposed by unjustified delays and improper burdens upon ordinary discovery.

produce, even according to the court's "directive," the court should not impose any additional restrictions, lest the focus of this litigation become how far Plaintiff can profit by creating peripheral issues, not resolution of Plaintiff's claim to a defendant wreck.

As a general rule, discovery is conducted in public,

> As a general rule, pre-trial discovery proceedings are conducted in public unless compelling reasons exist to deny public access. American Telephone & Telegraph Co. v. Grady, 594 F.2d 594, 596 (7th Cir. 1979); Parsons v. General Motors Corp., 85 F.R.D. 724, 726 (N.D.Georgia 1980); Essex Wire Corp. v. Eastern Electric Sales Co., 48 F.R.D. 308, 310 (E.D.Pa.1969). A court has broad discretion to impose conditions on the release of information to protect a person from harmful effects of disclosure. Fed. R. Civ. P. 26(c). [Waelde v. Merck, Sharp & Dohme, 94 F.R.D. 27, 28 (D. Mich., 1981).]

A party seeking a protective order under F R Civ P 26(c) bears the burden of demonstrating those compelling reasons.

> A party seeking a protective order under Rule 26(c) bears the burden of demonstrating "good cause" required to support such an order. See Nix v. Sword, 11 Fed. Appx. 498, No. 00-3033, 2001 WL 599707 at *2 (6th Cir. May 24, 2001); General Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1212 (8th Cir.1973); Trans Pac. Ins. Co. v. Trans-Pac. Ins. Co., 136 F.R.D. 385, 391 (E.D.Pa.1991). "The party seeking the protective order must show good cause by demonstrating particular need for protection. Broad allegations of harm unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Lewis v. St. Luke's Hosp. Ass'n, 1997 U.S. App. LEXIS 34854, No. 96-4147, 1997 WL 778410 at *4 (6th Cir. Dec. 9, 1997), quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3rd Cir.1986). [Denhof v. Dolan, 2003 U.S. Dist. LEXIS 23135 (D. Mich., 2003).]

Judge Brenneman stated the specific standards applicable to a motion based upon alleged trade secrets, as follows:

> To obtain a protective order under Fed. R. Civ. P. 26(c)(7), the movant must show 1) that the material is a trade secret or other confidential information and 2) that disclosure would "work a clearly defined and very serious injury." United States v. IBM, 67 F.R.D. 40, 46 (S.D.N.Y.1976); Accord, Monaco v. Miracle Adhesives Corp., supra at 1401-02; Reliance Insurance Co. v. Barron's, supra at 202-03. See also Essex Wire Corp. v. Eastern Electric Sales Co., supra at 310. ("great competitive disadvantage and irreparable harm"); Parsons v. General Motors Corp., supra at 726 ("create a competitive disadvantage"). Moreover, vague and

> conclusory allegations of confidentiality and competitive harm are insufficient. The movant must make "a particularized showing that the information sought is confidential" and come forth with "specific examples" of competitive harm. Parsons v. General Motors Corp., supra at 726. See also General Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1212 (8th Cir. 1973) quoting 7 Wright & Miller, Federal Practice & Procedure § 2035 at 265; Monaco v. Miracle Adhesives Corp., supra (show "specific harm"); United States v. IBM Co., supra (value of data to competitors was "speculative"); Hunter v. International Systems v. Controls Corp., 51 F.R.D. 251, 255 (W.D.Mo.1970) (specify "precisely how the disclosure of the information would prejudice defendant"); Essex Wire Corp. v. Eastern Electric Sales Co., supra at 312 (show a "clearly defined injury"). [Waelde v. Merck, Sharp & Dohme, 94 F.R.D. 27, 28 (D. Mich., 1981)].

Plaintiff has repeatedly failed to acknowledge these standards in its motions before this court, and still fails to meet them, resorting to nonspecific announcements and declarations wholly unrelated to any specific discovery requests. It does not even illustrate how any loss of any information can adversely affect its property.

Plaintiff first requested a protective order with no citation of legal authority (40). It now requests an order to protect "trade secrets." (45).[3] Submission of a "Rebuttal Affidavit" shows that it still does not acknowledge its burden. And, Plaintiff still does not present any of the materials it wants to protect, identify the competitors from whom its wishes to protect its "secrets" or how they will use them, or explain how release of designated materials will adversely affect it.

The State of Michigan has a statutory obligation to protect artifacts of the sort referenced in the complaint on behalf of the public. Plaintiff's admiralty claim is for salvage. Yet, Plaintiff focuses upon the possibility that Michigan will claim independent discovery of information about the defendant. What legal damages would result from such a claim? Plaintiff leaves that question unanswered.

---

[3] Plaintiff does not seek merely to protect images of a work produce that might be protected under copyright law. The wreck in question is not Plaintiff's creation, and Plaintiff has no rights in it under copyright law. 17 USC 103(b). .

