IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
Northern Division

GREAT LAKES EXPLORATION )
GROUP LLC )
 )
            Plaintiff, )
 )
v. )  Civil Action No. 1:04-CV-375
 )
The Unidentified, Wrecked and (For )  HON. ROBERT HOLMES BELL
Salvage-Right Purposes), Abandoned )
Sailing Vessel, her tackle, )
apparel, appurtenances, cargo, etc. )
located within a circle having )
a radius of 3.5 statute miles, whose )
center point is at coordinates )  **INTERVENORS' REPLY TO**
45° 32.8′ North latitude and 86° 41.5′ )  **AMENDED MOTION TO FILE**
West longitude, )  **SECOND AMENDED COMPLAINT**
 )
            *In Rem* )
 )
            Defendant, )

v.

STATE OF MICHIGAN DEPARTMENT
OF HISTORY, ARTS, AND LIBRARIES
AND MICHIGAN DEPARTMENT OF
ENVIRONMENTAL QUALITY,

            Intervenors.
_____/

Richard Thomas Robol
Robol & Winkler LLC
555 City Park Avenue
Columbus, OH 43215
614/559-3846

Roger W. Boer
Roger W. Boer, LLC
600 Waters Building
161 Ottawa Avenue NW
Grand Rapids, MI 49503
616/235-3500

James R. Piggush
Assistant Attorney General
Environment, Natural Resources,
and Agriculture Division
P.O. Box 30755
Lansing, MI 48909
517/373-7540

## INTERVENORS' REPLY TO AMEMDED MOTION
## TO FILE SECOND AMENDED COMPLAINT

### Introduction

Rather than providing the Intervenors and the Court with the precise location of the purported in rem Defendant, Plaintiff has submitted a proposed Second Amended Complaint (Docket 60). The proposed amended pleading and the affidavit of Mr. Steve Libert designate the Defendant as the "Griffon" and describe it "with as much precision as practical," as distributed into three, widely separated, .8 square mile areas, a statement contradicted by previous acknowledgements that sonar records provide pinpoint location of such "Defendant." (Exhibit 1, attached). Intervenors oppose this amendment because the pleading still fails to identify any in rem defendant, so that it does not comply with the Court's prior order, and this Second Amended Complaint, as amended, is still subject to dismissal. It is timed for maximum prejudice to Intervenors.

On May 10, 2005, this Court held in abeyance Intervenors' Motion to Dismiss for lack of jurisdiction until after Intervenors reported that Plaintiff has complied with their request for documents and exhibits and the precise location of the Defendant and filed the precise location with the court (Docket 39).

Even after its original order, this Court made it clear that Plaintiff that must disclose the precise location of the Defendant to save this action. On July 13, 2005, the court issued a protective order that "permits disclosure of Defendant's location and other materials and information related to the Defendant, while maintaining strict confidentiality." (Docket 43). On August 19, 2005, when ruling upon Plaintiff's Motion (Docket 45) to amend the Court's "Order Concerning Documents Filed Under Seal," (Docket 44), the Court stated:

> Over three months ago, the Court ordered Plaintiff to disclose the location of Defendant to Intervenors in order to facilitate the necessary investigation of Defendant. In light of the need for confidentiality as well as to ensure the prompt disclosure of the location, the Court also entered a protective order sealing documents containing the precise location of the Defendant.
>
> \*\*\*
>
> The Court reemphasizes that Intervenors must be given the precise location of Defendant. Given the rapidly approaching seasonal change and the unpredictability of northern Michigan weather, the parties must move with expedited speed in order to accomplish this investigation. The disclosure of Defendant's location will greatly assist this task.

The proposed Second Amended Complaint does not describe the location of any in rem defendant. It describes only an historic vessel and proposed search areas. By describing the location of the Defendant only by hypothetical regions where it believes a wreck may be located, Plaintiff prevents Intervenors from investigating any in rem defendant and compels Intervenors, at this late date, to expend the short time available in this stormy period of the year searching parts of Lake Michigan, looking for they know not what. Intervenors will have to dive every aberration on a sonar screen that could be a half-buried fragment of a 325 year-old, 50 foot-long, wooden boat, or any of its cargo, spread out over a 20 square mile area. The amendment does not provide the precise location of any in rem defendant, and it does not cure the defects in this action so as to avoid dismissal. (Attachment 1, Lusardi Affidavit).

