IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
Northern Division

| | |
|---|---|
| GREAT LAKES EXPLORATION GROUP LLC<br>         Plaintiff,<br>v.<br><br>The Unidentified, Wrecked and (For Salvage-Right Purposes), Abandoned Sailing Vessel, etc.<br>         Defendant, et al. | )<br>)<br>)<br>)<br>)Civil Action No. 1:04-CV-375<br>)<br>)HON. ROBERT HOLMES BELL<br>)<br>) |

## PLAINTIFF GREAT LAKES EXPLORATION'S RESPONSE IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

### 1.   The Second Amended Complaint Identifies the Defendant With Sufficient Particularity.

Intervenors' Reply repeats their arguments in their original motion to dismiss, asserting that the Verified Second Amended Complaint is facially insufficient because it (1) fails to plead the description of the defendant with sufficient particularity under Fed. R. Civ. P. Supp. E, and (2) fails to plead successful salvage service. Int Reply at 3. Intervenors' arguments overlook both the rule of notice pleading under the Federal Rules of Civil Procedure and the precedents upholding similar complaints in past shipwreck cases.

The Second Amended Complaint identifies the Defendant as the *Griffin* shipwreck. See 2nd Am Cmpl ¶¶2, 6. It provides the date of the sinking. See 2nd Am Cmpl ¶6. It describes the ownership of the shipwreck. See 2nd Am Cmpl ¶5. It gives the precise location of the shipwreck, even to the extent of publicly identifying the 2.3 mile square area of the debris fields comprising the wreck. See 2nd Am Cmpl ¶2. See also Affidavit of Steven J. Libert dated 1/21/05.

PDF created with pdfFactory trial version www.pdffactory.com                                                                                  Dockets.Justia.com

As noted in previous filings on behalf of Great Lakes Exploration, the courts have time and again found such descriptions sufficient to comply with Rules C and E. It is therefore not necessary to discuss the fact that the only evidence in the record establishes that the description is as precise as possible in light of the dispersion of the shipwreck due to the energy, wind, wave and other conditions of the area.[1] See generally 4 *Benedict On*

---

[1] Intervenors may be confused over the distinction between "precise location," on the one hand, and "pinpoint location," on the other. The shipwreck's precise location is set forth in the Second Amended Complaint; and there is no pinpoint location for this particular shipwreck, due to the high energy conditions at the site of the shipwreck, the bottom conditions (including the three shoals), and the resultant dispersion of the shipwreck with wide artifact scatter and debris fields. *See* Affidavit of Dr. Scott Demel dated 01/24/05; Affidavit of Steven Libert dated 01/21/05; Affidavit of Steven Libert. This distinction has been discussed at length in Great Lakes Brief dated 01/27/05, the Affidavits of Dr. Demel and Steven Libert, and the colloquy among counsel and the Court at the Status Conference on 05/10/05. Although Intervenors also seem to think that admiralty law may be unfair to potential claimants in not requiring publication of publication of the "existing condition" of the property, it is not: under centuries-old admiralty principles, any person claiming an interest in maritime property—having chosen to enjoy the benefits of using the public seas for his own purposes— has a continuing duty to keep track of his property, which includes a duty to keep himself informed of the nature and location of such property. Intervenors thus continue to misapprehend the functional nature of admiralty practice and procedure, with its historical focus on getting to the merits of a case without cumbersome procedural hurdles, rigid forms or strictures, *see* 3A *Benedict On Admiralty* §287.

In this regard, Intervenors seem to think that Fed. R. Civ. P. Suppl. R. E(2) somehow provides an "entitlement" to visit the defendant shipwreck *in situ*. Of course, applying such a contorted and unprecedented construction to Rule E would turn the law of historic shipwreck exploration upside down, in contravention of the exclusive inchoate property right accorded to the first salvor in possession to continue in exclusive possession. 3A *Benedict On Admiralty* §151, *and cases cited therein* (by virtue of having rendered salvage service, the salvor's rights to continue its efforts spring into existence from the date of its efforts as an inchoate property right, and cannot be taken or displaced by anyone). *See, e.g. Treasure Salvors, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel,* 640 F.2d 560 (5th Cir. 1981).

