## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### Northern Division

| | |
|---|---|
| GREAT LAKES EXPLORATION GROUP LLC ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 1:04-CV-375 |
| ) | |
| The Unidentified, Wrecked and (For Salvage- ) | HON. ROBERT HOLMES BELL |
| Right Purposes), Abandoned Sailing Vessel, etc. ) | |
| Defendant, et al. ) | |

### **SUPPLEMENTARY AFFIDAVIT OF STEVEN LIBERT**

I make this Affidavit based on my personal knowledge or facts that have become known to me in connection with the efforts of Great Lakes Exploration Group to explore the Defendant shipwreck with the Field Museum of Chicago, together with my special knowledge and expertise in this area of exploration.

In preparing this Affidavit, I have had the opportunity to review the "Affidavit" of Wayne Lusardi. Based on my knowledge of the facts and reading of Mr. Lusardi's "Affidavit", it clear that Mr. Lusardi's "Affidavit" is not a statement of facts based on his personal knowledge but instead that it is largely legal argument and speculation, apparently drafted not by Mr. Lusardi but instead by the lawyers for the Intervenors. The facts are very different from the argument and speculation set forth in Mr. Lusardi's "Affidavit," and Mr. Lusardi's Affidavit does not sound like the statement of a scientist or archaeologist, but instead that of a lawyer.

Mr. Lusardi's statement in his Affidavit that "the proposed complaint identifies geographic regions rather than a wreck" and that it identifies only "geographic areas" rather than the "location of the wreck" is legal argument and speculation. It is not a statement of fact based on Mr. Lusardi's personal knowledge, since the facts are the

PDF created with pdfFactory trial version www.pdffactory.com                                    Dockets.Justia.com

opposite. The Second Amended Complaint speaks for itself and specifically identifies the Defendant. (Of course, even if later exploration were to determine, as Intervenors have hypothesized in the past, that the shipwreck is not the *Giffin* but instead is a "barn timber" or something else then neither Great Lakes nor the Field Museum would be interested in it, and we are prepared to make a stipulation of other binding agreement to that effect.

As noted in Dr. Demel's Affidavit, good and sound archaeological practices require that the shipwreck be maintained and scientifically investigated as a unified whole. In this regard, it is important to understand the nature and science of properly analyzing and preserving shipwrecks of great significance, such as the *Griffin*. Good and scientific study of shipwrecks require that all portions of the shipwreck, including the hull, tackle, apparel, appurtenances, cargo, passenger effects, crew materials and other items associated with the shipwreck be studied and maintained as a unified whole. For this reason, the geographical dispersion of portions of a shipwreck caused by the harsh conditions of wind, weather, wave action, biological and chemical processes and other forces of nature cannot be permitted to interfere with the proper scientific study and analysis of historic shipwrecks.

The scientific exploration and salvage of the wreck site is an on-going process. Good and sound archaeological techniques will require many months, and even years of scientific analysis to investigate each item located and to determine, with reasonable scientific certainty, that it is, or is not, associated with the *Griffin.* As noted in the Affidavit previously filed by Dr. Scott Demel of the Field Museum, there are a number of factors that make it important not to artificially limit or restrict the site of the *Griffin*

2

PDF created with pdfFactory trial version www.pdffactory.com

shipwreck, which consists not only of her hull, but also tackle, appliances, apparel, appurtenances, cargo, equipment, etc., since each of these items is of historical interest, including contiguous and non-contiguous scatter, debris and other related artifacts and matter that may be useful in understanding the shipwreck and the pertinent history. As Dr. Demel has noted in his prior Affidavit on behalf of the Field Museum, among the factors making precision or exactitude difficult are the nature and condition of the Defendant believed to exist at the time of the sinking, the nature of the construction of the Defendant, the nature of the cargo, the historical record pertaining to the Defendant and the sinking, the date of sinking, the wind, wave, current, biological, and other conditions at the location of the sinking, including the high energy and dispersal factors, storms over the centuries and high rates of dispersion, and the other facts and circumstances affecting the Defendant. It is important to treat all artifacts and information associated with the shipwreck in a unified fashion in order to permit the best scientific analysis and understanding of the shipwreck, and, for this reason, it is important to include debris fields, artifacts, information and items associated with the Defendant shipwreck. Until many years of painstaking study and scientific analysis have been completed, it would violate good and established archaeological techniques to attempt to make false suppositions and speculation.

