IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
Northern Division

| | |
|---|---|
| GREAT LAKES EXPLORATION ) <br> GROUP LLC ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> The Unidentified, Wrecked and (For ) <br> Salvage-Right Purposes), Abandoned ) <br> Sailing Vessel, her tackle, ) <br> apparel, appurtenances, cargo, etc. ) <br> located within a circle having ) <br> a radius of 3.5 statute miles, whose ) <br> center point is at coordinates ) <br> 45° 32.8′ North latitude and 86° 41.5′ ) <br> West longitude, ) <br> ) <br> *In Rem* ) <br> ) <br> Defendant, ) <br> <br> v <br> <br> STATE OF MICHIGAN DEPARTMENT <br> OF HISTORY, ARTS, AND LIBRARIES <br> AND MICHIGAN DEPARTMENT OF <br> ENVIRONMENTAL QUALITY, <br> <br> Intervenors. <br> _____ | Civil Action No. 1:04-CV-375 <br> <br> HON. ROBERT HOLMES BELL <br> <br> <br> **BRIEF IN SUPPORT OF RENEWED** <br> **MOTION TO DISMISS** <br> <br> **ORAL ARGUMENT REQUESTED** |

Richard Thomas Robol
Robol Law Office
555 City Park Avenue
Columbus, OH  43215
614/559-3846

Roger W. Boer
Roger W. Boer, LLC
600 Waters Building
161 Ottawa Avenue NW
Grand Rapids, MI  49503
616/235-3500

James R. Piggush (P29221)
Assistant Attorney General
Environment, Natural Resources
 and Agriculture Division
P.O. Box 30755
Lansing, MI  48909
517/373-7540

___

# BRIEF IN SUPPORT OF RENEWED MOTION TO DISMISS
# ORAL ARGUMENT REQUESTED

### Introduction

On October 20, 2005, this court granted Plaintiff leave to file its Second Amended Complaint under the lenient standards of Fed R Civ P 15(a), "without prejudice to the right of the Intervenors to raise by motion any objection to the sufficiency of the amended pleading." (Docket # 71).  Intervenors now renew their motion to dismiss due to the continuing formal defects in the Second Amended Complaint and due to its failure to show jurisdiction over any in rem defendant.  For the most part, the defects in the Amended Complaint remain, so that Intervenors can, in large part, refer to their earlier arguments rather than restate them completely.

### Summary of Proceedings

Plaintiff invokes the in rem jurisdiction of the court, but has failed so far to show that the conditions for an in rem action exist, so that the court has not been able to issue a warrant for the arrest of the subject of the action.  Fed R Civ P Supp C(3)(a)(ii)(A).  The Second Amended Complaint purports to describe the location of the defendant, considered as a wrecked vessel, "with as much precision as practical," and undertakes to name the original vessel as the Griffin, a 17th Century vessel the 17th Century explorer LaSalle used for exploration of and commerce on

2

the Great Lakes. Such steps amount to misdirection and do not show circumstances from which an in rem action arises, nor describe any in rem defendant whatsoever.

A party may bring an in rem action to enforce a maritime lien, Fed R Civ P Supp C(1)(a). The complaint must describe the property that is the subject of the action with reasonable particularity. Fed R Civ P Supp C(2)(b). It "shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading. Fed R Civ P Supp E(2)(a).

When the court considered the Amended Complaint in light of these provisions, it focused upon whether the description of the Defendant in that complaint was sufficiently definite to avoid dismissal. Focus upon the identification of the named defendant presented competing policies: to notify potential claimants of a claim, it is necessary to disclose a defendant's location and circumstances, but, to protect the sort of archaeological site involved, it is also necessary to withhold information concerning its precise location, as authorized by Michigan laws protecting such sites. MCL 15.243(1)(o). In the end, the court denied the motion to dismiss, considered as a motion for more definite statement, but denied that motion predicated upon Plaintiff's compliance with Intervenors' request for documents and exhibits and the precise location of Defendant, filed under seal with the court, and held the remainder of the motion to dismiss in abeyance. (Docket 39). Thereafter, the court entered a protective order that protects from public disclosure the disclosure of the precise location of the defendant (Docket 43, 45), required by the Court (Docket 65). Instead of complying with the court's order and disclosing the precise location of the defendant, the Second Amended Compliant substitutes three scattered circles with

unknown or at least undisclosed contents for the single large circle previously identified as the location of the wreck that it says is the defendant in this action and invites search of those areas.

