IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
Northern Division

| | |
|---|---|
| GREAT LAKES EXPLORATION GROUP LLC<br>Plaintiff,<br>v.<br><br>The Unidentified, Wrecked, etc.<br><br>Defendant, et al. | Civil Action No. 1:04-CV375<br><br>HON. ROBERT HOLMES BELL |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO INTERVENORS' THIRD REQUEST TO DISMISS OR DENY COMPLAINT FOR LEGAL INSUFFICIENCY

### PRELIMINARY STATEMENT

Plaintiff, Great Lakes Exploration LLC, by counsel, respectfully files this Memorandum in Opposition to Intervenors' most recent motion to dismiss.[1] Intervenors' Motion reflects the third time that Intervenors have advanced substantially the same arguments. In support of their latest motion, Intervenors have attached the Affidavits of Wayne Lusardi and Thomas Graff.

As discussed below, the Court's prior analysis was correct, and Intervenors' arguments, albeit made in good faith, continue to misapprehend the law applicable to the

---

[1] Plaintiff Great Lakes Exploration appreciates the efforts of opposing counsel and the Court in permitting the parties an opportunity to attempt to reach an amicable solution of these issues. While Plaintiff regrets that the parties were not able to reach a resolution on all of the issues, it is gratified by the enormous progress made by the parties in resolving a significant number of the issues that had divided them.
 Plaintiff further apologizes to the Court to the extent that it has in any way unwittingly contributed to the Court's work load or burden of review. In an effort to help avoid unnecessarily contributing to that burden further, Plaintiff incorporates herein by reference its Memorandum in Opposition to Intervenors' original Motion to Dismiss, which addresses in detail most of the arguments raised by Intervenors' third attack on the sufficiency of the complaint. See also Plaintiff's Reply In Support of Motion for Leave to Amend. Except where the need for clarity dictates otherwise, Plaintiff has not repeated here the analysis and authorities previously provided in those filings.

exploration and recovery of shipwrecks having significant educational, scientific, historic or archaeological values. As in their Memorandum in Opposition to Plaintiff's Motion to file a Second Amended Complaint and in their original Motion to Dismiss, the crux of Intervenors' argument continues to be that they lack sufficient notice of the identity of the Defendant in order to be able to commence an investigation to determine whether they should assert a claim. *Compare* Int Mem Supp Mot Dismiss, 11-17-05, at 4 *with* Int Mem Opp Pl Mot File Sec Am Cmpl at 3 *and* Int Mem Supp Mot Dismiss, 11-18-04, at 1. As discussed further below, Intervenors' own judicial admissions refute this assertion. Intervernors admit that they commenced an investigation no later than September, 2005. E.g. Lusardi Aff Oct. 10, 2005 at ¶¶11, 12. Indeed, it is obvious that the State knows its interest perfectly well: it asserts a claim to the shipwreck by virtue of the fact that the State claims all shipwrecks lying on its bottom lands. See, e.g., Int Mem Supp Mot Interv 10-14-04; Int Mem Supp Mot Dismiss, 11-18-04, at 1, 9. See also Int Mem Supp Mot Dismiss, 11-17-05, at 13.

As further discussed below, even if Intervernors had not made their judicial admissions, their legal analysis misapprehends the relationship among state, federal and international law. Although it is difficult not to respect the State's creative and zealous advocacy of its novel claim that a state statute may somehow trump federal legislation and international law, a motion to dismiss the complaint is not the proper forum for adjudicating that assertion. While Intervenors' deserve a fair opportunity to advance their arguments for changing the law of the land, the U.S. Supreme Court has made clear that the proper procedural method for adjudicating those assertions is at an evidentiary hearing on any claim that Intervenors may choose to file—a hearing at which all parties will have

2

the right to confront and cross examine the evidence, and at which the Court will have the opportunity, first-hand, to evaluate the witnesses and testimony. See *California v. Deep Sea Research, Inc.*, 523 U.S. 491 (1998). Accordingly, the Court should deny Intervenors' motion without prejudice to Intervernors' right to present their legal arguments at a proper trial on the merits.

## ARGUMENT

### I. INTERVENORS ARE BOUND BY THEIR ADMISSIONS THAT THEY HAVE SUFFICIENT NOTICE TO ALLOW THEM TO "DETERMINE THEIR INTEREST" AND FILE A CLAIM.

Intervenors have made admissions that flatly contradict their asserted ground for dismissing the Second Amended Complaint. Contrary to their assertion that they are unable to determine whether they have any interest, they have repeatedly admitted that they claim an interest in any item located on Michigan bottom lands.

