## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### Northern Division

| | | |
|---|---|---|
| GREAT LAKES EXPLORATION GROUP LLC | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:04-CV-375 |
| The Unidentified, Wrecked and (For Salvage-Right Purposes), Abandoned Sailing Vessel, her tackle, apparel, appurtenances, cargo, etc. located within a circle having a radius of 3.5 statute miles, whose center point is at coordinates 45° 32.8′ North latitude and 86° 41.5′ West longitude, | ) ) ) ) ) ) ) ) ) ) | HON. ROBERT HOLMES BELL |
| *In Rem* | ) ) | |
| Defendant, | ) | |
| v | | |
| STATE OF MICHIGAN DEPARTMENT OF HISTORY, ARTS, AND LIBRARIES AND MICHIGAN DEPARTMENT OF ENVIRONMENTAL QUALITY, | | |
| Intervenors. | | |

**INTERVENORS' REPLY IN SUPPORT
OF MOTION TO DISMISS**

I.      Introduction

Plaintiff re-titles Intervenors' Renewed Motion to Dismiss and other filings,[1] responds to it as a Rule 12(b)(6) or Rule 56 Motion, restates[2] and misstates the basis for the motion,[3] and

---

[1] According to Plaintiff this is "Intervenors Third Request to Dismiss or Deny Complaint for Legal Insufficiency and the court denied the earlier motions.

[2] Plaintiff reports that the crux of Intervenors' argument is lack of notice of the defendant sufficient to determine whether to assert a claim. (Docket No. 93, p 2), overlooking the Intervenors reliance upon the 11th Amendment.

[3] Plaintiff similarly misstates Intervenors' arguments, legal positions and factual representations throughout its brief and in its affidavits.

Plaintiff transforms the statement that Michigan lacks evidence by which to distinguish the object that is shown in the attachments to Mr. Lusardi's original affidavit from a barn timber into the statement that Michigan says it is a barn timber, (Libert No. 33)

Mr. Bilicki attributes positions to Intervenors counsel (Docket 93, ¶ 9, 32) and to the State (Docket 93, ¶ 13) with no foundation, as does Mr. Libert (Docket 93, Libert, ¶ 12, 25.

Plaintiff's affiants commonly engage in incompetent vouching for the testimony of other witnesses while transforming their testimony.

By way of example: Mr. Bilicki spoke of an investigation that reveals "characteristics consistent with the earliest European ship construction techniques in North America" (Id., Bilicki, ¶ 25), but Mr. Libert, purportedly vouching for Mr. Bilicki, transforms this into, "European ship construction techniques of the type that would have been utilized by Sieur de LaSalle." (Id., Libert, ¶ 8)

Nothing in Mr. Bilicki's resume reveals familiarity with 17th century French vessels or French colonial shipbuilding techniques. (Id., Bilicki¶25, 32). The extension of Mr. Bilicki's opinion by Mr. Libert appears to ignore the prominence of the blacksmith in the shipbuilding team. Others have taken the *presence* of iron and the *absence* of trenails as evidence of 17th century French ship construction. In, "Was This LaSalle's Griffin," *The Beaver, Magazine of the North* (Winter, 1955), George G. Fox, "historian and archaeologist," discussing a Griffin find near Drummond Island, reported: "All investigators of the wreck have noted that trenails (wooded pegs) were not used. In the 17th century the British were using trenails in ship building, but the French were not." (Attachment A).

Like Mr. Demel before him, Mr. Bilicki (Docket 93, id., ¶ 25) (with Mr. Libert vouching, id., ¶ 8) reports the unlikely conclusion that a scarfed timber could be the bowsprit or spar of a small, 17th century sailing vessel. (See, Affidavit of Wayne Lusardi in Support of Motion to Dismiss, (Attachment B), ¶ 9).

Mr. Libert "vouches" for France's claim that "the shipwreck" belongs to France. (Docket 93, Libert, id., ¶ 35). Perhaps he meant to say that France claims the Griffon, a claim Michigan will challenge if asserted by France.

Quimby showed that it is likely the Griffon was lost east of Poverty Island.

Plaintiff's affiants typically preface incompetent declarations with a declaration that Intervenors' witnesses expressed incompetent opinions. (Id., Libert, ¶ 13, 14, 20, 23, 24) Mr. Bilicki, who describes himself as an underwater archaeologist and researcher of historic shipwrecks, expresses opinions on treaties and principles of international relations. He asserts

1

characterizes Intervenors' legal position as novel.  This response is intended to reaffirm Intervenors' fundamental challenge to *in rem* admirably jurisdiction based upon Michigan's actual possession of the subject, the limitations imposed by the 11th Amendment and Plaintiff's failure to show any legal lien on which to base in rem jurisdiction.

