IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
Northern Division

GREAT LAKES EXPLORATION
GROUP LLC

               Plaintiff

v.

The Unidentified, Wrecked and (For
Salvage-Right Purposes), Abandoned
Sailing Vessel, her tackle, apparel,
appurtenances, cargo, etc. located
within a circle having a radius of 3.5
statute miles, whose center point is at
coordinates 45° 32.8' North latitude and
86° 41.5' West longitude,

               *In Rem*

               Defendant.

and

MICHIGAN DEPARTMENT OF HISTORY,
ARTS AND LIBRARIES AND MICHIGAN
DEPARTMENT OF ENVIRONMENTAL
QUALITY,

               Intervenors

Civil Action No. 1:04-CV-375

HON. ROBERT HOLMES BELL

---

### AFFIDAVIT OF WAYNE R. LUSARDI IN
### SUPPORT OF MOTION TO DISMISS

STATE OF MICHIGAN     )
                                  )
COUNTY OF ALPENA     )

     Now comes Wayne R. Lusardi, and, being first duly sworn, states as follows:

     1.    I am employed by the Michigan Department of History, Arts and Libraries as State Maritime Archaeologist stationed at Thunder Bay National Marine Sanctuary in Alpena. I

1

received a MA degree in Maritime History and Nautical Archaeology from East Carolina University in 1998 and a BS in Anthropology (Archaeology) from Illinois State University in 1990. I have previously submitted affidavits in this matter and submit the present affidavit based upon personal knowledge and professional opinion.

2. Five years after the initial declaration of having discovered the *Griffin*, Great Lakes Exploration reports that it has finally conducted a comprehensive remote sensing survey of the area, and its only reports of that survey appear in affidavits of Mr. Bilicki and Mr. Libert in response to the States' Renewed Motion to Dismiss.

3. Great Lakes Exploration has never provided Michigan with the exact latitude and longitude of any wreck and has only disclosed information about a single object. Michigan, consequently, can only investigate the archaeological sites if it can locate that object or identify patterns of objects that Great Lakes Exploration might consider remnants of a 17th-Century vessel. The original, single set of coordinates provided a search area of 38.48 square miles. Three sets of additional coordinates reduced the search area to 2.36 square miles but no specific targets were identified. If exact coordinates were provided to begin with, investigation could have commenced without extensive use of remote sensing instruments needed to locate the reported archaeological sites.

4. Since September 2005, as equipment and personnel have been available and weather has allowed, other representatives from the State of Michigan and I have conducted survey operations of the areas identified in the Second Amended Complaint. These operations and have not discovered anything that supports Great Lakes Exploration Group's claims.

5. Preliminary survey operations during September and October, 2005, averaging 12 hours each day, in the circle defined by a center point with the coordinates N45°34'48", W86°43'05" located several acoustic anomalies, none of which were at or immediately near the provided coordinates. Approximately 40 percent of the circle was surveyed in water ranging from 40-80 feet in depth. One promising target was dived on and appeared to be a wooden spar probably originating from a 19th-century sailing craft. Bottom topography consisted primarily of boulder fields, hard sediment, and sand beds. Not all of the targets in this circle were dived due to time and weather constraints.

6. Similarly, a survey was conducted in the circle with center coordinates located at N45°32'23", W86°44'12." Approximately 60 percent of this circle has been covered and four acoustic anomalies detected. This circle is very near the wreck site of the 19th-century schooner *E.R. Williams* and averages 80-100 feet in depth. One target was dived and proved to be steel cable, probably associated with wire rigging common on late 19th-century sailing craft. The cable was embedded in the lake bottom and only partially exposed. Bottom conditions in this area consisted of soft silt nearly a half foot in depth that, when disturbed, reduced visibility to nearly zero. Objects located on the lake bottom in this type of sediment are almost always at least partially embedded.

7. The circle with center located at N45°32'24", W86°40'00" was not surveyed in 2005 because of time and weather constraints, but was partially surveyed using side scan sonar in June 2006. Additional acoustic anomalies were identified but have not yet been dived. This circle includes known wreckage from the *Captain Lawrence* that has been investigated by State Archaeologist Dr. John R. Halsey.

8. The majority of artifacts I have viewed in the search areas around Poverty Island are clearly later 19th-century or early 20th-century materials. None of the objects I viewed within the search areas could be identified as having originated from the *Griffin*. Given the fact that at least two known shipwrecks occur within the search areas (the *E.R. Williams* and *Captain Lawrence*), it was not surprising to find wreckage and cultural materials on the lake bottom.

9. On the Great Lakes, wooden treenails were used in construction of both sailing and steam craft from the 19th and early 20th centuries. Treenails can also be observed in cribbing, docks, and terrestrial wooden structures of the same time period. Furthermore, throughout history ship builders made great attempts to avoid scarfing or joining multiple timbers for a relatively small, though decidedly strong element such as a bowsprit, yard, boom, or mast, particularly on small vernacular sailing craft.

