Great Lakes Exploration Group LLC v. Unidentified Wrecked and (For Sa...bandoned Sailing Vessel, The    Doc. 10

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
Northern Division

| | |
|---|---|
| GREAT LAKES EXPLORATION GROUP LLC<br>    Plaintiff,<br>v.<br><br>The Unidentified, Wrecked and (For Salvage-Right Purposes), Abandoned Sailing Vessel, etc.<br>    Defendant, et al. | Civil Action No. 1:04-CV-375<br><br>HON. ROBERT HOLMES BELL |

## PLAINTIFF GREAT LAKES EXPLORATION'S BRIEF IN RESPONSE TO COURT'S ORDER TO SHOW CAUSE

Plaintiff Great Lakes Exploration, LLC, by counsel, respectfully responds to the Court's Order to Show Cause dated July 20, 2006 as follows:

1. Plaintiff Great Lakes Exploration has been, and remains, in full compliance with all orders of the Court.

2. By Order dated May 10, 2005, the Court denied Intervenors' Motion to Dismiss the First Amended Complaint, conditioned on Plaintiff providing "the precise location of Defendant." *See* Order, 5-10-05 at 2.

3. As discussed below, the Court did not at that time, and has never, ordered Plaintiff to disclose the pinpoint location of various artifacts that may comprise the Defendant shipwreck (such as the location of the large wooden beam mentioned in the Court's Show Cause Order, *see* Order, 7-20-06 at 3 n.1).

4. On September 21, 2005, in its Second Amended Complaint, Plaintiff disclosed the precise location of the Defendant shipwreck to the best of Plaintiff's ability. See Pl 2nd Am Cmpl ¶2.

Dockets.Justia.com

5. The Court overruled Intervernors' objection that Plaintiff's Second Amended Complaint should not be filed because it had failed to disclose the precise location of the shipwreck. *See* Order, 10-20-05. The Court's Order filing the Second Amended Complaint, again, did not require the disclosure of the precise location of specific artifacts associated with the shipwreck, such as the large timber mentioned in the Court's July 20, 2006 Order. Nor did the Court's October 20, 2005 Order require or direct Plaintiff to take any further action.

6. As Great Lakes Exploration noted in support of its Motion for Leave to file its Second Amended Complaint, Plaintiff is unable to provide a more precise location because the Defendant shipwreck does not rest at a single geographical point:

> Following the Court's rulings regarding the release of information regarding the nature and location of the Defendant shipwreck to the State of Michigan, Great Lakes Exploration diligently endeavored to express the location of the Defendant in the form of locational coordinates with as much precision as reasonably permitted by the circumstances. This has not been easy because of the nature and circumstances of the Defendant, which consists of the Defendant shipwreck, her hull, tackle, appliances, apparel, appurtenances, cargo, equipment, etc., which is believed to consist of items of historical interest, including contiguous and non-contiguous scatter, debris and other related artifacts and matter that may be useful in understanding the shipwreck and the pertinent history. Among the factors making precision or exactitude difficult are the nature and condition of the Defendant believed to exist at the time of the sinking, the nature of the construction of the Defendant, the nature of the cargo, the historical record pertaining to the Defendant and the sinking, the date of sinking, the wind, wave, current, biological, and other conditions at the location of the sinking, including the high energy and dispersal factors, storms over the centuries and high rates of dispersion, and the other facts and circumstances affecting the Defendant. It is important to treat all artifacts and information associated with the shipwreck in a unified fashion in order to permit the best scientific analysis and understanding of the shipwreck, and, for this reason, it is important to include debris

fields, artifacts, information and items associated with the Defendant shipwreck.

Affidavit of Steven Libert dated September 27, 2005, pp.1-3. *See also* Declaration of Archaeologist Steven R. Bilicki dated 2006 ¶¶23-24; Supplementary Affidavit of Steve Libert dated August 2, 2006, ¶2; Affidavit of Dr. Scott Demel; Declaration of Steven J. Libert dated January 21, 2005 at 4.

7. This is because the Defendant shipwreck consists of a number of different parts in different locations, including a broad assortment of scatter and debris. *See* Declaration of Archaeologist Steven R. Bilicki dated June 22, 2006 ¶13; Affidavit of Steven Libert dated September 27, 2005, pp.1-3; Supplementary Affidavit of Steve Libert dated August 2, 2006, ¶2; Declaration of Steven J. Libert dated January 21, 2005 at 4.

8. The unrebutted record amply demonstrates that the artifacts associated with the shipwreck are not limited to the outdated photograph mentioned in the Affidavit of Wayne Lusardi (depicting what Intervenors call a "barn timber"), and that numerous items and anomalies have been identified over a broad area. *See, e.g.* Declaration of Steven R. Bilicki dated June 22, 2006 ¶¶23-24.