4

Mr. Libert's "Rebuttal Affidavit" is entirely generalized[4] and wholly conclusory, referencing trade secrets and proprietary information arising "because of the nature of historic shipwreck exploration," secret "know how" about the exploration industry and information that is "frequently" the result of extended labor. Here? Assuming a legal right to protect its "secrets" from unnamed competitors, the affidavit anguishes about the prospect the state will misappropriation of its secrets. It does not say how any one else can profit from information it has a right to claim as its own. It declares that explorers generally favor liquidated damage agreements, and expresses affiant's concern about how difficult it might be to prove damages, so it declines to specify the purported consequences, except to indicate that they are perhaps financial and likely bad. It relies wholly upon the unfounded assumption that discovery of a purported wreck creates a right to profit from information about the find that can be protected by an admiralty court. Plaintiff's burden was to identify specific trade secrets and show how disclosure would harm Plaintiff. The affidavit ignores the fact that the nature of historic shipwreck exploration and its consequences lead congress to suspend the operation of admiralty law concerning exploration of historic vessels. 43 USC 2106.

Admiralty may protect salvors-in-possession from interference by others where the salvor has an ongoing, successful salvage operation, but not just a search operation. Information about a wreck does not become proprietary upon discovery of the wreck, and particularly in the case of an ancient, historic shipwreck in Michigan waters.

Although Plaintiff declares that admiralty courts recognize a broad range of trade secrets in addition to location, Plaintiff does not provide a single cite that shows that admiralty protects

---

[4] It is specific only when making unfounded hearsay representations about supposed communications between the Intervenors and France, false statements, as discussed below, concerning Intervenors' use of materials filed under seal, and representations concerning statements made during a hearing at which affiant was not present.

5

even location as a trade secret.  The "Order on Confidentiality" entered by the Eastern District of Virginia on June 30, 1989 in *Columbus-America Discovery Group, Inc v The Unidentified, Wrecked and Abandoned Sailing Vessel, etc.,* (ED Va, No. 87-363-N) is not reported anywhere.  The court's reported June 30, 1989 order, 1989 AMC 1955, was not "on confidentiality" but addressed a motion requesting title to certain salvaged goods, relief that was available to a salvor under local law at the time (¶ 6).  At ¶ 13 of its conclusions of law, the court observed, even without adopting the statement, that "In the emerging deep ocean industry, information is considered valuable and proprietary."[5]  A laundry list of "important information" follows, not a list of protected trade secrets.  Considered as a statement of trade secrets, the language is dicta, and wholly gratuitous, very likely reflecting material presented during argument or incidentally in affidavit.

As noted in the Intervenors Response to the Motion for Protective Order (41, p 4. n 3), the claimed right to appropriate intellectual information about a wreck asserted in Columbus-America was expressly rejected in *RMS Titanic, Inc v Haver*, 171 F3d 943, 976-970 (4th Cir, 1999).  The law of salvage is designed to restore goods and ships to the stream of commerce.  It protects a salvor's interest in successful salvage, *The Blackwell*, 78 US (Wall) 1 (1869), and gives rise to an interest in the salvaged goods, not control over information about the history and location of a find.  The salvor's reward is limited to the present market value of the property salved, and does not extend to exclusive movie rights or to text book royalties for any subsequent dissemination of information about a wreck.  Plaintiff seeks to profit, not from salvaging the defendant, but from leaving it in place.  Admiralty does not support such activity.  There is no rescue; no exclusive rights.  See, *RMS Titanic v Haner*, 171 F3d 969-970.

---

[5] It is noteworthy that the case related to the open ocean, where no nation holds title to bottomlands on which historic vessels rest or in which they are embedded.

No proprietary interest in information about an historic wreck can be found in Michigan law either. The Abandoned Shipwreck Act sets federal policy and suspends admiralty law of finds and of salvage, vesting title to abandoned, embedded and historic vessels in the states. In turn, except as it recognizes the right of all to use its waters in common with others and guarantees that right, Michigan protects the cultural heritage in and on its bottomlands from exclusive appropriation by others, as follows:

> (1) The state reserves to itself the exclusive right and privilege, except as provided in this part, of exploring, surveying, excavating, and regulating through its authorized officers, agents, and employees, all aboriginal records and other antiquities, including mounds, earthworks, forts, burial and village sites, mines or other relics, and abandoned property of historical or recreational value found upon or within any of the lands owned by or under the control of the state.
> (2) The state reserves to itself a possessory right or title superior to that of a finder to abandoned property of historical or recreational value found on the state owned bottomlands of the Great Lakes. This property shall belong to this state with administration and protection jointly vested in the department and the department of history, arts, and libraries. [MCL 324.76102.]

Stated otherwise, Michigan reserves to itself the right to possess and to investigate, except as others are authorized by law, the object that Plaintiff seeks to withhold and control, even though Plaintiff initiated a lawsuit that requires it to disclose its information to support its salvage claim.[6]

Despite the state's claim that no third party has the right to control information about abandoned artifacts in and on its bottomlands, Intervenors have abided by and will continue to abide by the court's orders concerning materials filed under seal. Plaintiff's handling of sealed materials suggests that the current motion is intended to create peripheral issues and counsels against unwarranted extensions of court protection.