The purported identification of the Defendant by search zones unmasks the fundamental defect in this action. The complaint fails to show any admiralty lien in any object by which the court can assume in rem admiralty jurisdiction over anything. What Plaintiff asks is for the court to take control over Michigan bottomlands, despite the limitations of the 11th Amendment. Plaintiff leaves the court and Intervenors to guess the subject of the court's jurisdiction and to imagine a subject for arrest (Docket 34). The proposed Amended Second Amended Complaint says: Go fish, and you'll have to guess what for.

Plaintiff's motion to amend the complaint is made in bad faith and is intended to prevent necessary investigation. It is timed to interfere with the Intervenors' ability to defend the case and to prevent them from gathering additional evidence concerning the identity of the find and its presence in Michigan's soil. The amended pleading still fails to show in rem Admiralty jurisdiction.

Plaintiff can file an amended pleading if it shows that justice so requires. Fed R Civ P 15a. In the Sixth Circuit, the courts decide motions to amend in light of delay, bad faith, prior efforts to cure, undue prejudice and futility of amendment.

> In deciding whether to grant a party leave to amend a pleading, the district court should consider delay in filing; lack of notice to the opposing party, repeated failure to cure deficiencies by previous amendments, undue prejudice to opposing party, and futility of amendment. *Coe v Bell*, 161 F3d 320, 341 (6th Cir, 1998).

In consideration of such factors, the court should reject the proposed Second Amended Complaint and dismiss this action.

Intervenors challenged the Amended Complaint under Fed R Civ P 12(b)(1) on facial and factual grounds. *Smith v Northwest Airlines, Inc*, 141 F Supp 2d 936, 939-940 (WD Tenn, 2001). The proposed amendment does not cure those defects.

### A. The proposed amendment still does not sufficiently describe an in rem defendant to allow exercise of in rem jurisdiction.

The Description of the defendant in the original complaint (Docket 1) was defective (Docket 5). Intervenors' facial challenge to the Amended Complaint (Docket 6) focused upon its insufficient disclosure of the location of an in rem Defendant and its failure to show any lien on the basis of which the court can exercise in rem jurisdiction. Both defects remain in the proposed pleading.

In anticipation of Plaintiff's promised compliance with the Intervenors' requests for documents and exhibits and the precise location of the Defendant (Docket 39), the court saved the Amended Complaint, considering Intervenors' motion to dismiss insofar as it could be considered a motion for a more definite statement.

3

During argument on its subsequent motion for a protective order, Plaintiff represented that it was prepared to disclose "details regarding the shipwreck," but only on condition that the court enter a specified protective order (Docket 40), due to Plaintiff's belief that requested information about the in rem defendant is its trade secret. The Court did not enter Plaintiff's requested order, but issued an order that permits disclosure of the location of the alleged defendant and other information and materials related to the alleged defendant, while maintaining strict confidentiality (Docket 43). That isn't good enough for Plaintiff. Plaintiff still has not complied with Intervenors' requests for documents or disclosed the precise location of any in rem Defendant.

Discovery request No 8 (See, Docket 41, Exhibit 1) sought review of records showing the precise location of the alleged defendant, as follows: "Provide all logs, records, side scan sonar imagery, GPS location data and other documentation and reports that relate to the location of a wrecked and abandoned sailing vessel, her tackle, apparel, appurtenances, cargo, etc., as described in paragraph 2 of the verified amended complaint." Plaintiff tendered only copies of the imprints of side scan sonar surveys (Exhibit 1, attached), but, because "the side scan imprints contain exact, pinpoint locations," Plaintiff refused to produce the copies or allow the requested inspection until the location information had been redacted. Plaintiff even demanded that Intervenors pay $30,000 so Plaintiff could generate the "copies," with the exact, pinpoint locations redacted, incidentally rendering the copies useless. Now Plaintiff asserts that information showing precise locations of the wrecked and abandoned sailing vessel, her tackle, apparel, appurtenances, and cargo, is useless to disclose the location of the in rem defendant. Plaintiff is welcome to its trade secrets, but it must comply with the conditions for invoking the court's jurisdiction.

The proposed, Second Amended Complaint also continues the facial defects of the Amended Complaint by failing to identify anything in which Plaintiff claims a lien by which to invoke Admiralty jurisdiction, F R Civ P Supp C(1)(a), and by failing to assert the successful recovery of anything in which it can hold a lien so as to claim a right of salvage. (Docket 34). Admiralty protects the liens for services rendered, and it rewards those who undertake risks to return ships and goods into commerce. The complaint says no more than that Plaintiff will bring salvage into the court (¶ 9), has discovered and plans actual recovery of the wreck (¶ 10), is engaged in a process of obtaining control over the wreck (¶ 14), has conducted survey and similar "salvage" operations (¶ 19) and will be, but apparently has not been, successful in helping to save the shipwreck or to salvage the wreck (¶ 22).