The test under Fed. R. Civ. P. Suppl. E(2) is not whether Intervenors can "conduct an investigation," but instead whether they can "*commence* an investigation of the facts and …frame a responsive pleading." (emphasis added)). It is obvious that the Intervenors have been able to do so. Intervenors are aware that the Defendant is the *Griffin,* and they have been able to commence an investigation into the history and chain-of-title of that vessel and assert—rightly or wrongly—that it is no longer the property of France. Indeed, Intervenors even assert that the State of Michigan is the sole owner of all items on its submerged lands. Accordingly, Intervenors' complaint that, according to Mr. Lusardi, a sonar survey of the entire 2.3 mile area would require 2 days of effort is without merit.

PDF created with pdfFactory trial version www.pdffactory.com

*Admiralty* §3.02[D][2] (2003) (emphasis added) ("The particularity requirement of Rule E does not intend to change the pleading liberality traditional to admiralty. *It is only necessary that the facts must be sufficient to set forth a cause of action and the basis for the cause of action.*")

    The Amended Complaint goes well beyond the pleading forms long-accepted in admiralty practice and procedure. *See e.g., Benedict On Admiralty – Forms (Forms 1-1, 1-2, 1-3), attached as Exhibit 3.* This is particularly true as to the precedent on the proper description of dispersed shipwreck debris located in a high energy environments, such as the *Atocha*.

    The legal precedents upholding such descriptions of the precise location of shipwreck scatter are consistent with good and standard practices for the exploration and salvage of historic shipwrecks. As Intervenors' affiant, Mr. Lusardi notes in his Affidavit dated 10/19/04, "Even if broken apart and distributed widely across the lake bottom, shipwrecks can be valuable in our understanding of [the] past." The Field Museum's Dr. Scott Demel confirms that good and standard practices for underwater exploration and historical preservation in the Great Lakes Region dictate that to the extent practicable, all artifacts from shipwrecks having historic value be maintained under unified management to permit scientific and historic research. Permitting dispersion of artifacts from an

---

In addition to misapprehending the distinction between "precise location" and "pinpoint location," Intervenors' argument also continues to misapprehend the science and nature of underwater exploration and historic shipwreck salvage. *See* Affidavit of Dr. Scott Demel at 01/24/05. (need to study entire shipwreck *in situ*, including entire debris field and associated artifacts).

Finally, Intervenors' argument misapprehends the law and policies, both within the United States and under international maritime law, with respect to the salvage of historic shipwrecks owned by foreign sovereigns. See 55 CFR 5011 Part II – Guidelines D6 (encouraging *in situ* exploration and preservation, and conversely discouraging the removal of artifacts or destructive testing methodologies).

3

PDF created with pdfFactory trial version www.pdffactory.com

historic shipwreck, such as the *Griffin*, is inconsistent with such practices. Good practices also dictate that to the extent practicable, the entire scatter and debris fields for shipwrecks having historic value be included in the exploration and salvage effort.[2]

Still, Intervenors claim that the Second Amended Complaint is facially insufficient because, they assert, it fails to plead successful salvage service. Interv. Reply at 5. The Second Amended Complaint alleges the absence of salvage efforts by the original owners. See Second Amended Complaint ¶¶ 12, 13. It alleges that Plaintiff is actively and successfully engaged in the process of reducing the shipwreck to its exclusive custody, control, possession, and dominion. See Second Amended Complaint ¶14, and asserts salvage rights. See also Supp Aff Steven Libert 10/19/05. The sufficiency of such allegations have been repeatedly upheld under the notice pleading

---

[2] See Affidavit of Dr. Scott Demel dated 01/24/05. Dr. Demel's affidavit also observes improvidently using mechanical devices for underwater excavation may result in substantial loss of information and/or irreparable harm to the site conditions. In contrast to Intervenors' Mr. Lusardi, Dr. Demel would not recommend the use of mechanical devices for "excavating" the *Griffin*, and he is aware of no proposal for the use of such mechanical devices.