Such failures to adhere to scientific standards in investigating and preserving historic shipwrecks have resulted in irreparable harm to the interests of present and future generations in the past. These losses have been not only to Americans and Canadians living on the Great Lakes, but also to all peoples interested in science and education. Once departures from the scientific method for investigating and preserving shipwrecks

3

PDF created with pdfFactory trial version www.pdffactory.com

have been made-- even if made simply in good faith due to errors in judgment, lack of funding or outside political pressure-- the loss of artifacts and scientific information may be irreparable.

Sound underwater exploration and archaeology demand that political considerations not be permitted to interfere with science and education, and that artificially segregate portions of a shipwreck or to fracture the unity of a shipwreck would result in the irreparable loss of information. A copy of Intervenors' Responses to Great Lakes Exploration's Request for Admissions is being filed separately. As previously noted, in the words of Michigan's State Archaeologist, "Shipwrecks when they break up, particularly wooden ones, commonly migrate, can migrate for long distances. It's not uncommon for pieces of wreckage, particularly along Lake Michigan, to migrate for miles from where they were originally lost." Tr. page 90 lines 14-25.

As for Mr. Lusardi's statements regarding the communication he and I had in April, 2003, there are several details of our communication that are not set forth in Mr. Lusardi's Affidavit. . It is true that when I communicated with Mr. Lusardi at that time, I indicated that the item shown in the photos attached to his previous affidavit was significant. I also made it clear, however, that I believed that the item was only a part of a shipwreck. I did not represent or suggest that the exploration efforts by me or others had located only the items depicted in those photographs. I did not indicate that I believed that artifacts or information was limited to single area. To the contrary, to the best of my recollection, even then at the stages of the exploration and salvage as they existed in April, 2003 when I communicated with Mr. Lusardi, I made it very clear I believed that there were a number of significant anomalies in various locations, and that

4

PDF created with pdfFactory trial version www.pdffactory.com

these should be all be investigated methodically and thoroughly. I invited the State of Michigan to participate (at that time, I even offered to pay his way, that he could join me in Charlevoix and we would proceed from there), and he indicated no interest in doing so. In fact, I heard nothing until Great Lakes Exploration filed this case and the Intervenors decided only then that they were interest.

The rest of Mr. Lusardi's statements in his "Affidavit" appear to be legal argument and speculation, written by an attorney. Contrary to that argument and speculation, Great Lakes Exploration and the Field Museum have engaged in extensive exploration of, and salvage with respect to, the shipwreck. Such rank speculation that no recovery of an artifact has been accomplished (and the accompanying implication that Great Lakes Exploration, the Field Museum and France are somehow not capable of continuing such exploration and making such recoveries on an on-going basis) is simply false. As noted in the Second Amended Complaint, which is verified, Great Lakes Exploration has successfully conducted exploration, salvage and recovery efforts, and has the on-going capability to do so in the future.

The exploration and salvage effort is being conducted with the support of an impressive team of individuals. In addition to the historians and archaeologists from the Field Museum, the marine archaeological team of the Republic of France has agreed to take an increasingly active role and has confirmed its interest in, and willingness to, broaden its participation beyond providing historical research information and input into actively participating in the at-sea exploration and salvage efforts. A true, genuine, and authentic copy of the communications by the United States Department of State regarding

5

PDF created with pdfFactory trial version www.pdffactory.com

the role of the Republic of France has been filed in the Notice previously filed with the Court.