The Second Amended Compliant appears to be an effort to avoid the disclosures on the basis of which the court denied any more definite statement. Plaintiff's failure to make the required disclosures requires the court to consider once again whether plaintiff has sufficiently described the property that is the subject of this action and the circumstances giving rise to the claim to permit investigation. But, it also calls for the court to consider the substantive issues held in abeyance in the expectation sufficient information was going to be provided to allow investigation. How is Michigan supposed to be able to identify the embeddedness of the find to defend this action, given that Plaintiff still does not say what the defendant is or where it is.

## I. The Second Amended Complaint carries forward the formal and substantive defects of the Amended Complaint.

Agencies of the State of Michigan charged with protection of its bottomlands and antiquities intervened in this in rem matter to seek dismissal of the first amended complaint due to its procedural and substantive deficiencies. (Docket #16, # 33). The complaint does not state circumstances from which the claim arose with sufficient particularity to allow a claimant to be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading, but it also does not describe any in rem claim whatsoever (Docket # 34).

The Amended complaint listed an unidentified, wrecked vessel as the in rem defendant. But, it did not describe that named defendant itself. It described a once-upon-a-time vessel, claimed to be wrecked with a 38.5 square mile area, and gave no other indication of its characteristics. (Docket # 16, pp 3-5). The Amended compliant gave no information known to Plaintiff about anything presently existing over which the court was supposed to assume in rem

jurisdiction. (As it turns out, Plaintiff claims any such information is proprietary (Docket # 45, p 2), so that it cannot describe an in rem defendant. Such a position alone should disqualify any claim against the wreck as a defendant).

The only information available about the wreck that is supposed to be the in rem defendant was presented to the court by the Intervenors, who got it from the Plaintiff in the form of photos provided before it filed the complaint. Those pictures show a stick embedded in lake bottomlands. (Docket #15, Attachment 1, Affidavit of Lusardi).

Besides challenging the sufficiency of the description of the wreck and its locale in their original motion (Docket #16; #33), Intervenors showed that the complaint failed to advance any interest sufficient to support an in rem action against the purported defendant because, "Pursuant to state and federal law the subject vessel is the property of the State of Michigan, is not subject to salvage and may not be "reduced" to the exclusive custody, control, possession or dominion of the Plaintiff, or recovered altered or destroyed, except as authorized by the State of Michigan. Based upon the photos, the Intervenors asserted that the wreck is in the actual possession of the state of Michigan so that the court may not adjudicate the State's right to that wreck or award salvage against it. (Docket # 33, pp 2-8). Intervenors also addressed Plaintiff's suggestion that the wreck cannot be considered abandoned, because it is a sovereign vessel: The claim of ownership by the owner of the soil in which a wreck is embedded has primacy over the claim of any salvor, so that Plaintiff can make no in rem claim against embedded goods, and competent evidence submitted by Intervenors shows the private status of the original vessel. (Docket #33, affidavits of Bruseth and Halsey). Even though Plaintiff now names its find the Griffin and has submitted materials, not competent evidence, that suggest that third parties may claim the wreck

5

of the Griffin, Plaintiff must still show that this court has in rem jurisdiction, as claimed, before the court can consider such claims. No jurisdiction appears.