For example, Intervenors assert that *"any vessel described in the complaint* belongs to the State of Michigan," Int Mem Supp Mot Dismiss, 11-18-04, at 1 (emphasis added), and "is, by the operation of the ASA [Abandoned Shipwreck Act, 43 U.S.C. §2101 *et seq.*], the property of the State of Michigan, not subject to maritime jurisdiction." *Id.* at 9. In their most recent filing, Intervenors state:

> The State of Michigan controls the removal of objects from the Great Lakes by provisions of Part 761, Aboriginal Records and Antiquities and Abandoned Property Act MCI 324.76101, et seq., of the Natural Resources and Environmental Protection Act, MCL 324.101, et seq., and of Part 325, Great Lakes Submerged Lands Act, 324.32401, et seq. By virtue of MCL 324.32512(c), a person cannot remove any mineral, organic or other material from or within the bottomland or waters of the Great Lakes by any means without a permit from the Department of Environmental Quality. R 322.100(h)1. The provision does not turn on whether the state shows that the item is abandoned. When determining whether to issue the required permit, the Department considers the impact the proposed activity may

3

have on the public trust, riparian owners, game and fish habitat, public heath, safety, welfare, trust and interest, private rights and property. MCL424.32515.

Int Mem Supp Mot Dismiss, Nov. 17, 2005, at 13-14.

In Intervenors' novel view of the law, if a young boy accidentally fishing drops his fishing pole into Lake Michigan, he thus is not allowed to retrieve it. Instead, he must first apply for a permit from Intervenors. Intervernors must then conduct an evaluation of the "impact the proposed activity may have on the public trust, riparian owners, game and fish habitat, public heath, safety, welfare, trust and interest, private rights and property." Then and only then (if Intervenors decide to issue a permit) may the boy pick up his fishing pole—assuming that it is still there. While Plaintiff respectfully disagrees with Intervenors' view of the law, that question will not properly be before the Court unless and until Intervenors' file a claim. Suffice it to say at this stage that it is clear that Intervenors are able to "determine their interest".

## II. EVEN IF THEY HAD NOT ADMITTED THAT THEY HAVE BEEN ABLE TO DETERMINE THEIR INTEREST, INTERVENORS ARE BOUND BY THEIR ADMISSIONS THAT THEY HAVE SUFFICIENT NOTICE TO ALLOW THEM TO "COMMENCE AN INVESTIGATION."

Intervenors' admissions have gone beyond their concession that they are able to determine their interest. They have also admitted that they have been able to commence an investigation. See, e.g., Lusardi Aff, 10-10-05, at ¶¶11, 12.

In fact, Intervenors have stated that they were able to commence an investigation no later than September, 2005. At that time, Intervenors conducted two search days and covered an area of one square mile. Id. at ¶12. By their further concessions in their court filings, Intervenors have admitted that their concern was not that they were "unable to commence an investigation," but instead that they were unable to do so "without extensive

4

search efforts," because a "trained maritime archaeologist familiar with colonial ship building techniques and identification of shipwreck pieces and culture must be on site to personally investigate each target." Id. at ¶13. In particular, according to Intervenors, a search area of 2.36 sequare miles "can be surveyed in a couple of days." Id. at ¶12.

Requiring that Intervenors devote a "couple of days" to determining their interests is not unreasonable. Like most things worthwhile in life, good underwater archaeology requires study and hard work. This does not mean, however, that Intervenors have been unable to commence an investigation to determine their interests. They have conceded otherwise.[2]

In fact, Intervenors were supposed to have undertaken a comprehensive inventory of underwater shipwrecks following passage of the Abandoned Shipwreck Act in 1987. There is a presumption that Intervenors have acted regularly and have complied with the law, and they are thus presumed to have compiled such an inventory.[3]

---

[2] It may be worth noting as an aside that, in light of its offer to take a qualified representative of Intervenors to the debris fields and dive with him or her on the shipwreck scatter, Plaintiff has at times been perplexed in its efforts to try to understand why Intervenors continue to attack the Second Amended Complaint. To date, Intervenors have insisted that any information shared with them will become Michigan public property under the Public Records Act, and thus will be subject to public disclosure. Great Lakes Exploration and its team of scientists and archaeologists remain ready, willing and able to dive with one or more representatives from Intervenors, subject to their agreement that Great Lakes Exploration's confidential information and trade secrets will be protected and not subject to disclosure under the Michigan Public Records Act.

[3] Upon passage of the Abandoned Shipwreck Act in 1988, the State of Michigan had "the responsibility for the management" of certain resources in State waters" including "abandoned shipwrecks". See 43 U.S.C § 2101. Consistent with the principle that a manager inherently has the responsibility for inventorying the property which it manages, the Guidelines set forth detailed management actions which were to be taken in discharging this management responsibility, including the preparation of a comprehensive inventory of shipwrecks under state management. See Abandoned Shipwreck Act Guidelines, 55 FR 5011 Part II – Guidelines D1. It is presumed that the responsible state officials have faithfully and properly discharged their duty. When, over 15 years ago, the United States transferred to the "State in or on whose submerged lands" shipwrecks covered by the Act were located, 43 U.S.C. § 2105 (c), the Act also required that "As to "any shipwreck to which title is asserted under this section," the *"public shall be given adequate notice of the location"*. 43 U.S.C. 2105 (b) (emphasis added). The State of Michigan has never given such any "notice of the location" of a shipwreck fitting the description of the Defendant anywhere in the State of Michigan, whatsoever, let alone notice of such a shipwreck within the location set forth in the Second Amended Complaint.