Intervenors continue to challenge the formal adequacy of the complaint under Fed R Civ P. Sup Rule C, for failure to describe the property that is the subject of the action and Fed R Civ P. Sup Rule E, for failure to state the circumstances from which the claim arises with such particularity that the Intervenors are able to commence an investigation of the facts.  They have searched parts of the 3 circles, which Plaintiff now claims are "likely to be too narrow," (Bilicki, ¶ 13), over the course of many months for the single object that Plaintiff has so far disclosed or any patterns that Plaintiff could reasonably consider the named Defendant. (Lusardi, Attachment B, ¶ 8).

The photos provided with Mr. Lusardi's original affidavit, display the alleged defendant embedded in the lands of Michigan. (Docket # 15, Attachment 1).  Plaintiff continues to withhold the precise location of the Defendant, so Intervenors cannot further describe its physical location and condition, except to say that, consistent with its presence in the soil, it has yet to appear by sonar examination of the bottomlands.

The court ordered Plaintiff to disclose the precise location of any Defendant when it denied Intervenors' Motion to Dismiss (Docket 15) considered as a request for a more definite statement, holding the remainder of the Motion to Dismiss in abeyance, to be considered after

---

legal conclusions concerning exclusive possession and control of the Defendant by Plaintiff as an "observation", and he and Mr. Libert assert the occurrence of "ongoing" "continuing" salvage (Docket No. 93, Bilicki, ¶ 26) and "successful" rescue (Id, ¶ 29).  Mr. Libert vouches for the Second Amended Complaint for stating "our salvage has been successful." (Id., Libert, ¶ 32).  But no one identifies anything that has been recovered.

receipt of Plaintiff's compliance with request Intervenors' request for documents and the precise location of Defendant (Docket 39). When Plaintiff filed its Second Amended Complaint instead of providing the required information, as the court's file reflects, (see also, Lusardi, ¶ 3), Intervenors renewed their Rule 12(b)(1) Motion (Docket 76). Their legal arguments are stated in Docket Numbers 15, 16, 33, 34 62 and 77.

The Renewed Motion invokes admiralty law provisions articulated even before the Abandoned Shipwreck Act. Plaintiff presents wholly novel claims. Although Plaintiff must make a factual showing to respond to Intervenors' 12(b)(1) motion and show in rem jurisdiction, Plaintiff declines to comply with the Court's disclosure order and claims a proprietary interest in: 1) specific data and details on the nature, composition, location and characteristics of the shipwreck site, 2) the Plaintiff's efforts, and 3) any information subsequently developed not demonstrably independent of information provided by GLEG. See, Rebuttal Affidavit in Support of Plaintiff's Motion for Protective Order (Docket #45). But, there is no admiralty lien in information acquired from a wreck and no separate, exclusive right to appropriate the value of a find in place. *RMS Titanic v The Wrecked and Abandoned Vessel*, 286 F3d 194, 205 (4th Cir 2002). Jurisdiction in a salvage case requires rescue of goods, *Dluhos v The Floating and Abandoned Vessel, known as "New York,"* 163 F3d 63, 68-69; 73 (2nd Cir 1998), even when archaeology restricts the timing of recovery.

If Michigan must acknowledge such proprietary interest to be able to initiate an investigation of the defendant, to dive with Plaintiff, or to obtain discovery in this matter, there will be no further need for the court. Intervenors will have lost Michigan's cultural heritage along with its physical property. It is, therefore, necessary, paraphrasing Plaintiff, to burden the courts to protect state property and Michigan's cultural patrimony from private appropriation.

**II. Notice Pleadings do not Constitute a Response to the Motion to Dismiss.**

Intervenors base their renewed motion upon the demonstrated presence, within limitations imposed by Plaintiff, of the alleged Defendant within Michigan soil (Docket 15) so that it is in the actual possession of the State of Michigan;[4] and the court cannot exercise jurisdiction over it pursuant to the 11th Amendment.[5]

Plaintiff's response is that it is too careful to "treat" the defendant as embedded[6] and will handle the find according to desirable archaeological standards, not leave it in place, like Michigan has in the past. A promise to continue a "successful salvage enterprise" if the court assumes jurisdiction does not meet Plaintiff's burden.

Based on Intervenor's showing, Plaintiff bore the burden of presenting evidence to establish the court's jurisdiction.