10. Bilicki ¶27 supports limited test excavations to determine if additional artifacts and features are buried nearby and to evaluate what artifacts to remove and bring to the surface. Bilicki ¶32 also supports the use of lift bags, a mechanical aid, to bring items to the surface. Use of a diver's buoyancy compensator device and lowering of lines from a boat to assist artifact recovery can also be considered mechanical aids for artifact recovery. I do not necessarily encourage use of any mechanical devices in the excavation of embedded shipwreck artifacts, and I have not advocated removal of anything discovered by Great Lakes Exploration, since I have not knowingly seen anything Great Lakes Exploration thinks is part of the *Griffin* to be able to evaluate whether to proceed to remove the artifacts from the lakebed.

11. A video at "Video clips" of "The Expedition" on Great Lakes Exploration's website, www.LaSalle-girffon.org, discloses a diver vigorously rubbing a supposed *Griffin* timber to remove zebra mussels, a procedure that is very abrasive and physically degrades the wood's surface and may well damage the artifact, only for it to be re-colonized by the exotic mussels. Illegally removing multiple wood fragments (without a state permit) from the supposed *Griffin* timber may well have damaged the artifact. Imprudent diver disturbance will likely contribute to the accelerated deterioration of the historic artifact, whether or not it originated from a French colonial vessel.

12. I do not encourage recovery of artifacts from an unidentified shipwreck site without a research design and a concise plan for conservation and long-term curation of recovered materials. The State of Michigan has repeatedly requested a conservation, storage, and security plan from Great Lakes Exploration that has yet to materialize. Great Lakes Exploration has not indicated who or what institution will conserve recovered artifacts. The Chicago Field Museum apparently never has been officially involved in the project. And, more significantly, based on present knowledge: if or when the artifacts are determined not to be from *Griffin*, who will be responsible for their conservation and curation? Great Lakes Exploration has not indicated that it is ready, willing, or able to deal with waterlogged materials recovered from Lake Michigan, including those from a non-*Griffin* site. Great Lakes Exploration has not indicated how much of the site its divers will disturb before they are ready to abandon fund-raising and public relations activities based on the representation that they are investigating the *Griffin* and acknowledge that they have not found the *Griffin*

5

13. Bilicki ¶33 is incorrect in reporting my unwillingness to participate in the scientific investigation of the alleged shipwreck site. In fact, I have been more than willing to visit the site with Libert for nearly 3½ years, yet he never followed up on proposals to bring me to the reported shipwreck and Great Lakes Exploration has recently imposed unacceptable conditions on any joint investigation. Libert first contacted me on January 10, 2003, when he informed me that he had discovered the *Griffin*. I followed up, and we had telephone conversations regarding his discovery claims again on March 27, 2003 and April 22, 2003, and discussed the possibility of me visiting the site some time during summer 2003. It was over a year before Libert followed up on that conversation on June 14, 2004. On June 22, 2004 we spoke a final time about me visiting the site, and Libert then emailed me several images of his alleged discovery. By then, suit had been filed and I have not heard from him directly since. Furthermore, Libert was never forthcoming with information, evidence, or exact coordinates of supposed discovered artifacts.

14. Bilicki ¶22 reports that Geomar conducted a sub-bottom survey in 2006 and he describes the magnetometer used. This instrument is commonly used to detect the presence of embedded, ferrous artifacts. As a result of this study, he reports small magnetic anomalies and he proposes test excavations of the finds, but he does not disclose any findings that suggest that the survey located the large anchors, fasteners, munitions and cannon that were reportedly on the *Griffin* during its last voyage.

15. Great Lakes Exploration and Bilicki ¶31 report observations of scattered materials, many of which they admit they have not yet observed visually. Single artifacts, or even small groups of artifacts, seldom present concrete evidence for the dating and identification

of a shipwreck. Most artifact assemblages will only present circumstantial evidence for the researcher to draw tentative conclusions. Artifacts seldom provide conclusive evidence for a shipwrecks' identification while remaining in situ on the lake bottom, covered in sediments, zebra mussels, biologic growth, etc.

16. Nothing yet provided by Great Lakes Exploration indicates that it has any concrete evidence whatsoever to support the claim of having discovered the *Griffin* in northern Lake Michigan.

FURTHER AFFIANT SAYETH NOT.

Wayne R. Lusardi

Subscribed and sworn to before me
this __6th__ day of __July__, 2006

__Linda L. LaFleche__
__Michigan__, Notary Public
__Montmorency__, County, Michigan
My Commission Expires: __04-07-2012__
Acting in Alpena County