9. Given this fact, the location of the Defendant shipwreck has been identified as precisely as the circumstances permit.

10. Still, as noted in the Court's July 20, 2006 Show Cause Order, in an article dated July 17, 2006, the *Detroit Free Press* purported to quote Mr. Libert as stating that "We can dive on it (Defendant), that doesn't require permits, Libert said. But I'm not going to let the state know where the location is." *See* Order, July 20, 2006, at 3.

11. The newspaper article quoted in the Court's Show Cause Order does not accurately set forth the nature of Mr. Libert's statements to the press. *See* Supplementary Affidavit of Steve Libert dated August 2, 2006, ¶¶ 4-7. (A copy of Mr. Libert's Supplementary Affidavit, setting forth the circumstances and context of the remark partially reported in the newspaper article, is attached as Exhibit 1).

12. As the Court's Show Cause Order notes, *Fathom Exploration, LLC v. The Unidentified Shipwrecked Vessel or Vessels*, 352 F. Supp.2d 1218, 2005 LEXIS 1069 (S.D. Ala.) is instructive as to the procedure for adjudicating claims to an historic shipwreck. *See* Show Cause Order, 7-20-06 at 3 n. 1.

13. In *Fathom Exploration*, the U.S. District Court *promptly took protective jurisdiction over the Defendant shipwreck by ordering its arrest. See Fathom Exploration*, 352 F. Supp.2d at 1220 ("On October 27, 2004, the Court signed a Warrant of Arrest (doc.4) for the Shipwreck and appointed Fathom as substitute custodian and special process server.") The Court thus acted to become seised of protective jurisdiction over the Defendant shipwreck *prior to ordering the disclosure of any detailed information* regarding the shipwreck.

14. By arresting the shipwreck at the outset of the case, the *Fathom Exploration* Court (1) placed the Defendant shipwreck under Federal Jurisdiction, thereby protecting it from pillage and destruction by third party interlopers; and (2) preempted the State of Alabama from misappropriating Plaintiff's information about the location of artifacts (e.g. by sending a diver to those locations, and thereby claiming that the State had "actual" possession of the shipwreck—thereby purporting to divest

Federal Admiralty Jurisdiction pursuant to the Eleventh Amendment, *see California v. Deep Sea Research, Inc.,* 523 U.S. 491 (1998)).

15. The Court's procedure in *Fathom Exploration* in promptly taking protective jurisdiction and ordering the arrest of the Defendant was consistent with the procedures followed by virtually every District Court that has previously adjudicated claims to historic shipwrecks. *See, e.g. R.M.S. Titanic, Inc. v. The Wrecked and Abandoned R.M.S. TITANIC,* 286 F.3d. 194, 206 (4th Cir. 2002); *R.M.S. Titanic, Inc. v. The Wrecked and Abandoned R.M.S. TITANIC,* 171 F.3d. 943, 964 (4th Cir. 1999), *cert. denied,* 528 U.S. 825 (1999).

16. In contrast to the *Fathom Exploration* case, in the present case, the Court has not yet taken protective jurisdiction over the shipwreck. As of the date of this Response, unlike the *Fathom Exploration* Court, the Court here has not yet issued a warrant of arrest. Nor has the Court here appointed the plaintiff as substitute custodian for the Defendant.

17. Therefore, unlike the procedure followed in *Fathom Exploration*, any order in the present case that would have required disclosure of the precise location of specific artifacts would have been premature, with the result of substantial, irreparable harm not only to Great Lakes Exploration but also to the public at large. Wisely, the Court did not make such an order.

18. The Court's exposition in *Fathom Exploration* is helpful to an understanding of the irreparable harms that could result from failing to follow proper sequencing, *i.e.* from requiring the release of the precise location of artifacts on the shipwreck prior to ordering the arrest of the defendant:

5

> Were the law so to provide, a salvor unable to identify a sunken vessel he discovered would have no recourse through admiralty law to prevent throngs of competing salvors and claimants from descending on the site during the salvage process. In that event, a reasonably prudent salvor would be placed in the untenable predicament of (i) proceeding with salvage operations surreptiously in hopes that other salvors or claimants would not notice, (ii) making reckless, ill-formed guesses as to the identity of the vessel in order to meet such an identification prerequisite to admiralty protection, or (iii) avoiding salvage operations of unidentified vessels altogether because of the substantial risk that the salvor's efforts might be frustrated by opportunistic interlopers whom that salvor would be legally powerless to fend off. Indeed, it is easy to envisage a feeding frenzy of competing salvors and claimants swarming around a shipwreck site, each working at cross- purposes to the others to seize artifacts from the site as quickly as possible, creating a chaotic, disorganized atmosphere in which important artifacts may be damaged and significant archeological or historical information may be lost forever. Admiralty law permits a salvor to petition a federal court for protection in its salvage operations precisely to avoid this nightmare scenario and to reward salvors' beneficial recovery activities. The Court fears that the net result of the approach urged by the State would be to chill salvage operations of historical shipwrecks, inasmuch as no rational salvor would want to search for and rescue newly discovered shipwrecks under such conditions.