---

[6] Plaintiff protests the same restrictions it seeks to enforce against Michigan as too restrictive for it, because they would prevent interactions with necessary consultants.

During the May hearing, Plaintiff ceremoniously announced that Intervenors had disclosed, purportedly from documents filed under seal, that the vessel in question is the Griffin and announced further, purportedly in light of the Intervenors' breach of the Court's Order sealing documents, that it is only interested in the Griffin, which it believes it has found.[7]

Unlike Plaintiff, Intervenors have presented only public information to the court. At page 3 of the public portion of Mr. Libert's affidavit in opposition to the Motion to Dismiss (20, # 2), he referred to an article from the Grand Rapids Press dated July 8, 2004, in which Mr. Halsey, the State Archaeologist, purportedly revealed Mr. Libert's belief that this case is about the Griffin. At page 7, note 7 of their Reply (33), Intervenors discussed the quotes attributed to Mr. Halsey and invoked public information. The entire discussion comes from the Intervenors' own, public discovery responses, which included Plaintiff's request for Intervenors to admit that this case involves the Griffin. Mr. Lusardi's Affidavit (10), which supposedly "releases" information filed under seal (45, p 4-5, n 3), was filed on October 14, well before the February 9 order that it supposedly violates. There was no need for Intervenors to invoke sealed affidavits to state Plaintiff's objective, even if their knowledge could not control the pleadings. Plaintiff's representatives and agents had already disclosed Plaintiff's objective to Intervenors' representatives and to others, as documented in Intervenors' discovery responses. Plaintiff obtained the court's seal after the fact of disclosure, and then tried to impose consequences upon Intervenors because Plaintiff wanted to control information already in the public domain.

---

[7] This declaration does not give this court any greater interest in this litigation or obligation to protect the defendant, because of a possible interest of the French government. If defendant is a ship of a foreign state, the court may lose admiralty jurisdiction based upon sovereign immunity or suspension of the law of finds and of salvage. (See, 41, p2). Plaintiff cannot assert the proprietary rights of a third party.

Plaintiff's brief contained three pages that affirmatively declare the content of the "sealed portion" of the affidavits of Dr. Demel and Mr. Libert. In contrast, Intervenors have studiously avoided disclosure of any part of them. There is no affirmative disclosure of the content of sealed affidavits in Intervenor's representation that Plaintiff had provided no foundation for any opinion that the claimed vessel belongs to any foreign nation. Plaintiff ignores and waives the seal, as it deems fit.

Plaintiff challenges the right of others to learn about the Defendant. It says that the court must prevent the Intervenors from making any claim that they have information about the defendant shipwreck from independent sources, when they have in fact relied upon information filed under seal (for the improper purpose of learning the condition of the vessel?!!), so the court must bind Intervenors by their representation that the Defendant is a "barn timber" and not the Griffin. Because the evidence released so far indicates that the find is more likely a barn timber than a ship, Plaintiff claims that Intervenor should never be allowed to say different, unless by leave of Plaintiff. The proper conclusion is that admiralty can only award Plaintiff salvage of a barn timber, since that is all that it has publicly disclosed.

Most noteworthy, perhaps, of the improper restrictions that Plaintiff again asks the court to impose is the restriction that would control Michigan law enforcement. Plaintiff asks the court to strike provisions of the current order that protect Michigan's sovereign right to enforce its criminal and regulatory laws and to limit such enforcement, except as based upon its current state of knowledge, even if based upon public knowledge about the defendant at the time, whatever the outcome of the litigation, lest Michigan rely upon knowledge that arises from discovery. The request is for preemptive injunction against enforcement of criminal laws.

## CONCLUSION AND PRAYER FOR RELIEF

The court has issued an order that protects archaeological sites from unnecessary disclosure, the principal defect of which is not that it imposes too little restriction upon the Intervenors but that it leaves Plaintiff free to disclose the location of what may be a unique archaeological site, subject only to loss of the secrecy, allowing Plaintiff to impose upon Michigan burdens associated with protecting a widely-known archaeological site. Plaintiff has not identified a single discovery request, the disclosure of the response to which will produce legally recognized injury. It bears that burden.

Intervenors request the court to deny Plaintiff's motion for permanent protection of whatever it designates as a trade secret and for further limitations on discovery, at least until Plaintiff shows that discovery requests require it to reveal legally protected information, to its specific detriment. Until such time as the actual character of the defendant can be determined, its location is properly protected by the existing order.

Respectfully submitted,

Michael A. Cox
Attorney General

/s/ James R. Piggush

Dated: August 5, 2005

James R. Piggush (P29221)
Assistant Attorney General
Environment, Natural Resources
   and Agriculture Division
517/373-7540

s:nrd/ac/cases/open/great lakes exp 04ag/intervenors reply to mot for protective order