Discovery of derelict property does not amount to salvage service, and does not create any admiralty lien over which the court can exercise admiralty jurisdiction. A salvage award requires maritime peril, voluntary action and successful salvage. *The Sabine*, 101 US 384, 25 L Ed 982 (1880). Plaintiff brings no salvage to the court as the in rem defendant, and careful reading of the complaint reveals that nothing has yet been rescued. Plaintiff proposes salvage in the future, apparently after "scientific exploration." It claims to have recovered knowledge and developed trade secrets; it does not show that it has not rescued anything for return to commerce. It proposes to leave the find in marine peril so it can be studied. This may be good archaeology and necessary to preserve any salvage award, but information is not a basis for in rem admiralty jurisdiction, which can only be based upon actual recovery, particularly where, as here, the Plaintiff has repudiated any claim to own the vessel itself. See, *RMS Titanic v The Wrecked and Abandoned Vessel*, 286 F3d 194, 205 (4th Cir 2002). In the absence of a claim based upon the

5

law of finds, the proper in rem defendant is not the vessel, but the objects salvaged from it. No such items are named as defendant or located.

The proposed Second Amended Compliant persists with a Count One, a claim of ownership of the "wrecked and abandoned sailing vessel, her engines, tackle, apparel, appurtenances, cargo, etc.", that is inconsistent with Plaintiff's representations to the Court that it seeks only salvage of a sovereign vessel, not ownership of the find. (Docket 20, n 11). If Plaintiff seeks only salvage, the find itself cannot be the subject of its lien or the in rem defendant. If Plaintiff seeks ownership, Plaintiff must also acknowledge abandonment.

Instead of asserting salvage services, rescue, and a lien on the basis of which the court can exercise admiralty jurisdiction, Plaintiff again asserts discovery, appropriation of information, and possible recovery, and seeks the exclusive right to persist in investigation, under court protection, after the court assumes jurisdiction over Michigan property. Admiralty jurisdiction does not arise on the basis of, nor does it protect a right to perform archaeological services, although it sometimes compels them.

B. The Court cannot exercise in rem jurisdiction over state property, as shown to the court.

Intervenors challenged in rem admiralty jurisdiction on a factual basis, as well. They submitted photos that Plaintiff had provided to them, which show that the find is in the soil of Michigan bottomlands. (Docket 15, Attachment 1). By exception to the law of finds, such embedded artifacts are not subject to admiralty jurisdiction under the law of finds. *Chance v Certain Artifacts Found and Salvaged from the Nashville*, 606 F Supp 801, 806-807 (D Ga, 1984). And, by Michigan law, such objects belong to Michigan and are not subject to private exploitation, except by permit, and any recovery is strictly controlled. Part 761, *Aboriginal*

*Records and Antiquities and Abandoned Property*, MCL 324.76101, *et seq.*, of the Natural Resources and Environmental Protection Act, MCL 324.101, *et seq.*

When applied to abandoned, historic vessels in state waters, traditional admiralty principles inappropriately foster private appropriation rather than preservation of such vessels as cultural treasures. To protect such resources, Congress passed the Abandoned Shipwreck Act (ASA), 43 USC 2101, *et seq.*, which confirms that the States are to manage state waters and submerged lands. By 43 USC 2105, the United States assumed and then transferred any title in such wrecks, not already reserved by the States, to the States, and eliminated the laws of salvage and of finds, which had sometimes been invoked to provide admiralty jurisdiction over ancient wrecks. 43 USC 2106. The federal courts are not to exercise admiralty jurisdiction over abandoned shipwrecks that are embedded in the Michigan bottomlands or are on Michigan bottomlands and eligible for inclusion in the National Register of Historic Places, 43 USC 2105; 2106.

In *Fairport International Exploration, Inc v The Shipwrecked Vessel known as the Captain Lawrence*, 105 F3d 1078, 1080 (6th Cir, 1997), the Plaintiff claimed title to the wreck of a vessel on the basis of a bill of sale from the original owners. Faced with the claim of ownership of the original owner, Michigan could invoke the ASA only by showing abandonment by clear and convincing evidence. *Fairport International Exploration, Inc v The Shipwrecked Vessel known as the Captain Lawrence*, 245 F3d 857, 860 (6th Cir 2001). Similarly, in *California v Deep Sea Research*, 523 US 491, 496-497; 118 S Ct 1464; 140 L Ed2d 626 (1998), the "salvor's" claim to the vessel was based upon subrogation from the original owners, the presentation of recovered artifacts to the court and the presence of the vessel on, not in, state bottomlands. The sole basis for the State's claim was the ASA.