It is also unnecessary to speak, once again, to the continuing inconsistencies in Intervenors' arguments, such the fact that while having asserted in one breath that they have insufficient information to commence an investigation into the facts, Int Br Mot to Dismiss at 3, Intervenors have admitted in the next breath that Intervenors have determined, based on the allegations in the complaint, that the shipwreck is, as a matter of law, "the property of the State of Michigan." Id. at 9. While Intervenors had previously asserted in the past that the description of the shipwreck in the original complaint was so broad as to include a veritable "inventory of ships that might satisfy the physical description of the original vessel," Id. at 3, Intervenors do not deny that the Second Amended Complaint now expressly identifies the *Griffin* as the defendant.

As for Intervenors' innuendo that counsel for Great Lakes Exploration is somehow personally "not satisfied" or somehow upset with the terms of the Court's protective order, Int Reply, little need be said other than that as a member of the bar of the Court, counsel for Great Lakes has respect for each and every ruling by the Court, whether favorable to his client or adverse. It is unnecessary to remind Intervenors that counsel's professional duty—and sole prerogative-- is to be a zealous advocate for his client's interests within the bounds of the law, not to second-guess the Court's rulings.

PDF created with pdfFactory trial version www.pdffactory.com

standards under the Federal Rules, and, indeed, are those recognized in the standard form books. *Benedict On Admiralty – Forms (Forms 1-1, 1-2, 1-3), attached as Exhibit 3.*[3]

For these reasons, the leading maritime courts around the country have repeatedly found far more general descriptions of the defendants and allegations of successful service to be sufficient. As noted in previous filings, over a dozen other cases have approved similar descriptions in shipwreck litigation.

### 2. The State of Michigan's Claim That the *Griffin* Is "Abandoned" Is A Question for the Merits of this Proceeding.

As for Intervenors' repetition of its argument that the *Griffin* is abandoned and no longer belongs to France, little need be said other than to note the previous authorities referenced in Great Lakes' Reply to Intervenors' Motion to Dismiss. Suffice it to say that The Republic of France disagrees. The United States Department of State disagrees. Great Lakes Exploration disagrees. The Field Museum disagrees. See Notice of Filing dated 08/16/05; Affidavit of Steven Libert. Dated 01/21/05. The Abandoned Shipwreck Act, the Foreign Warships Act, and international maritime law all make clear that Intervenors' assertions are without merit.[4]

---

[3] Mr. Lusardi's most recent affidavit fails to comply with Fed. R. Civ. P. 56(e) (affidavits must be made on personal knowledge, setting forth facts admissible in evidence and showing affiant's testimonial competence). The "Affidavit" consists primarily of legal argument and rank speculation. While Mr. Lusardi's Affidavit should be rejected on purely procedural grounds, and Plaintiff accordingly hereby moves that it be stricken, this Response nevertheless addresses it *arguendo* on the merits.

[4] *See, e.g., Seahunt v. Kingdom of Spain,* 221 F.3d 634 (4th Cir. 2000)(sovereign property owned or controlled by a foreign sovereign remains vested in that sovereign, and does not pass to another, absent the sovereign's express agreement); 55 Fed. Reg. 50116, 50121 (1990) (property of a foreign sovereign thus "remains the property of the nation to which it belonged at the time of sinking unless that nation has taken formal action to abandon it or to transfer title to another party"; *Fairport International Exploration, Inc. v. The Shipwrecked Vessel*, 177 F.3d at 497.n.3 (distinguishing sovereign vessels from privately-owned vessels).. *See* 3A *Benedict On Admiralty* §134 n.6, §158. *See also* Abandoned Shipwreck Act Guidelines, 55 FR 5011 Part I – Definitions (foreign sovereign vessel "remains the property of the nation to which it belonged at the time of sinking unless that nation has taken formal action to abandon it or to transfer title to another