It is important that the Republic of France be permitted to participate in the methodical analysis of the shipwreck with Great Lakes Exploration and the Field Museum. France's team of marine archaeologists is one of the best in the world, and it has extensive experience in the field of shipwreck analysis and interpretation, including with respect to mapping and identifying geographically-dispersed items and information associated with a particular wreck. Under separate cover, we will be filing examples of the marine archaeological publications and efforts of France's archaeological team. The combined efforts of Great Lakes Exploration, the Field Museum and France have provided the capability for the on-going methodical, thorough and archaeologically-sound exploration, salvage and preservation of the Defendant.

Mr. Lusardi's statement that the first Amended Complaint "implied a single target" is a legal argument, not a statement of fact. The facts are in the court record. Those facts show that the Intervenors were served with the affidavits by both Dr. Demel on behalf of the Field Museum and myself on behalf of Great Lakes Exploration making very clear that the "target" was the *Griffin* shipwreck, believed to consist of numerous items, artifacts and pieces of information over a broad scatter.

Mr. Lusardi's statement that the Intevenors do not have "a reasonable opportunity to investigate the Defendant this fall" appears to be more legal argument. Since I am not a lawyer, I am not familiar with how the law distinguishes between a party's claimed right to "investigate the Defendant" versus a its right to have notice sufficient to allow it to investigate its own interest in the defendant sufficiently to allow it to determine

6

PDF created with pdfFactory trial version www.pdffactory.com

whether to file a claim. These are legal issues for the lawyers and the Court, not for scientists and explorers. I am personally aware that the Intervenors have had more than ample information to make an investigation into their own interests and the facts sufficient to allow them to determine whether to assert a claim in this proceeding. I am also personally aware that the methodical and archaeologically sound analysis of the *Griffin* shipwreck will require years and years of painstaking scientific work and will not be accomplished by a "two day survey."

I do not believe that Mr. Lusardi or any other responsible scientist, if they were asked, would accept the suggestion in the Reply filed by the Intervenors' lawyers that any reputable scientist, on the basis of a a survey lasting several weeks or even months, would feel confident making a scientifically-sound determination of the items and artifacts constituting the *Griffin*. As Mr. Lusardi notes at paragraph 8 of his previous "Investigations seldom produce sufficient information to allow for the determination that the isolated structures were constituents of a vessel or to allow for a reasonable determination of its age or origin." Such a determination will require years of careful and painstaking scientific analysis by the team of qualified historians and marine archaeologists that has been assembled through the efforts of Great Lakes, the Field Museum, and France—it is a challenge as to which Intervenors clearly lack the financial and other capabilities. As noted in his previous Affidavit, Mr. Lusardi and his colleagues are responsible for more than a thousand cultural deposits all over the State. The painstaking study of a significant discovery such as the *Griffin* deserves a team of qualified scientists giving it their detailed attention, not a lone, though well-intentioned, state employee whose office is already overburdened by inadequate public funding,

PDF created with pdfFactory trial version www.pdffactory.com

insufficient recognition of the importance of protecting underwater cultural resources, and too much work-- let alone political pressure to follow the State of Michigan's claim that it has sovereignty over a French shipwreck.

I have also reviewed the Reply filed by the Intervenors. Insofar as the Reply purports to set forth facts rather than legal argument, it does not accurately state what has transpired. As an example, the suggestion by the lawyers for the Intervenors that the confidential, trade secret information contained in the side scan sonar survey is somehow restricted to information about the location of the defendant shipwreck is based on speculation and fantasy, not fact. A number of anomalies, different types of scientific data and other categories of confidential information were compiled during the course of the survey, and much of this information has nothing to do with this legal proceeding. We offered to provide this data upon their agreement to bear the costs of redacting such information, and they did not do so. We have produced voluminous documents and information to allow Intervenors the opportunity to determine whether they claim an interest in the *Griffin*. In contrast, the Intevervenors produced nothing in response to our interrogatories and requests for production of documents disputing our claims.