**II.    Embedded artifacts may not be removed from State lands except by trespass; admiralty does not have jurisdiction to authorize such trespass.**

Before Plaintiff filed the Second Amended Complaint, Intervenors could suppose that the subject of this action, although not otherwise described, was known, because of the information Plaintiff had provided it from outside the compliant, that is, the photos of a single artifact, represented to be part of the wreck. (Docket 15, Attachment 1, Lusardi Affidavit). Those photos show, all by themselves, that this court lacks jurisdiction. The photos show that the find is embedded in Michigan bottomlands, and in the actual possession of Michigan,[1] so that it is neither lost nor abandoned, but owned by the state of Michigan as the owner of the soil in which it is embedded. *Klein v The Unidentified, Wrecked & Abandoned Sailing Vessel*, 758 F2d 1511, 1514 (11th Cir, 1985). (Docket ## 15, 33). The Court cannot exercise jurisdiction of that object under the 11th Amendment. *Florida Dept of State v Treasure Salvors, Inc.*, 458 US 670, 73 L Ed2d 1057; 102 S Ct 3304 (1982); *Ex Parte New York*, 256 US 490; 41 S Ct 588; 65 L Ed 1057

---

[1] *California v Deep Sea Research, Inc.*, 523 US 491, 506-507; 118 S Ct 1464; 140 L Ed2d 626 (1998), establishes that constructive possession does not bar the court from exercising jurisdiction over an in rem admiralty action under the 11th Amendment, so that this Court can determine its jurisdiction. The bar remains in place where the subject is in the actual possession of the state, so that judicial process would disturb the state possession.

The constructive possession that does not bar court jurisdiction is to be distinguished from actual possession that occurs when an object is embedded in the soil, protected by trespass laws. *Klein v Unidentified, Wrecked and Abandoned Sailing Vessel*, 758 F.2d 1511, 1514 (11th Cir, 1985). Artifacts need not be totally buried to satisfy the embeddedness requirement, and where a portion of a find is firmly affixed to the land, then even though other portions of it lie in loose surface soil, title to the entire find nevertheless rests with the land owner. *Chance v Certain Artifacts Found and Salvaged from the Nashville*, 606 F. Supp 801, 806-07 (DS Ga, 1984). *Jupiter Wreck, Inc. v. Unidentified, Wrecked & Abandoned Sailing Vessel*, 691 F. Supp. 1377, 1386 (D. Fla. 1988)

(1926). Artifacts need not be totally buried to satisfy be considered embedded, and where a portion of a find is firmly affixed to the land, then even though other portions of it lie in loose surface soil, title to the entire find nevertheless rests with the land owner. *Chance v Certain Artifacts Found and Salvaged from the Nashville*, 606 F. Supp 801, 806-07 (DS Ga, 1984).

Where a land owner claims objects as embedded, that owner's claim is subject to the claim of the actual owner, based upon proof of that ownership. Plaintiff is not the actual owner, but claims to be a salvor. Unless Plaintiff shows that the court has jurisdiction over a res, it does not matter that France might have owned and might still own the vessel, unless France states the claim, and such a claim of ownership will not be in an admiralty action. The potential ownership of France, as asserted by Plaintiff, is immaterial in this in rem action is the court does not acquire jurisdiction.

### III. The Second Amended Complaint impedes investigation of the named, in rem Defendant.

Embeddedness is central to the Intervenors' possible defenses. But, with the second amended complaint, the subject of the action is now scattered, and Intervenors can no longer surmise what Plaintiff supposes is the subject of the action or commence its investigation. And, it surely cannot do so this fall. It will be necessary in the spring, at the earliest, to undertake a search of the newly named areas, looking now for unnamed targets that are not described in any way. It will now be necessary to inspect anything that might be part of an ancient wreck. (Docket 62, Attachment 1, Affidavit of Lusardi, ¶ 4, 5, 6, 8, 9, 13). The success of such a search will always be questionable, given the lack of any information about what is supposed to look for. Even if materials are discovered, it will be impossible to know whether the material is the subject referred to by Plaintiff. For Plaintiff to say that the defendant is a scattered wreck is for Plaintiff to sidestep its obligation to identify the defendant. What is the defendant, and where is

7

it? The naming of the wrecked vessel as the *Griffin* does not make investigation of the embeddedness any less material to the state's potential defenses, particularly if its agencies are assigned the burden of proving abandonment to protect the state's interest, as Plaintiff urges.

The Second Amended Complaint does not make investigation possible; does not show any basis for exercise of in rem jurisdiction and does not locate any in rem defendant, as discussed in Intervenors' Reply to Plaintiff's Amended Motion to File Second Amended Complaint. (Docket 60).