Intervernors' real argument appears to be that it is their claim that Michigan state law supersedes both federal law (including the Abandoned Shipwreck Act and the Public Warships Act). While Plaintiff respectfully disagrees with the State's novel theory, it respects the State's rights to make this argument under our system of the rule of law-- provided that it is done so at the right time, and through the right procedural vehicle. A threshold motion to dismiss the complaint by Intervenors-- who have been granted the right to Intervene for a very limited purpose-- is not the proper procedural method to do so.

As noted in previous filings, both the U.S. Supreme Court and the U.S. Court of Appeals have instructed on the impropriety of attempting to adjudicate such issues without a proper trial on the merits, following a fair opportunity for discovery on the merits of the case, at which witnesses can be subjected to cross examination and confrontation.

For example, in *California v. Deep Sea Research, Inc.*, as here, the State of California had moved to dismiss based on its rights "to the Brother Jonathan under federal and state law." In rejecting the State's motion to dismiss and upholding admiralty jurisdiction, the Court ordered that the case should have proceeded to a trial on the merits, even where the State had asserted certain defenses of a jurisdictional nature. 523 U.S. at 494-95. This procedure is consistent with the well-established principle that where jurisdictional issues are intertwined with the merits, the Court should proceed to trial on the merits.

In *Fairport International Exploration, Inc. v. The Shipwrecked Vessel*, the Court of Appeals described in systematic detail the procedure for considering maritime claims to

sunken shipwrecks in light of *California v. Deep Sea Research*. The Court of Appeals gave unambiguous guidance on the nature and effect of *California v. Deep Sea Research*, noting that "where a State does not possess the vessel that is the subject of an in rem admiralty action, the Eleventh Amendment does not bar federal jurisdiction over the vessel and, therefore, federal courts may adjudicate competing claims to the shipwrecked vessel." *Fairport International Exploration, Inc. v. The Shipwrecked Vessel*, 177 F.3d at 496.

The Court rejected the effort by the State, as here, to invoke prior case law that had been superseded by the 1988 Abandoned Shipwreck Act and by the U.S. 1998 Supreme Court's decision of *California v. Deep Sea Research*. 177 F.3d at 497.[4] Instead, the Sixth

---

[4] Despite their assertion that they do not have sufficient information to conduct an investigation, Intervenors continue to assert that they have "constructive and actual possession" of the Defendant because, they contend, it is located on and in Michigan's bottomlands. Compare Int Mem Mot Dismiss, 11-17-05, at 5 with Int Mem Mot Dismiss, 11-18-04, at 15. This argument continues to repeat Intervenors' good faith misunderstandings of admiralty law, since *California v. Deep Sea Research* expressly rejects the notion that such "constructive possession" creates an impediment to the federal judiciary's admiralty and maritime jurisdiction over shipwrecks on state bottomlands, and since a trial on the merits would be required to determine Intervenors' claim of actual possession. *See California v. Deep Sea Research, Inc.*, 523 U.S. at 491 (required possession is "'an actual possession, and not that mere constructive possession which is very often implied by reason of ownership under circumstances favorable to such implication.'"). See Bilicki Dec ¶29; Libert Rebuttal Aff; Demel Aff.

The U.S. Court of Appeals for the Sixth Circuit has similarly instructed that the possession claimed by the State of Michigan is not sufficient to constitute "actual possession":

> *Deep Sea Research* drew upon Civil War-era precedent to define "possession," for purposes of the ASA, as actual (not constructive) possession. *See Deep Sea Research*, 118 S. Ct. at 1472-73; *see also The Davis*, 77 U.S. (10 Wall.) 15, 21 (1869) ("The possession which would do this must be an actual possession, and not that mere constructive possession which is very often implied by reason of ownership under circumstances favorable to such implication."). When the district courts ruled in both the *Brother Jonathan* and *Fairport I*, neither State had raised the contested ships nor registered them as historic sites. Nor has Michigan brought before the district court items recovered from the Captain Lawrence.

*Fairport International Exploration, Inc. v. The Shipwrecked Vessel*, 177 F.3d at 497 n.3 (emphasis added).