> A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction. When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction, the district court must weigh the evidence and the plaintiff has the

---

[4] Michigan has never claimed constructive possession of the defendant. That is, Michigan does not claim possession of the alleged vessel by reason of ownership under circumstances favorable to implication of possession. *The Davis*, 77 US (10 Wall) 15, 21 (1869). To the contrary, it claims ownership by virtue of its actual possession of the vessel within its soil and it prevents removal of artifacts in its bottomlands as a matter of law. MCL 324.32512(c); 324.76106; 324.76107. Here Plaintiff does not show possession of anything other than information and it cannot legally salvage anything to be able to claim a lien without obtaining a permit. It is Plaintiff who neither owns the lands nor presents any recovered object to the court.

[5] In *Fairport International Exploration, Inc. v the Shipwrecked Vessel known as the Captain Lawrence,* 177 F3d 491 (6th Cir, 1999), the original owner appeared as the claimant, so that embeddedness was not dispositive, although, as the court noted, the court could have acquired in rem jurisdiction over recovered artifacts within Michigan's possession. 177 F3d at 497 n 3.

[6] Plaintiff creates and conquers a cartoon argument that goes something like this: The ASA provides a statutory definition of "embedded" that refers to removal of objects by use of tools of extraction: The State says that the vessel should be "treated" as embedded (Docket 93, Bilicki, ¶ 32). If it is embedded it must, as matter of definition, be removed by tools of excavation. Therefore, the state says the vessel must be removed by tools of excavation. Plaintiff then stands firmly on the side of not using destructive devices to remove the vessel, so it does not "treat" the vessel as embedded. Instead, it uses ill advised techniques. See, Lusardi, Attachment B, ¶11, 12).

burden of proving that the court has jurisdiction over the subject matter. See *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). *Golden v. Gorno Bros.*, 410 F.3d 879, 881 (6th Cir. 2005)

Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). Moreover, the court is empowered to resolve factual disputes when subject matter jurisdiction is challenged. *Rogers*, 798 F.2d at 915, 918 (contrasting analysis under Rule 12(b)(6) where existence of genuine issues of material fact warrants denial of the motion to dismiss). Defendants moved for dismissal based on both Rules 12(b)(1) and (6). However, we are bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction. See *Bell v. Hood*, 327 U.S. 678, 682, 90 L. Ed. 939, 66 S. Ct. 773 (1946) (motion to dismiss for failure to state a cause of action may be decided only after establishing subject matter jurisdiction, since determination of the validity of the claim is, in itself, an exercise of jurisdiction); Wright & Miller, 5 Federal Practice and Procedure § 1350 at 548 (1969). *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990).

Plaintiff did not respond to Intervenors' factual showing[7] but asserts that there is a dispute of fact calling for trial, as though this were a Rule 12(b)(6) motion, and invokes case law interpreting the Abandoned Shipwreck Act (ASA), 43 USC 2101, et seq., that would require an initial showing of abandonment but is not relevant in the present circumstances.

III. **Case Law that Applies the ASA does not Shift the Burden to Intervenors or Require Intervenors to prove Abandonment to Avoid a Salvage Claim over a Vessel in Michigan Soil.**

---

[7] Mr. Bilicki purports to address the question of abandonment, which is critical for a claim where the defendant is not in the actual possession of the landowner, by declaring, apparently as an anthropologist, that "information readily accessible to the public" "makes it clear" that the Griffin was owned by France and on a military/exploration mission for the French Government. Nothing provided by Plaintiff to date does so.

The Quimby article supplied by Plaintiff (Docket 58) reviewed the available evidence and reported the hitherto unchallenged view that the ship sank while on the commercial mission of transporting LaSalles' furs to the Niagara River, consistent, perhaps, with his franchise (Bates No. 97-98). Intervenors provided the documented report of Dr. James Bruseth, who salvaged the LaBelle, which reviews the public information and shows the private ownership of the Griffin and the commercial character of its voyage, as contrasted with the military status of the LaBelle (Docket 33, attachment 3).

The ASA sought to protect shipwrecks in state waters from the blunt instrument of *in rem*, admiralty jurisdiction, which fosters return of ships and goods to commerce.[8] The act provides for state ownership of abandoned shipwrecks that are embedded in state lands or eligible for inclusion on the *National Register of Historic Places*, 43 USC 2105, and suspends admiralty jurisdiction over such abandoned vessels, 43 USC 2106. It affirms state responsibility to manage them. 43 USC 2101.[9]

In *California v Deep Sea Research*, 523 US 491, 118 S Ct 1464, 140 L Ed 2d 626 (1998), the State claimed lack of *in rem* jurisdiction by virtue of the 11th Amendment, but it stipulated that the vessel in question was upon, not in, its bottomlands, and so, not in its possession. 523 US at 497. On the other hand, the claimant actually possessed several recovered artifacts. *Id*, at 496. The Court decided only that where the State is not in possession of the *res*, an admiralty court may exercise *in rem* jurisdiction to determine whether a ship has been abandoned and belongs to the State under the ASA.