352 F. Supp.2d at 1224-25.

19. Perhaps it is less than surprising that it has been Intervenors' consistent position-- notwithstanding any protective orders entered by the Court-- that they are entitled to utilize any information disclosed by Great Lakes Exploration in this proceeding to take "actual possession" over the Defendant shipwreck, and thereby preempt the Court's subject matter jurisdiction. Supplementary Affidavit of Steve Libert dated August 2, 2006, ¶8. It has also been Intervenors' consistent position information that they receive from Great Lakes Exploration in this proceeding would become information belonging to the State, subject to disclosure under the Michigan Public Records Act. *Id.*

20. Thus, had the Court in this case ordered the disclosure of the precise location of specific artifacts associated with the Defendant shipwreck, it would have exposed the shipwreck not only to pillage and destruction by third party interlopers and relic hunters, but also to a claim by the State of Michigan that it has taken actual possession of the shipwreck. Wisely, the Court did not do so.

21. In addition, the Order issued by the District Court in *Fathom Exploration* is materially different from that in this case. In contrast to the case before the Court, the plaintiff in *Fathom Exploration* did not identify the name of the defendant vessel. As a result, potential claimants in that case were unable to evaluate their potential ownership interests in the vessel, its hull or its cargo. Under these circumstances, the *Fathom Exploration* Court expressly ordered that the plaintiff set forth "*such additional reasonable details as it may have* concerning the *identity, nature, precise location and embedded status* of the Shipwreck." *Id.* at 1231.

22. Given that the Court in this case has not yet taken protective jurisdiction of the Defendant Shipwreck, it has properly not ordered Plaintiff to disclose the precise location of artifacts believed to be associated with the shipwreck. The Court's Order dated May 10, 2005 did not call for disclosure of the precise location of artifacts—and properly so. *See* Order, 5-10-05, at 2. The Court presumably recognized that a requirement of the disclosure of the precise location of artifacts prior to the arrest of the Defendant shipwreck could, as a practicable matter, amount to (1) the destruction of the very Defendant that is the subject of this proceeding, and (2) an award of summary judgment to the Intervernors, who

could then simply send divers to the site of the artifacts and claim that they had taken "actual possession" of the shipwreck.

23. The Court again presumably recognized these considerations in its October 20, 2005 Order, in filing the Second Amended Complaint without requiring or directing Plaintiff to take any further action. *See* Order, 10-20-05, at 1-2.

24. Based on the discussion on the record among counsel and the Court at the hearing on May 10, 2005, as well as the foregoing pragmatic considerations, it has thus been Plaintiff's understanding that in referring to disclosure of the "precise location" of the Defendant, the Court was not referring to a description of the precise location of specific artifacts associated with the shipwreck (which are believed to be numerous and scattered broadly), but instead was referring to the geographic areas that would encompass all of the scatter and debris believed to be associated with the Defendant shipwreck. See Tr. Hearing, 5-10-05 (precise location of Defendant shipwreck to be given within an approximately one mile radius).

25. If Great Lakes Exploration has not correctly understood the Court's intent, it sincerely apologizes to the Court. Should the Court proceed as the *Fathom Exploration* Court, i.e. taking protective jurisdiction over the Defendant Shipwreck by arresting the Defendant and thereafter ordering the disclosure of the precise location of artifacts on the seafloor, Plaintiff will, of course, comply promptly.

Accordingly, Plaintiff files its foregoing response in compliance with the Court's July 20, 2006 Order.

Respectfully submitted,

GREAT LAKES EXPLORATION
*/s/ Richard T. Robol*
Richard T. Robol – 0064345
Attorney for Plaintiff
ROBOL LAW OFFICE, LPA
555 City Park Avenue
Columbus, Ohio 43215
Telephone: (614) 737-3739
Facsimile: (614) 737-3756
rrobol@robollaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of August, 2006, a copy of the foregoing was served by electronic mail via the Court's ECF system upon all counsel of record.

*/s/ Richard T. Robol*
Of Counsel