Based upon the ASA, the embeddedness exception to the law of finds, and the photos presented to the court, the subject vessel belongs to Michigan and the court cannot exercise admiralty jurisdiction over it, except in violation of the 11th Amendment. (Docket 16).

Stating a belief that it has discovered what was originally the "Griffon," now distributed into three one-mile circles, five and six miles apart, does not save the complaint from dismissal. As shown in the photos before the court, that purported vessel is embedded in Michigan soil and remains Michigan property, subject only to the claim of the original owner. *Chance, supra*. No original owner is before the court to defeat Michigan's claim, although Plaintiff does its best to cover itself with the status of the original owner by representing that the entity it believes to be the successor of the original research expedition has agreed to let it investigate. Michigan has not; Plaintiff has not submitted necessary permit applications or otherwise submitted to Michigan law.

The affidavits of Mr. John Bruseth (Docket 36) and Mr. John Halsey (Docket 37) establish that the Griffon belonged to Robert de LaSalle and that it was engaged in a private commercial enterprise at the time of its loss.[1] After 325 years, the original owner won't appear, so that the private vessel can now be considered abandoned, unless someone claiming through him appears before the court as by a subrogation claim.

    C.    <u>The proposed amendment would undermine Michigan's ability to defend and to press its pending motion to dismiss.</u>

The affidavit of Mr. Wayne Lusardi discloses that the new descriptions of the "wreck's"

---

[1] Intervenors are aware that the French government has made a claim to the Griffon with the State Department and that that Department has yet to investigate or honor the claim. Based upon representations made to the court (Docket 45, Rebuttal Affidavit), Plaintiff is apparently misinformed about Michigan contacts with and representations to foreign governments.

8

locations actually make it more difficult to search for the subject vessel before investigation can begin, because Plaintiff still has not provided any information concerning the find. The timing of the restatement of locations makes investigation itself highly unlikely, given the logistics of undertaking a search of upper Lake Michigan during the fall and winter.

If Plaintiff can substitute debris fields for an in rem defendant at this late date, so that there are now three places to search, Plaintiff can claim that Intervenors have only demonstrated the condition of one of them. Further, if Plaintiff can substitute such debris fields and their vague description for an in rem defendant, Plaintiff need not disclose the information it has setting forth the pinpoint locations of its finds, so the Intervenors can inspect the condition of that "vessel." Further, if it can substitute the imprecise debris fields for an in rem defendant, the Intervenors are left to search, not to investigate. This, despite the fact that Intervenors are entitled to basic information in Plaintiff's possession that will aid Michigan in assessing its claim, a right not satisfied even by locating a find within two square miles. *Fathom Exploration, LLC v The Unidentified Shipwrecked Vessel*, 352 F Supp2d 1218, 1226 (SD Ala. 2005). None of these advantages arise from the merits of Plaintiff's case, but arise solely from the delayed substitution of its amended complaint for the disclosure necessary to satisfy its obligations under law and this court's prior rulings requiring Plaintiff to disclose the precise location of the defendant.

The restatement of the location(s) came just as the court announced a scheduling conference. If Plaintiff can now substitute hypothetical debris fields for the precise location of an in rem defendant, Plaintiff will be able to claim full disclosure, while preventing Intervenors from having any realistic opportunity to use the information to support their claim.

9

## CONCLUSION AND PRAYER FOR RELIEF

Plaintiff's complaint was, and, if amended as proposed by Plaintiff, will remain, facially and factually defective. The facts alleged do not support in rem jurisdiction over any object or any wrecked vessel, or even a lien. They do not disclose any ongoing salvage operation on which to base a claim to exclusive salvage rights. The proposed amendment avoids the discovery responses and the disclosure of the precise location of the Defendant that the court said are necessary to save Plaintiff's complaint. The amendment will prejudice Michigan's ability to defend this action and protect its sovereignty.

WHEREFORE, Intervenors request the court to: 1) deny Plaintiff's Motion to Amend its Complaint and 2) dismiss this action for lack of jurisdiction.

Respectfully submitted,

Michael A. Cox
Attorney General

James R. Piggush
Assistant Attorney General
Environment, Natural Resources,
and Agriculture Division
P.O. Box 30755
Lansing, MI 48909
517/373-7540

Dated: October 12, 2005
s:nrd/ac/cases/open/great lakes exploration 04ag/reply to motion to file 2nd amended complaint