5

PDF created with pdfFactory trial version www.pdffactory.com

Moreover, independent of these statutes and precedents, under developing principles of international maritime law, a foreign sovereign should be accorded the right to recover its sunken warships located within the territory of another sovereign, if not through direct action, then, at a minimum, through a private contract salvage. In sum, while Great Lakes believes that Intervenors' analysis of the law is erroneous, Intervenors will have the opportunity to assert their abandonment claim on the merits. As both the U.S. Supreme Court and the Sixth Circuit have instructed, these issues are to be adjudicated on the merits and do not divest an Article III court's admiralty jurisdiction

### 3. Filing the Second Amended Complaint Will Not Prejudice Intervenors' Right to Assert All Their Claims and Defenses.

Finally, Intervenors argue that the Court should deny leave to amend because the Second Amended Complaint somehow would "undermine Michigan's ability to defend" its interests. Interv Reply at 8. This assertion, too, rests on a misapprehension of the procedure for adjudicating shipwreck cases.

Rule C provides that, upon an order of publication of the complaint, a party seeking to contest a proceeding may file a claim and/or answer. See Fed. R. Civ. P. Supp. R. C(6). Under Rule C(6), the Intervenors would therefore be entitled to assert all their defenses, both jurisdictional and on the merits—including their claim of ownership based on their ownership of state bottomlands. None of this has, as of yet, occurred. The filing

---

party."). And while Intervenors claim that the U.S. Department of State has not yet formally recognized the Republic of France's claim of ownership of the *Griffin*, the Department is prepared to formally present its views through expert testimony as soon as the Court schedules a trial on the merits.

In this regard, little need be said about the State's repetition of its "embeddedness" claim, which also goes to the merits and is clearly based on second-hand, erroneous, speculation. *See* Affidavit Dr. Scott Demel dated 01/24/05; Affidavit of Steve Libert dated 01/21/05. *See generally* Abandoned Shipwreck Act Guidelines, 55 FR 5011 Part I – Definitions (items embedded where mechanical "tools of excavation" required to recover them.
(placeholder)

Moreover, independent of these statutes and precedents, under developing principles of international maritime law, a foreign sovereign should be accorded the right to recover its sunken warships located within the territory of another sovereign, if not through direct action, then, at a minimum, through a private contract salvage. In sum, while Great Lakes believes that Intervenors' analysis of the law is erroneous, Intervenors will have the opportunity to assert their abandonment claim on the merits. As both the U.S. Supreme Court and the Sixth Circuit have instructed, these issues are to be adjudicated on the merits and do not divest an Article III court's admiralty jurisdiction

### 3. Filing the Second Amended Complaint Will Not Prejudice Intervenors' Right to Assert All Their Claims and Defenses.

Finally, Intervenors argue that the Court should deny leave to amend because the Second Amended Complaint somehow would "undermine Michigan's ability to defend" its interests. Interv Reply at 8. This assertion, too, rests on a misapprehension of the procedure for adjudicating shipwreck cases.

Rule C provides that, upon an order of publication of the complaint, a party seeking to contest a proceeding may file a claim and/or answer. See Fed. R. Civ. P. Supp. R. C(6). Under Rule C(6), the Intervenors would therefore be entitled to assert all their defenses, both jurisdictional and on the merits—including their claim of ownership based on their ownership of state bottomlands. None of this has, as of yet, occurred. The filing

---

party."). And while Intervenors claim that the U.S. Department of State has not yet formally recognized the Republic of France's claim of ownership of the *Griffin*, the Department is prepared to formally present its views through expert testimony as soon as the Court schedules a trial on the merits.

In this regard, little need be said about the State's repetition of its "embeddedness" claim, which also goes to the merits and is clearly based on second-hand, erroneous, speculation. *See* Affidavit Dr. Scott Demel dated 01/24/05; Affidavit of Steve Libert dated 01/21/05. *See generally* Abandoned Shipwreck Act Guidelines, 55 FR 5011 Part I – Definitions (items embedded where mechanical "tools of excavation" required to recover them.