In reading the statements in the Intervenors' Reply and in Mr. Lusardi's statement, I am concerned by the possibility that the Intervenors may covertly attempt to engage in acts of salvage on the *Griffin*. Permitting Intervernors to engage in any acts of salvage would result in irreparable harm to Great Lakes Exploration, the Field Museum, the Republic of France and the public interest. Such acts would interfere with our current exploration and salvage, and could result in destruction of key information about the shipwreck, artifacts associated with the shipwreck, and items needed for a full

8

PDF created with pdfFactory trial version www.pdffactory.com

understanding of the archaeological context of the shipwreck. Intervenors have shown no interest in the shipwreck in the past and have declined our invitation to participate in, and become part of, our efforts. If they were permitted to engage in any act of salvage on the shipwreck that was not managed, directed and controlled by our team from Great Lakes, the Field Museum and France, they would or could permanently damage or destroy items and information.

As Intervenors have admitted, such loss of items, information and damages has occurred in the past on their watch. Sometimes this may have been caused by the State's neglect of, and failure to provide adequate financial support and resources for, the exploration and preservation of underwater cultural deposits. Despite political pressures, the State Archaeologist, Dr. John Halsey, has shown the courage in the past to publicly comment on the State's failure to provide adequate "funding for research, evaluation, law enforcement, or education." with respect to cultural deposits in state waters. This has continued despite the fact that, as noted by Dr. Halsey, the "hi-tech equipment makes it increasingly easy for relic hunters to gain access to, and destroy, historic shipwrecks in the Great Lakes region." In Dr. Halsey's words, side-scan sonar, combined with intensive historic research wrecks, "provides an extremely potent finding aid for historic shipwrecks in the Great Lakes".

Significant historical artifacts have been lost or destroyed while in Intervenors' custody and control. For example, Dr. Halsey described the condition of the *Three Brothers* shipwreck at or near the commencement of the involvement of the State of Michigan in managing the shipwreck as follows: "The deck of the vessel is mostly missing forward of the main cargo hold, along with the pilothouse and upper cabins,

9

PDF created with pdfFactory trial version www.pdffactory.com

possibly blown off by air pressure or washed off during or shortly after the wreck. The structural integrity of the upper portion of the hull is weakening by the fracture of deck beams near the hatches. Despite this damage, the stern, which is at a deeper depth and away from ice and wave action, is remarkably intact. A delicate window frame remains in the stern quarter and fire hoses dangle over the side to the lake bottom below. Remnants of a shoe, overalls and other small personal items on the site show the rapid abandonment of the ship in peril. The cylinder head of the engine protrudes from the sand, leaving the diver to imagine what the rest of its bulk must look like." As Dr. Halsey has further stated, approximately one year later, however, while the shipwreck had been in Intervenors' custody and control, (1) the shipwreck had been plundered and damaged, (2) boaters had dragged anchors across the shipwreck, (3) the superstructure had been damaged, (4) the fire hose nozzles, ornately carved wooden pillars and brass fittings on the steam engine had been stolen, (5) many personal items left by the crew had been stolen.

The loss to present and future generations of scientists, archaeologists, historians and the public from these occurrences has been devastating and cannot be fully remedied by an award of money damages or other relief. The artifacts taken from the *Three Brothers* shipwreck and others quickly decay out of water, and information has been irretrievably lost that may have been obtained from scientific study of such artifacts (not only by studying such items individually but also by studying them as an integral collection associated with the shipwreck).

Because of the unique nature and significance of the *Griffin,* permitting repetition of such occurrences as to the defendant would result in irreparable harm to Great Lakes,

10

PDF created with pdfFactory trial version www.pdffactory.com

the Field Museum, France, present and future generations of scientists, archaeologists, historians-- and, perhaps worst of all, to the peoples of the United States, Canada and France, whose shared, common heritage is represented by the shipwreck.

Under penalty of perjury, I declare the foregoing to be true and correct to the best of my knowledge, information and belief.

FURTHER AFFIANT SAYETH NAUGHT.

/s/ Steven J. Libert<br>
STEVEN J. LIBERT

PDF created with pdfFactory trial version www.pdffactory.com