**IV.  The Second Amended Complaint does not describe any property that is the subject of an in rem proceeding.**

Plaintiff's supposed inability to specify the location of what it thinks is a wreck with any greater precision does not excuse it from stating the circumstances from which its claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading," Fed R Civ P Supp E(1), and, in particular, to describe with reasonable particularity the property that is the subject of the in rem action against which the Plaintiff would enforce a maritime lien. Fed R Civ P Supp C(2). In the end, Plaintiff's claim fails because Plaintiff does not show that it has any lien over anything over which the court can exercise in rem jurisdiction.

Where a motion challenges subject matter jurisdiction pursuant to Fed R Civ P Rule 12(b)(1), the court may look beyond the jurisdictional allegations of the complaint and consider whatever evidence is submitted: the Plaintiff must show jurisdiction. *Fairport Int'l Exploration v Shipwrecked Vessel Known as the Captain Lawrence*, 105 F3d 1078, 1081 (6th Cir, 1997).

Plaintiff does not set forth any action by which it can claim any in rem defendant in this action. Plaintiff speaks of an historic vessel, and of exploration and of salvage operations: it

does not describe a single object that it has rescued; nothing in which it has a lien that this court can take into its jurisdiction as defendant.

As one sifts the verbiage of the Second Amended Complaint for what Plaintiff claims, nothing is left behind. The find proves to be a chimera. Whatever it is supposed to be, the search for it should focus upon the area of the three circles now selected. By not identifying anything that it has recovered, plaintiff fails to show even a right to search for this hypothetical wreck, let alone identify a defendant.

    A.    <u>The Second Amended Complaint does not show any circumstances that support in rem jurisdiction over a wreck or a wreck site.</u>

        i.    Plaintiff's salvor-in-possession claim is not an in rem claim.

As foundation for naming a scattered wreck in place as an in rem defendant, Plaintiff asserts its interest in the supposed wreck as "an exclusive inchoate property right accorded the first salvor in possession to continue in exclusive possession as first salvor in possession, in that, "by virtue of having rendered salvage service, the salvor's rights to continue its efforts spring into existence from the date of its efforts as an inchoate property right, and cannot be taken or displaced by anyone." (Docket 67, p 2, n 1).

Of the two legal bases on which a person can claim an interest in a vessel—the law of finds or the law of salvage, *Fairport Int'l Exploration, Inc., v The Shipwrecked Vessel Known as the Captain Lawrence*, 245 F3d 859, (6th Cir, 2001), Plaintiff purports to limit its claim to the law of salvage. The vessel itself is still owed, it claims, by France, undermining any claim to the vessel under the law of finds.

Plaintiff declines to assert abandonment of the wreck in a fashion that would allow it to assert a property interest in the vessel itself by virtue of its "possession" of the wreck, because, if it did so, it would lose any claim to salvage. (Docket 16, section 2). The United States has

asserted ownership of abandoned wrecks under the Abandoned Shipwreck Act (ASA), 43 USC 2101, *et seq*., so that, if plaintiff actually plead abandonment to invoke the law of finds, Michigan would become the owner of its historically significant find, even if not embedded. By pleading no abandonment, or raising the specter of foreign ownership, Plaintiff hopes to preserve the issue whether the vessel belongs to France, so that it can avoid Michigan's rejection of salvage services of historic vessels. MCL 324.76102(2).

But, the right, if any, of a salvor in possession, see, *Hener v United States*, 525 F Supp 350, 364-365 (SD NY, 1981), is not an interest in a wreck or vessel, a lien that supports in rem jurisdiction: it is a right against others to continue an operation. As the court stated in *Treasure Salvors, Inc., v Unidentified Wrecked and Abandoned Sailing Vessel*, etc., 640 F2d 560, 567 (5th Cir, 1981), the claim of a salvor-in-possession may be a claim within Admiralty jurisdiction, but not an in rem claim. Speaking of the court's ability to protect this right without in rem jurisdiction, the court noted that in rem jurisdiction is immaterial:

> The fact that the property which is the subject of the salvage effort is not within the territorial jurisdiction of the court, and thus not subject to an in rem decree, is irrelevant because the salvor's claim is not one in rem seeking to recover against the vessel for salvage in which the in rem fiction is used to personify the vessel and treat it as a party to the litigation. Although rights to the vessel may be the subject of the dispute, the adverse parties in this situation are the competing salvors.