In light of the instruction in *California v. Deep Sea Research*, the Court of Appeals characterized as a "red herring" the arguments raised by the State of Michigan—which are now urged, once again, in Intervenors' most recent Motion to Dismiss:

> The Supreme Court's recent decision in *Deep Sea Research* rejects this approach. That opinion definitively instructs us that, if a State does not possess a shipwreck, the Eleventh Amendment does not prevent a federal court from entertaining claims under the ASA to the shipwreck. *See Deep Sea Research*, 118 S. Ct. at 1473. The Court explicitly distinguished

Circuit has instructed that the burden of proof lies with a State asserting a claim under the Abandoned Shipwreck Act:

> The district court in Fairport I required only that Michigan establish a colorable claim to the shipwreck. The court permitted Michigan to prove by a preponderance of the evidence that Behrens abandoned the *Captain Lawrence*. *See Fairport I*, 913 F. Supp. at 559. The Supreme Court disapproved of a similar threshold inquiry by the *Brother Jonathan* district court, holding that federal courts may engage in "complete adjudication of the competing claims" under the ASA. *Deep Sea Research*, 118 S. Ct. at 1473. When the district court revisits this case on remand, it will not conduct a threshold inquiry to determine whether Michigan has a colorable claim under the ASA. Instead, it will decide whether Behrens abandoned the shipwreck; if he did, the ASA vests title in Michigan.

---

past cases on this ground. *See, e.g., id.* at 1471 ("In this case, unlike in *Treasure Salvors*, DSR asserts rights to a res that is not in the possession of the State.") In the *Brother Jonathan* dispute, as in *Fairport I*, the district court believed that the Eleventh Amendment barred federal jurisdiction over shipwrecks claimed by States through the ASA's transfer of title. The Supreme Court vacated the *Brother Jonathan* opinion and remanded because the Court found that this evaluation of abandonment "was necessarily influenced by the [mistaken] assumption that the Eleventh Amendment was relevant to the courts' inquiry." *Deep Sea Research*, 118 S. Ct. at 1473. It continued: "In light of our ruling that the Eleventh Amendment does not bar complete adjudication of the competing claims to the *Brother Jonathan* in federal court, the application of the ASA must be reevaluated." *Ibid.* This implies that, because no jurisdictional barrier exists, the district court should conduct only one "abandonment" inquiry, and that that inquiry does not ask a preliminary jurisdictional question, but rather resolves whether Behrens abandoned the ship, and thus whether the ASA transfers title to Michigan. \*\*\*\*The Supreme Court has clarified that, because Michigan did not possess the res, the district court should not have undertaken a preliminary Eleventh Amendment inquiry. Rather, Michigan's claim under the ASA should receive an evaluation consistent with the requirements of the ASA and maritime law. The Supreme Court remanded the *Brother Jonathan* case "[i]n light of [the Court's] ruling that the Eleventh Amendment does not bar *complete adjudication* of the competing claims to the *Brother Jonathan* in federal court . . . ." *Ibid.* (emphasis added). *Thus, we remand this case to the district court for complete adjudication of the competing claims to the Captain Lawrence.* We write to guide the district court in its consideration of two issues: the means of proving abandonment, and the burden of proof placed upon Michigan.

*Fairport International Exploration, Inc. v. The Shipwrecked Vessel,* 177 F.3d at 497-98.

Thus, little need be said about the State's "embeddedness" claim at this stage, which is clearly based on second-hand having no merit. *See* Bilicki Dec ¶33; Libert Rebuttal Aff at ¶11. *See also* Abandoned Shipwreck Act Guidelines, 55 FR 5011 Part I – Definitions (items embedded where mechanical "tools of excavation" required to recover them). A trial on the merits will demonstrate that Intervenors' claim is erroneous, and that the notion of utilizing mechanical tools of excavation on the *Griffin* reflects not merely a primitive "smash and grab" concept of underwater archaeology, but is, indeed, one that is barbaric in 21st century archaeology. See Bilicki Dec ¶34.

8

*Fairport International Exploration, Inc. v. The Shipwrecked Vessel*, 177 F.3d at 500.

The Court of Appeals has further instructed that the State must carry its burden of proof by "clear and convincing evidence":

> The uniform rule in admiralty law is that a finding of abandonment requires proof by clear and convincing evidence.**** On remand, the district court will decide whether the ASA applies, not whether the Eleventh Amendment bars the action. The court should consider whether Michigan can prove that it owns the shipwreck-that is, whether clear and convincing evidence shows that Behrens abandoned the *Captain Lawrence*.

177 F.3d at 501.

Of course, if Intervenors desire to go beyond their attack on the sufficiency of the pleadings, they may do so-- but only once the matter has been properly raised. As instructed by the U.S. Supreme Court in *Deep Sea Research*—and as made clear in Supp. Rule C-- once Intervenors file their Claim and Answer, they will be entitled to assert such arguments in favor of changing the law. At this threshold stage of the proceedings, they have jumped the gun. In sum, under the instruction of both *Deep Sea Research* and *Fairport*, the Court is required (1) to deny the Intervenors' most recent motion to dismiss, (2) to issue the warrant for arrest, and (3) if the Intervenors' choose to file a claim, proceed with a trial on the merits.