> Based on longstanding precedent respecting the federal courts' assumption of *in rem* admiralty jurisdiction over vessels that are not in the possession of a sovereign, we conclude that the Eleventh Amendment does not bar federal jurisdiction over the Brother Jonathan and, therefore, that the District Court may adjudicate DSR's and the State's claims to the shipwreck. We have no occasion in this case to consider any other circumstances under which an *in rem* admiralty action might proceed in federal court despite the Eleventh Amendment. 523 US at 507-508.

---

[8] The impropriety of fostering rescue in the case of historic shipwrecks is reflected in Mr. Libert's statement: "[to] artificially segregate portions of a shipwreck or to fracture the unity of a shipwreck would result in the irreparable loss of information." (Docket 93, ¶ 18).
[9] The Guidelines called for by 43. USC 2104 do not describe state obligations.
   *R.M.S. Titanic v Wrecked and Abandoned Vessel*, 435 F3d 521, (4th Cir, 2006) describes a court-appointed trustee who had salvaged portions of a wreck in international waters and was the salvor in possession in order to provide for recovery. Michigan has long been the trustee of its lands and their contents, and Congress has made the states trustees over abandoned shipwrecks in their bottomlands in any event.

In *Fairport International Exploration, Inc v The Shipwrecked Vessel, known as the Captain Lawrence*, 245 F3d 857 (6th Cir 2001), the ship was embedded in state lands, but the state could not claim ownership on that basis because the claimant stood in the shoes of the original owners. The state had to show abandonment to avoid *in rem* jurisdiction. 245 F3d at 860. In *People v Zych*, 186 Ill2d 267, 280; 710 NE2d 820 (1999), the state court resolved the dispute between the potential owners, deciding for the successor of the original owner.

The ASA does not supersede prior law so as to require a showing of abandonment in every case. It did not affect "any right reserved by . . . any state" under provisions of the Submerged Lands Act, 43 USC 1301, *et seq*. Michigan received all of its submerged lands at time of statehood, so that the Submerged Lands Act merely confirmed title in state bottomlands, 43 USC 1311, by which Michigan has possession and title, superior to that of all but the original owner, of all artifacts embedded in those lands. *See, Subaqueous Exploration & Archaeology, Ltd. v Unidentified, Wrecked and Abandoned Vessel*, 577 F. Supp 597, 608 (D Md, 1983).

The law of finds recognizes that where the property is at least partially embedded in the soil, it belongs to the owner of the soil. *Klein v Unidentified, Wrecked and Abandoned Sailing Vessel*, 758 F2d 1511, 1514 (11th Cir, 1985). According to *Chance v. Certain Artifacts Found & Salvaged from The Nashville*, 606 F. Supp. 801, 806 (D. Ga. 1984), quoting *Ferguson v Ray*, 44 Or 557, 77 P 600 (1904), ownership of finds embedded in the soil of another vests in the owner of the land, subject only to the claim of the original owner.

> The *Ferguson* court noted that, "the possession of the land carries with it in general, by our law, possession of everything which is attached to or under that land, and in absence of better title elsewhere, the right to possess it also." (Emphasis added) [77 P. at 603.](77 P. at 603.)

Artifacts resting in "loose surface soil" may satisfy the embeddedness requirement and vest title in the landowner in possession. *Chance*, 606 F Supp at 806.

Under the common law test formulated in *Chance*, title to the find resides in the state of Michigan, superior to the title of all but the original owner.

> [P]roperty need not be totally buried to satisfy the embeddedness requirement. What is affixed to the land belongs to the owner of that land. The *Ferguson* case in particular suggests that where a portion of the find is firmly affixed to the land, then even though other portions of it lie in loose surface soil, title to the entire find nevertheless rests with the land owner. In the instant case, while testimony concerning the amount of sand coverage is important, perhaps the degree of embeddedness is best illuminated by the fact that THE NASHVILLE has remained in its current location for over 120 years. Throughout that period it has held its ground despite strong tidal currents. Violent storms which have swept across the river in the past century have failed to wrest the vessel from the sand that firmly grasps its hull. Not even dynamite operations conducted by the state in the 1960's were successful in dislodging the sunken vessel. n1 While the evidence may be unclear as to whether the hull is exposed twelve feet in one area, or only one foot in another, the evidence does show that the vessel is firmly attached to the river bottom.