PDF created with pdfFactory trial version www.pdffactory.com

of the Second Amended Complaint would therefore simply be the beginning of that process, not the end.

The core issues on the merits of this case are straightforward and simple: (1) is the shipwreck the *Griffin*; and (2) if so, has the *Griffin* been abandoned to the State of Michigan, or does it remain the property of the Republic of France? Common sense dictates that resolving these issues requires nothing more than an objective, scientific analysis of the shipwreck and the applicable law, devoid of emotion, political intrigue and power fights.

In *Fairport International Exploration, Inc. v. The Shipwrecked Vessel*, the Court of Appeals described in systematic detail the procedure for adjudicating such proceedings. The Court of Appeals gave unambiguous guidance on the nature and effect of *California v. Deep Sea Research*:

> [W]here a State does not possess the vessel that is the subject of an in rem admiralty action, the Eleventh Amendment does not bar federal jurisdiction over the vessel and, therefore, federal courts may adjudicate competing claims to the shipwrecked vessel. *See Deep Sea Research*, 118 S. Ct. at 1473.

*Fairport International Exploration, Inc. v. The Shipwrecked Vessel*, 177 F.3d at 497. n.3.

In light of the instruction in *California v. Deep Sea Research*, the Court of Appeals characterized as a "red herring" the arguments raised by the State of Michigan—which are now urged, once again, in Intervenors' instant Motion to Dismiss:

> The Supreme Court's recent decision in *Deep Sea Research* rejects this approach. That opinion definitively instructs us that, if a State does not possess a shipwreck, the Eleventh Amendment does not prevent a federal court from entertaining claims under the ASA to the shipwreck. *See Deep Sea Research*, 118 S. Ct. at 1473. The Court explicitly distinguished past cases on this ground. *See, e.g., id*. at 1471 ("In this case, unlike in *Treasure Salvors*, DSR asserts rights to a res that is not in the possession of the State.") In the *Brother Jonathan* dispute, as in *Fairport I*, the

7

PDF created with pdfFactory trial version www.pdffactory.com

district court believed that the Eleventh Amendment barred federal jurisdiction over shipwrecks claimed by States through the ASA's transfer of title. The Supreme Court vacated the *Brother Jonathan* opinion and remanded because the Court found that this evaluation of abandonment "was necessarily influenced by the [mistaken] assumption that the Eleventh Amendment was relevant to the courts' inquiry." *Deep Sea Research*, 118 S. Ct. at 1473. It continued: "In light of our ruling that the Eleventh Amendment does not bar complete adjudication of the competing claims to the *Brother Jonathan* in federal court, the application of the ASA must be reevaluated." *Ibid*. This implies that, because no jurisdictional barrier exists, the district court should conduct only one "abandonment" inquiry, and that that inquiry does not ask a preliminary jurisdictional question, but rather resolves whether Behrens abandoned the ship, and thus whether the ASA transfers title to Michigan. \*\*\*\*The Supreme Court has clarified that, because Michigan did not possess the res, the district court should not have undertaken a preliminary Eleventh Amendment inquiry. Rather, Michigan's claim under the ASA should receive an evaluation consistent with the requirements of the ASA and maritime law. The Supreme Court remanded the *Brother Jonathan* case "[i]n light of [the Court's] ruling that the Eleventh Amendment does not bar *complete adjudication* of the competing claims to the *Brother Jonathan* in federal court . . . ." *Ibid*. (emphasis added). *Thus, we remand this case to the district court for complete adjudication of the competing claims to the Captain Lawrence*. We write to guide the district court in its consideration of two issues: the means of proving abandonment, and the burden of proof placed upon Michigan.

*Fairport International Exploration, Inc. v. The Shipwrecked Vessel*, 177 F.3d at 497. n.3.