Here the purported wreck is within the territorial jurisdiction of the court. But that is immaterial. If the wrecked vessel is to be the defendant, it is still necessary to find in rem jurisdiction over that wreck. A right to exclude others from a salvage operation that requires personal jurisdiction over those others is immaterial to the quest for in rem jurisdiction over the wreck itself.[2] In rem

---

[2] There is no separate, exclusive right to appropriate the value of a find in place. *RMS Titanic v The Wrecked and Abandoned Vessel*, 286 F3d 194, 205 (4th Cir, 2002).

jurisdiction based upon salvage depends upon salvage lien. *Dluhos v The Floating and Abandoned Vessel, known as "New York*, 162 F3d 63, 68-69; 73 (2d Cir, 1998).

    ii. Plaintiff does not show salvage by which to claim an interest in an in rem subject.

    a. No rescue appears in the compliant or in any information submitted by Plaintiff to support in rem jurisdiction.

But, the foundation for the claimed right to continuing salvage, that is, lawful salvage, is also absent from the complaint, and in a manner that undermines in rem jurisdiction altogether. Salvage involves three elements: marine peril, voluntary action and successful salvage. *The Sabine*, 101 US 384; 252 Led 982 (1880).

At least until Plaintiff's Response in Support of its Motion for leave to file Second Amended Complaint (Docket # 67), the complaints filed in the matter make no actual assertion of salvage sufficient to support a lien.[3] (See Docket # 34, pp 2-8). Plaintiff has asserted that it is involved in an operation likely to be successful, etc. A salvage lien requires successful rescue. Plaintiff has never presented anything to the court as salvage from the asserted wreck. Plaintiff has ever identified anything in its complaint as something that it has rescued. No such item is the in rem defendant in this action.

The Supplementary Affidavit of Steven Libert (Docket # 68), who speaks as though he were an archaeologist who can describe "scientifically sound" determinations and can vouch for Mr. Demel; a lawyer who can correct purported legal conclusions of others, and a representative of foreign governments, now asserts, almost unambiguously, that Plaintiff has carried out salvage. He challenges Mr. Lusardi because "Great Lakes Exploration and the Field Museum have engaged in extensive exploration of, and salvage with respect to, the shipwreck." (Docket #

68, p 5). "Salvage with respect to" a shipwreck comes close to asserting actual salvage of elements of the wreck. Or does it? And, just to make the point, he says further, invoking the affirmations of the Second Amended Complaint: "Great Lakes Exploration has successfully conducted exploration, salvage and recovery efforts, and has the on-going capability to do so in the future." Only, that allegation never appears in the complaint. And, it is not clear that successfully conducting salvage or a salvage effort is the same as rescuing artifacts from marine peril, which is what Plaintiff has to assert. Nothing that has been rescued is identified: no rescued object in which Plaintiff has a lien is before the court.

  iii. <u>Policies that conflict with admiralty's objective of restoring goods to commerce do not excuse the activities necessary to invoke in rem jurisdiction.</u>

Underlying this evasion and the complaint's failure to assert any actual removal is the claim that Plaintiff has undertaken no rescue because it is not archaeologically appropriate to do so, as Congress says by the ASA and Michigan also says by Part 761 of NREPA by way of declaring public policy. The inappropriateness of any rescue is the reason why Congress suspended the laws of finds and salvage with respect to any abandoned vessels embedded in state bottomlands and vessels eligible for listing on the National Registry of Historic Places. 43 USC 2106(a). *Fairport Int'l Exploration Inc v The Shipwrecked Vessel, known as the Captain Lawrence*, 177 F3d 491, 498 (6th Cir, 1999). There can be little doubt that a recognizable wreck of the first ship to ply the Great Lakes would be eligible for listing and subject to the ASA and Michigan law. Plaintiff evades the disclosures that would make the listing possible. Even before the ASA, the law of finds protected state lands and embedded items from invasion by trespassers so the owner, that is, the state owner of bottomlands, could exercise its right to reject rescue.