## III. EVEN DISREGARDING INTERVENORS' ADMISSIONS, THE SECOND AMENDED COMPLAINT STATES ONE OR MORE CLAIMS FOR RELIEF.

Even absent their admissions, Intervenors' assertion of the insufficiency of the Second Amended Complaint, *compare* Int Mem Supp Mot Dismiss 11/17/05 *with* See Int Mem Opp P Mot File Sec Am Compl at 5, would fail as a matter of law. As with their previous opposition to Plaintiff's motion for leave to amend, Intervenors' argument continues to misapprehend both the rules of notice pleading applicable to the Federal Rules

9

of Civil Procedure in general, and the extremely liberal pleading standards that have historically characterized maritime practice and procedure, in particular.

The Second Amended Complaint alleges the absence of salvage efforts by the original owners. See Second Amended Complaint ¶¶ 12, 13. It alleges that Plaintiff is actively and successfully engaged in the process of reducing the shipwreck to its exclusive custody, control, possession, and dominion. See Second Amended Complaint ¶14, and it asserts salvage rights. See also Supp Aff Steven Libert 10/19/05.

The Second Amended Complaint identifies the Defendant as the *Griffin* shipwreck. See 2nd Am Cmpl ¶¶2, 6. It provides the date of the sinking. See 2nd Am Cmpl ¶6. It describes the ownership of the shipwreck. See 2nd Am Cmpl ¶5. It gives the precise location of the shipwreck, even to the extent of publicly identifying the 2.3 mile square area of the debris fields comprising the wreck. See 2nd Am Cmpl ¶2. See also Libert Aff dated 1/21/05.

As noted in previous filings on behalf of Great Lakes Exploration, the courts have time and again found such descriptions sufficient to comply with Rules C and E. It is therefore not necessary to discuss the fact that the only evidence in the record establishes that the description is as precise as possible in light of the dispersion of the shipwreck due to the energy, wind, wave and other conditions of the area.[5] See generally 4 *Benedict On*

---

[5] Intervenors may be confused over the maritime distinction between "precise location," on the one hand, and "pinpoint location," on the other. The shipwreck's precise location is, of course, set forth in the Second Amended Complaint; and there is no pinpoint location for this particular shipwreck, due to the high energy conditions at the site of the shipwreck, the bottom conditions (including the three shoals), and the resultant dispersion of the shipwreck with wide artifact scatter and debris fields. *See* Demel Aff dated 01/24/05; Libert Aff dated 01/21/05; Bilicki Dec; Rebuttal Libert Aff. This distinction has been discussed at length in Great Lakes prior filings, e.g. Pl Mem Opp Motion Dismiss, 01/27/05, the Affidavits of Dr. Demel, of archaeologist Stephen Bilicki, and of Steven Libert, and the colloquy among counsel and the Court at the Status Conference on 05/10/05. Although Intervenors also seem to think that admiralty law may be unfair to potential claimants in not requiring publication of the "existing condition" of the property, it is not: under centuries-old admiralty principles, any person claiming an interest in maritime property—having chosen to enjoy the benefits of using the public seas for his own purposes— has a continuing duty to keep track of his

*Admiralty* §3.02[D][2] (2003) (emphasis added) ("The particularity requirement of Rule E does not intend to change the pleading liberality traditional to admiralty. *It is only necessary that the facts must be sufficient to set forth a cause of action and the basis for the cause of action.*")

The Second Amended Complaint thus goes well beyond the pleading forms long-accepted in admiralty practice and procedure. *See e.g., Benedict On Admiralty – Forms (Forms 1-1, 1-2, 1-3), attached as Exhibit 3.* This is particularly true as to the precedent on the proper description of dispersed shipwreck debris located in a high energy environments, such as the *Atocha*.

The legal precedents upholding such descriptions of the precise location of shipwreck scatter are consistent with good and standard practices for the exploration and salvage of historic shipwrecks. As Intervenors' affiant, Mr. Lusardi notes in his Affidavit dated 10/19/04, "Even if broken apart and distributed widely across the lake bottom, shipwrecks can be valuable in our understanding of [the] past." The Field Museum's Dr. Scott Demel confirms that good and standard practices for underwater exploration and

---

property, which includes a duty to keep himself informed of the nature and location of such property. Intervenors thus continue to misapprehend the functional nature of admiralty practice and procedure, with its historical focus on getting to the merits of a case without cumbersome procedural hurdles, rigid forms or strictures, *see* 3A *Benedict On Admiralty* §287.