The policy is necessary to prevent ongoing trespass and reward for trespass. *Chance*, 606 F Supp at 807.

To its credit, Plaintiff does not attempt to challenge the obvious fact that the object in the photo attached to Mr. Lusardi's Affidavit (Docket No. 15), which Plaintiff claims to be a part of the Griffin, is affixed to the bottom and embedded in the soil. Mr. Bilicki's affidavit supports Mr. Lusardi by asserting that the structure protruding from the bottomland remains in place, where it can be revisited and examined. (Docket 93, Bilicki, ¶ 25). Mr. Libert surmises that the structure is located where the Griffon sank over 325 years ago, and it persists there despite "storms over the centuries and high rates of dispersion," (Docket 93, Libert, ¶ 16) among scatter fields that can be detected by sonar and magnetometer (Libert, id., ¶). The latter device can be used to detect ferrous objects below the surface. (Lusardi, Attachment B, ¶ 14). Plaintiff does not report discovery of the canons and the anchors the Griffon was carrying on its last voyage, (id), but its report supports the claim that the defendant cannot be seen by sonar alone and is

8

embedded in the soil. Despite over a week of sonar investigation, Michigan has not identified anything on the bottom that appears to be part of a 17th century vessel. (Lusdari, Id., ¶ 8, 16). Nothing submitted by Plaintiff rebuts the evidence of embeddedness under the common law.

No owner is before the court. Nothing in the record shows that France seeks access to Michigan bottomlands to investigate any shipwreck in Michigan waters or that it has designated Plaintiff as its agent.

## IV.    Plaintiff does not Show Legal Salvage.

Plaintiff needed to present facts showing legal salvage. *Lathrop v The Unidentified, Wrecked and Abandoned Vessel*, 817 F Supp 953, 963 (MD Fla, 1993). Michigan prohibits dredging, that is, any removal of soils or other materials from its bottomlands, except as authorized by DEQ permits or the legislature allows. MCL 324.32512. The meaning of "Dredge" as used by the legislature extends to "to come up with; unearth," American Heritage Dictionary of the English Language, (4th Ed 2000), a meaning reflected in the administrative rules that implement the statute.[10] Michigan also prohibits removal of objects of antiquity from lands without permission of the owner, MCL 324.76106, and recovery, alteration or destruction of abandoned property in or on bottomlands without a permit. MCL 324.76107.

Michigan can control the manner in which a res is salved without interfering with admiralty law. *Jupiter Wreck, Inc v The Unidentified, Wrecked and Abandoned Sailing Vessel*, 691 F Supp 1377, 1393 (SD Fl, 1988); *People v Massey*, 137 Mich App 480, 486-487; 358 NW2d 615 (1984). According to plaintiff, no such regulations have yet limited its Phase One archaeological investigation. Perhaps. See, Attachment B, ¶ 11. Phase Two incursions will

---

[10] h) "Dredging" means removal of any mineral, organic, or other material from or within the bottomland or waters of the Great Lakes by any means. R 322.1001(h).

involve "limited excavations around anomalies" (Bilicki, ¶ 21)(Libert ¶ 9) and use of "life bags" (Bilicki, ¶ 32), and require permits. There can be no recovery without removal.[11]

Michigan does not advocate the removal of embedded historic vessels by mechanical or any other means, particularly by private entrepreneurs operating without permits. "Slash and grab underwater archaeology" is the likely consequence not of the now-augmented criminal provisions by which the state protects its archaeological sites, MCL 342.76107(4); MCL 324.32510, but of private entrepreneurs who undertake unregulated and unsupervised exploration and trumpet the unconfirmed discovery of historical treasures to support private fund raising. (See Lusardi, ¶¶ 11, 12).

**V.     Conclusion**

The evidence before the court does not show legal salvage upon which to exercise in rem jurisdiction over a salvage claim or to protect a salvor in possession, and Plaintiff cannot claim an abandoned vessel to invoke the law of finds without establishing Michigan ownership of the alleged vessel. The alleged Defendant is in Michigan soil so that Michigan has title superior to that of all but the original owner. But, this is not a dispute between owner-claimants.

Respectfully submitted,

Michael A. Cox
Attorney General

/s/

Dated: July 10, 2006

James R. Piggush (P29221)
Assistant Attorney General
Environment, Natural Resources
  and Agriculture Division
P.O. Box 30755
Lansing, MI  48909
517/373-7540

s:nrd/ac/cases/open/great lakes expl 04ag/intervenors reply

---

[11] It is unlikely that Maryland issues permits to persons who refuse to submit permit applications or consider as partners with the state persons who set out to act without regard for State Law.