Intervenors' objection to an amendment identifying the defendant as the *Griffin* and giving the precise location of the shipwreck it is thus without merit. In sum, Intervenors' opposition to the Motion for Leave to File the Second Amended Complaint in order to identify the defendant as the *Griffin* and to give the precise location runs counter to the liberal policies of notice pleading underlying the Federal Rules of Civil Procedure. As to these, the U.S. Supreme Court has instructed:

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff *may* be a proper subject of relief, *he ought to be afforded an opportunity to test his claim on the merits*.

8

PDF created with pdfFactory trial version www.pdffactory.com

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962) (emphasis added). The U.S. Court of Appeals for the Sixth Circuit, too, has instructed that denial of leave to amend is generally improper except where lack of notice and substantial prejudice dictate otherwise:

> Leave to file an amended complaint shall be "freely given when justice so requires." Fed.R.Civ.P. 15(a). When considering a motion to amend, a court should be guided by the underlying purpose of allowing amendments to facilitate a decision on the merits, rather than a decision based on procedural technicalities. *Foman v. Davis,* 371 U.S. 178, 181, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Delay alone is an insufficient reason to deny a motion to amend pleadings; *rather, the critical factors are notice and substantial prejudice. Estes v. Kentucky Utilities Co.,* 636 F.2d 1131, 1134 (6th Cir.1980); *Moore v. City of Paducah,* 790 F.2d 557, 561-62 (6th Cir.1986).

*Chase v. Matsu Mfg., Inc.*, Nos. 04-1613, 04-1671, 2005 WL 916969, at *7 (6th Cir. Aug. 11, 2005) (emphasis added). Under the instruction of *California v. Deep Sea Research and Fairport International Exploration, Inc. v. The Shipwrecked Vessel*, 177 F.3d at 497.n.3, the Court should proceed to adjudicate that issue on the merits.

## CONCLUSION

Great Lakes Exploration continues to hope, consistent with purpose and vision of the Abandoned Shipwreck Act itself, that Intervenors might reconsider their position and agree to the appointment of a mediator to resolve the practical issues of going forward. In passing the Act, it was Congress' vision that public and private authorities would work in concert, not in competition, in the exploration and preservation of shipwrecks. *See* 43 U.S.C. §§2103-2104. The investigation, preservation and exhibition of shipwrecks offer countless opportunities for advancing public and private education, to the benefit of present and future generations of students, scholars, and the public. As in the past, it is regrettable that valuable public resources must be diverted from such efforts and instead

PDF created with pdfFactory trial version www.pdffactory.com

channeled into this litigation—litigation which could potentially consume years of proceedings in the first instance and on appeal—when all would be better served by working together.

For these reasons, Great Lakes Exploration, the Field Museum and the Republic of France have joined together and recognized the wisdom of a cooperative approach to this project. The invitation to the State of Michigan to join in such a cooperative effort remains open.[5] Great Lakes Exploration earnestly hopes that appointment of a mediator might help the parties to focus on the public's needs and interests, rather than on their divergent on legal positions or on short-term political considerations.

>Respectfully submitted,
>GREAT LAKES EXPLORATION
>***/s/ Richard T. Robol***
>Richard T. Robol Β 0064345
>Attorney for Plaintiff
>ROBOL LAW OFFICE, LPA
>555 City Park Avenue
>Columbus, Ohio 43215
>Telephone: (614) 737-3739
>Facsimile: (614) 737-3756
>rrobol@robollaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of October, 2005, a copy of the foregoing was served by electronic mail via the Court's ECF system upon all counsel of record.

>***/s/ Richard T. Robol***
>Of Counsel

---

[5] As in the past, the only conditions to this invitation are, and have been, that the State agree to protection of the confidentiality of the location—consistently with federal and state laws regarding confidentiality—and agree not to claim that by virtue of visiting the site that the State has acquired "actual possession" or other rights of a discoverer.

10

PDF created with pdfFactory trial version www.pdffactory.com