---

$^3$ Mere discovery does not establish a right to salvage. *RMS Titanic v The Wrecked and Abandoned Vessel*, 286 F3d 194, 205 (4th Cir, 2002); *Treasure Salvors, Inc. v. Unidentified, Wrecked & Abandoned Sailing Vessel*, 556 F Supp 1319, 1334 (SD Fla, 1983).

(Docket 33, pp 1-2). And, besides the governmental agencies that set societal standards, professional organizations set professional standards that may limit and define the conditions under which rescue can occur, usually including compliance with applicable law. But, there is no provision by which a finder can assert a lien or interest in a subject of investigation by virtue of its discovery and preservation of that subject in place to comply with professional standards. In such a posture, the finder is a mere finder. Not a salvor. The policy of fostering restoration of material to commerce that underlies admiralty law is directly contrary to the needs of historical preservation, even though courts have imposed an obligation to protect archaeological values when they have exercised admiralty jurisdiction.

      iv.     Plaintiff has not undertaken any lawful rescue sufficient to support a lien.

Supposing that the complaint does assert rescue of artifacts (appropriation of information about objects in place is not salvage, whatever rights a person may have in the product of their own investigation), Plaintiff still fails to show the circumstance of a claim. The State of Michigan controls the removal of objects from the Great Lakes by provisions of Part 761, Aboriginal Records and Antiquities and Abandoned Property MCL 324.76101, *et seq.*, of the Natural Resources and Environmental Protection Act, MCL 324.101, *et seq.*, and of Part 325, Great Lakes Submerged Lands, 324.32501, *et seq*. By virtue of MCL 324.32512(c), a person cannot remove any mineral, organic or other material from or within the bottomland or waters of the Great Lakes by any means without a permit from the Department of Environmental Quality. R 322.1001(h). The provision does not turn on whether the state shows that the item is abandoned. When determining whether to issue the required permit, the Department considers the impact the proposed activity may have on the public trust, riparian owners, game and fish habitat, public health, safety, welfare, trust and interest, private rights and property. MCL

13

324.32515. Such regulation supplements admiralty law to protect natural and cultural resources. *People v Massey*, 137 Mich App 480, 486-487 (1984).

Given this regulatory schema alone, even if Plaintiff had actually alleged salvage and presented some rescued items to the court as the in rem subject of this action, its claim here would fail. To state a salvage claim, the claimant had to remove any rescued item from Michigan waters and bottomlands lawfully. *In Lathrop v The Unidentified, Wrecked and Abandoned Vessel*, 817 F Supp 953, 963 (MD Fl, 1993), the court set out this requirement as follows:

> The requirement that a salvor act lawfully while salvaging a vessel is consistent with general admiralty law. By itself, possession of abandoned property is not sufficient to establish a salvage claim. Martha's Vineyard Scuba HQ. v. Wrecked and Abandoned Steam Vessel, 833 F.2d 1059 (1st Cir. 1987). Before a valid claim can be established, a salvor must acquire possession lawfully. Otherwise, as one court noted, "buccaneering would again flourish on the high seas." Id. It is for Congress--through appropriate legislation--to substantively supplement admiralty law and determine the lawfulness of certain salvage activities.

No object removed from Michigan bottomlands and waters by Plaintiff has been lawfully rescued: The Affidavit of Mr. Thomas Graf shows that neither Plaintiff nor any of those persons it says have acted on its behalf has obtained the permit required before it can remove any objects from Michigan waters or bottomlands. (Attachment 1).

In the absence of lawful salvage and presentation of a salvaged object to the court, there is not salvage lien and no in rem jurisdiction. Plaintiff characterizes a wrecked vessel as the in rem defendant, but it has not rescued that vessel, and indicates that it is not prepared to do so, unless done scientifically and later. It will not disclose where any such vessel is, if it is. Plaintiff cannot hope to proceed with an in personam action against others as a salvor-in-possession without showing successful salvage.