The test under Fed. R. Civ. P. Suppl. E(2) is not whether Intervenors can "conduct an investigation," but instead whether they can "*commence* an investigation of the facts and ...frame a responsive pleading." (emphasis added)). It is obvious that the Intervenors have been able to do so. Intervenors are aware that the Defendant is the *Griffin*, and they have been able to commence an investigation into the history and chain-of-title of that vessel and assert—rightly or wrongly—that it is no longer the property of France. Indeed, Intervenors even assert that the State of Michigan is the sole owner of all items on its submerged lands. Accordingly, Intervenors'defense that, in Mr. Lusardi's view, a sonar survey of the entire 2.3 mile area would require 2 days of effort, is without merit.

Intervenors' argument also continues to misapprehend the science and nature of underwater exploration and historic shipwreck salvage. *See* Affidavit of Dr. Scott Demel at 01/24/05. (need to study entire shipwreck *in situ*, including entire debris field and associated artifacts).

Finally, Intervenors' argument misapprehends the law and policies, both within the United States and under international maritime law, with respect to the salvage of historic shipwrecks owned by foreign sovereigns. See 55 CFR 5011 Part II – Guidelines D6 (encouraging *in situ* exploration and preservation, and conversely discouraging the removal of artifacts or destructive testing methodologies).

historical preservation in the Great Lakes Region dictate that to the extent practicable, all artifacts from shipwrecks having historic value be maintained under unified management to permit scientific and historic research. Permitting dispersion of artifacts from an historic shipwreck, such as the *Griffin*, is inconsistent with such practices. Good practices also dictate that to the extent practicable, the entire scatter and debris fields for shipwrecks having historic value be included in the exploration and salvage effort.[6]

As for Intervenors' repetition of its argument that the *Griffin* is abandoned and no longer belongs to France, little need be said other than to note the previous authorities referenced in Great Lakes Explorations' filings on the need for a trial on the merits. Suffice it to say that The Republic of France disagrees with Intervenors' argument. Great Lakes Exploration disagrees with Intervenors' argument. Its team of scientists, historians and archaeologists disagree Intervenors' argument. See Bilicki Dec.; Demel Aff; Notice of Filing dated 08/16/05; Libert Aff dated 01/21/05; Libert Rebuttal Dec.. The Abandoned Shipwreck Act, the Public Warships Act, and international maritime law all make clear that Intervenors' assertions are in error.[7] In sum, while Great Lakes believes that

---

[6] See Affidavit of Dr. Scott Demel dated 01/24/05. Dr. Demel's affidavit also observes improvidently using mechanical devices for underwater excavation may result in substantial loss of information and/or irreparable harm to the site conditions. Dr. Demel would not recommend the use of mechanical devices for "excavating" the *Griffin*, and he is aware of no proposal for the use of such mechanical devices. Similarly, underwater archaeologist Stephen Bilicki considers the use of mechanical tools of excavation to be inappropriate for a delicate shipwreck such as the *Griffin*.

[7] *See, e.g., Seahunt v. Kingdom of Spain*, 221 F.3d 634 (4th Cir. 2000)(sovereign property owned or controlled by a foreign sovereign remains vested in that sovereign, and does not pass to another, absent the sovereign's express agreement); 55 Fed. Reg. 50116, 50121 (1990) (property of a foreign sovereign thus "remains the property of the nation to which it belonged at the time of sinking unless that nation has taken formal action to abandon it or to transfer title to another party"; *Fairport International Exploration, Inc. v. The Shipwrecked Vessel*, 177 F.3d at 497.n.3 (distinguishing sovereign vessels from privately-owned vessels). *See* 3A *Benedict On Admiralty* §134 n.6, §158. *See also* Abandoned Shipwreck Act Guidelines, 55 FR 5011 Part I – Definitions (foreign sovereign vessel "remains the property of the nation to which it belonged at the time of sinking unless that nation has taken formal action to abandon it or to transfer title to another party."). And while Intervenors claim that the U.S. Department of State has not yet formally recognized the Republic of France's claim of ownership of the *Griffin*, the Department is prepared to formally present its views through expert testimony as soon as the Court schedules a trial on the merits.

Intervenors' analysis of the law is erroneous, Intervenors will have the opportunity to assert their abandonment claim on the merits. As both the U.S. Supreme Court and the Sixth Circuit have instructed, these issues are to be adjudicated on the merits and do not divest an Article III court's admiralty jurisdiction.