14

## V. The record shows that the historic vessel, the Griffin, was abandoned, so that the laws of finds and salvage are suspended pursuant to the ASA.

    a.    Evidence shows that the *Griffon* was a private vessel abandoned by its owner centuries ago.

There can be no reasonable question whether a natural person, who owned a vessel centuries ago and made by made no efforts to salvage the ship, but went on to other activities elsewhere on the continent, abandoned the vessel. *Treasure Salvors, Inc v Unidentified, Wrecked and Abandoned Sailing Vessel*, 569 F2d 330 (5th Cir, 1985); *Klein v The Unidentified, Wrecked and Abandoned Sailing Vessel*, 758 F2d 1511, 1514 (11th Cir, 1985). The Intervenors submitted competent evidence to support the proposition that LaSalle abandoned the *Griffin*. (Docket 33, Attachment 1; Attachment 4). Plaintiff has submitted no competent evidence, but only claims and purported claims of non parties, that is to say, of the State Department and France, which are, at best, contingent upon the actual identification of any vessel as the *Griffin*.

    b.    The court cannot presume jurisdiction unless Intervenors show express abandonment of the subject vessel.

The prospect that such third parties may have an interest in the supposed subject of this action cannot substitute for showing in rem jurisdiction over that subject in the first place. The court does not have such jurisdiction: not even the in personam claim of a salvor-in-possession can be sustained here.

Plaintiff focuses upon abandonment as addressed in *California v Deep Sea Research*, 523 US 491 (1998), where the subject was not embedded in state bottomlands and the state was not in actual possession of the subject of the salvage operation, and *Fairmont International Exploration, Inc, v the Shipwrecked Vessel*, 177 F3d 491 (6th Cir, 1999), where the claimant represented the original owner, so that the State's claim was not primary, and it had to show abandonment. Here Plaintiff's effort to stand for a third party sovereign is not supported by any

15

showing of salvage, so that it never allows the court to acquire jurisdiction over the wrecked vessel in the first place. The matters are addressed in Intervenors Reply to Plaintiff's Response to Motion to Dismiss (Docket # 33), and will not be repeated here.

## CONCLUSION AND PRAYER FOR RELIEF

The Second Amended Complaint must be dismissed for failure to show any circumstances that reveal in rem jurisdiction. The pleadings report an abandoned vessel of significant historical and recreational value, an assert of the sort that Michigan reserves to itself under Part 761, MCL 324.76101, *et seq*., declining the salvage of others (Docket 15). Plaintiff has not undertaken any lawful salvage from Michigan bottomlands. (id).

In any in rem claim, a crucial issue is the embeddeness of the find. The ASA deprives the court of jurisdiction over embedded abandoned vessels. And, since Michigan waters are inland seas, title to the beds does not depend upon Congressional actions, but upon statehood (Docket 16, p 9-10), and where objects are in the soil, the state's claim is superior to the claim of anyone but the original owner. Further, once it is established that the subject is in Michigan's actual possession, by virtue of its being embedded in its soil, the court cannot exercise jurisdiction over that property under the 11th amendment. Given the consequences of the investigation of embeddedness, there can be little question why Plaintiff has declined to disclose the precise location(s) of its find, even while it names the wreck itself as the subject of the in rem action. But, concern for the loss of admiralty jurisdiction cannot control the proceedings. Plaintiff must show that the court has jurisdiction and allow for investigation to begin, based upon the complaint itself. Plaintiff has not made the required disclosures, despite court order to do so.

None of this uncertainty matters in the absence of legal salvage giving rise to a maritime lien. In the absence of a lien, there is nothing over which the court can exercise in rem jurisdiction. No legal salvage has been shown to support an in rem action.

WHEREFORE, Intervenors request the court to dismiss this action for lack of jurisdiction.

Respectfully submitted,

Michael A. Cox
Attorney General

/s/

James R. Piggush (P29221)
Assistant Attorney General
Environment, Natural Resources
   and Agriculture Division
P.O. Box 30755
Lansing, MI 48909
517/373-7540

Dated: November 17, 2005
s:nrd/ac/cases/open/great lakes exp 04ag/brief in support of renewed mot to dismiss