The Second Amended Complaint sets forth ample information for any person knowledgeable in the field of history and/or underwater archaeology to "commence an investigation" of the Defendant shipwreck. The Second Amended Complaint states that the Defendant shipwreck is the *Griffin*. The *Griffin* is one of the most famous in American history, and many volumes of information have been written describing it. Bilicki Dec ¶7. There is a great deal of information that is publicly available from which anyone can "commence an investigation" about the *Griffin*. Bilicki Dec ¶8; Libert Rebuttal Aff at ¶4. Any archaeologist undertaking to identify the Defendant shipwreck can easily deduce the present day qualities and character of the shipwreck. There is much open-source material about the nature and construction of the shipwreck. Bilicki Dec ¶9. The Complaint does not "identify geographic regions rather than a wreck," but instead gives a description of the Defendant. The debris fields described are not "hypothethical debris fields," but the real thing, as confirmed by Geomar's analysis this Spring. Bilicki Dec ¶10. The information readily accessible to the public makes clear that at the time it sank, the *Griffin* was owned by France and was on a military/exploration mission for the French government. Bilicki Dec ¶11.[8]

---

Moreover, independent of these statutes and precedents, under developing principles of international maritime law, a foreign sovereign should be accorded the right to recover its sunken warships located within the territory of another sovereign, if not through direct action, then, at a minimum, through a private contract salvage.

[8] As will be the subject of detailed proof at a trial on the merits, based on the treaties and agreements between the United States and France, established principles of international relations and law that have applied to those countries, the Abandoned Shipwreck Act, and the Public Warships act, the vessel would continue to

In addition to "commencing an investigation" through such readily-accessible open-source materials, it would be comparatively easy for any competent underwater archaeologist to conduct investigations at the site. Bilicki Dec. The total size of the wreck site designated in the Second Amended Complaint is approximately 2.36 square miles. In terms of contemporary underwater archaeological research, this is a miniscule area. Bilicki Dec ¶12. It is substantially less than the areas designated in most shipwreck investigations. *Id.*

It is important in the study of historic shipwrecks to include all associated cultural objects as a single unified whole. Bilicki Dec ¶13, 14. Excluding cultural objects and artifacts merely because they are not in the primary, secondary or tertiary debris fields can result in the significant loss of historical and archaeological information about the site. Bilicki Dec ¶13, 14. As Mr. Lusardi notes, the area of 2.36 square miles "can be surveyed in a couple of days." Lusardi Affidavit at ¶11; Bilicki Dec ¶15; Libert Rebuttal Aff at ¶5. There have been many different opportunities for anyone to commence an at-sea investigation into the shipwreck since November, 2005, and during the intervening nine months, nothing would have prevented Intervenors from completing the survey of the remaining 1.36 square miles. Bilicki Dec ¶15. The weather window has opened significantly and there have been many, many weeks of time available during which such an at-sea investigation could have been conducted by the Intervenors. Bilicki Dec ¶17.

For its part, in Spring, 2006, Great Lakes Exploration continued its on-going scientific study, exploration and salvage of the site, utilizing Geomar Research, LLC. The study was conducted following the highest standards of scientific and historical analysis.

---

belong to France. These principles were recognized in connection with the sister ship of the *Griffin*, the *La Belle*, where the United States formally accorded recognition to France's rights. Bilicki Dec ¶11.

Bilicki Dec ¶18. This work included Geomar's professional underwater archaeological survey of the Defendant utilizing industry standard equipment and survey techniques (e.g. a remote sensing survey utilizing acoustical and magnetic detection systems, together with diver investigation). Bilicki Dec ¶19; Libert Rebuttal Aff at ¶6. This on-going analysis has again corroborated the presence of the various debris fields comprising the shipwreck site. Bilicki Dec ¶24. From the beginning, Great Lakes Exploration has insisted that primacy be given to protecting the scientific and historic values of the site, and that nothing should be done that was inconsistent with those values. Bilicki Dec ¶28.

By virtue of these efforts, Great Lakes Exploration has been successful in rescuing the Defendant from the marine peril, and is continuing to do so. Bilicki Dec ¶29; Libert Rebuttal Aff at ¶10. Great Lakes Exploration has worked with its contractors to develop a long-term program for the continuing exploration, preservation, recovery and other salvage of the Defendant in a way that protects the scientific, historical and environmental characteristics of the shipwreck. Bilicki Dec ¶29. Great Lakes Exploration is exercising exclusive custody and control of the Defendant, has sole possession, and is actively working to map it, to determine the appropriate procedures for further protection and conservation, and to protect it from further marine peril. Bilicki Dec ¶29. Great Lakes Exploration has exercised the capability to remove the shipwreck, including artifacts and debris fields, and bring them to the surface. Bilicki Dec ¶29. Great Lakes Exploration and its team of historians, scientists and engineers have successfully completed Phase I and goals for its on-going salvage include the comprehensive generation of a precise catalog and map of all the artifacts in the area and limited test

excavations around anomalies which appear to be articulated to determine if larger, more intact archaeological features are present, and to corroborate more precisely the exact age, extent, and significance of each of these underwater cultural resources. Bilicki Dec; Libert Rebuttal Aff at ¶9. Working with professionals in the field, it has developed a long-term program for the continuing exploration, preservation, recovery and other salvage of the Defendant in a way that protects the scientific, historical and environmental characteristics of the shipwreck. Libert Rebuttal Aff at ¶10.

Great Lakes Exploration is making conscience decisions regarding what should be brought to the surface and what should not be brought to the surface—and when—based on the best interests of the shipwreck itself, including the preservation of the scientific and historic values of the shipwreck and the shared cultural heritage of the peoples of the United States, Canada and France. Bilicki Dec ¶29. In the years following passage of the Abandoned Shipwreck Act, courts in both cases under the Act and cases applying the general maritime law have Courts have repeatedly that successful salvage requires protection of the scientific, historical and archaeological values of the shipwreck. *Columbus-America Discovery Group v. Atlantic Mutual Insurance Company*, 56 F.3d 556, 572, 576, 572 (4th Cir. 1995) *with Columbus-America Discovery Group, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel*, Civ A No. 87-363-N, 1993 WL 580900 at *9 (E.D. Va. Nov. 18, 1993).

It is equally clear that the Defendant is not "embedded." Bilicki Dec ¶33; Libert Rebuttal Aff at ¶11. The use of mechanical tools of excavation could result in the irreparable loss of scientific information. It is clear that mechanical tools of excavation would not be required or appropriate under the existing conditions. To the extent that

further analysis and salvage involves any disturbance of the bottom sediments, if any is required and/or advisable, this should be done utilizing established archaeological methods such as hand fanning, lift bags and other non-mechanical techniques. Bilicki Dec ¶33; Libert Rebuttal Aff at ¶11.[9] Using mechanical tools of exaction would be at best primitive, and at worst barbaric. Bilicki Dec ¶34. In any event, it is clear that mechanical tools of excavation are not required, and the shipwreck is not "embedded."

Rule C provides that, upon an order of publication of the complaint, a party seeking to contest a proceeding may file a claim and/or answer.[10] See Fed. R. Civ. P. Supp. R. C(6). Under Rule C(6), the Intervenors would therefore be entitled to assert all their defenses, both jurisdictional and on the merits—including their claim of ownership based on their ownership of state bottomlands.

The core issues for trial on the merits of this case are straightforward and simple: (1) is the shipwreck the *Griffin*; (2) is it "embedded"; and (3) has the *Griffin* been abandoned to the State of Michigan, or does it remain the property of the Republic of France? Common sense dictates that resolving these issues requires nothing more than the Court's wisdom in

---

[9] As noted above, the information upon which Mr. Lusardi has based his assumptions and speculation is clearly out of date. Libert Rebuttal Aff at ¶15. Great Lakes remain ready, willing and able to discuss details with Mr. Lusardi or his designee, and to take him or his representative to the debris fields, provided that they agree to be bound by confidentiality and protection of its trade secrets. Libert Rebuttal Aff at ¶15. Great Lakes Exploration has requested, and obtained, permission of the Republic of France to proceed with the exploration, salvage and scientific analysis, and it has continued to so. Libert Rebuttal Aff at ¶17. It has extended to the State of Michigan an open invitation to assist in these efforts, but to date it has been unable to work out all the details for such a joint activity. Libert Rebuttal Aff at ¶17.

[10] Plaintiff has been, and remains, ready, willing and able, upon issuance of a proper arrest warrant, to comply with the warrant's terms. See Rebuttal Affidavit of Steven J. Libert. In the Court's discretion, those terms could include presentation of an arrestable artifact to the U.S. Marshal (with the Court exercising constructive jurisdiction), or alternatively service on the vessel itself. If, as Intervenors assert, Plaintiff were unable to comply with those terms because of the purported lack of success of its salvage, then no *in rem* jurisdiction would attach.

adjudicating these issues under the rule of law, based on the objective, scientific analysis of the shipwreck-- devoid of emotion, political intrigue and power fights.[11]

## CONCLUSION

The Court should deny Intervenors' latest motion to dismiss.

> Respectfully submitted,
> GREAT LAKES EXPLORATION
> /s/ *Richard T. Robol*
> Richard T. Robol - 0064345
> Attorney for Plaintiff
> ROBOL LAW OFFICE, LPA
> 555 City Park Avenue
> Columbus, Ohio 43215
> Telephone: (614) 737-3739
> Facsimile: (614) 737-3756
> rrobol@robollaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of June, 2006, a copy of the foregoing was served by electronic mail via the Court's ECF system upon all counsel of record.

> /s/ *Richard T. Robol*
> Of Counsel

---

[11] Great Lakes Exploration continues to hope, particularly in light of the significant progress made by the parties, that Intervenors might reconsider their position and join in a cooperative effort. Congress' vision for the Abandoned Shipwreck Act was that public and private authorities would work in concert, not in competition, in the exploration and preservation of shipwrecks. *See* 43 U.S.C. §§2103-2104. See Bilicki Dec. Given the enormous opportunities created by the exploration of shipwrecks for advancing public and private education presented—and for thereby benefiting present and future generations of students, scholars, and the public—Great Lakes remains convinced that all would be best served by working together.