UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREAT LAKES EXPLORATION
GROUP LLC,

      Plaintiff,

v.

THE UNIDENTIFIED, WRECKED
AND (FOR SALVAGE-RIGHT PURPOSES),
ABANDONED SAILING VESSEL, ETC.,

      Defendant,

v.

STATE OF MICHIGAN DEPARTMENT
OF HISTORY, ARTS, and LIBRARIES, et. al.

      Intervenors.
      _____/

File No. 1:04-CV-375

HON. ROBERT HOLMES BELL

# **O P I N I O N**

On July 20, 2006, the Court issued a show cause order directing Plaintiff to demonstrate why the Complaint should not be dismissed for failure to comply with the Court's order directing Plaintiff to provide the precise location of Defendant to the State of Michigan. July 20, 2006 Order to Show Cause (Docket #98). At the Court's direction, Plaintiff and the State have each filed a brief addressing this issue. The Court has reviewed the parties' briefs and concludes that Plaintiff has failed to demonstrate good cause for its failure to comply with the Court's order. Although repeatedly ordered to do so, Plaintiff has

failed to provide the precise location of Defendant to the State. Accordingly, Plaintiff will have 10 days within which to provide the State with the precise location of Defendant. If Plaintiff fails to comply, an order will be entered dismissing the Complaint without prejudice.

I.

On May 10, 2005, following a hearing in which the Court heard oral argument on the State's motion to dismiss and motion for a more definite statement, the Court entered an order denying the motion for a more definite statement. May 10, 2005 Order (Docket #39).[1] The Court clearly explained, "[t]his denial is predicated upon Plaintiff's compliance with Intervenors' request for documents and exhibits and the *precise location of Defendant*." (emphasis added).[2] In order to speed the disclosure of the precise location of Defendant while maintaining strict confidentiality, the Court entered a protective order requiring that all documents containing the precise location of Defendant be filed under seal and maintained in confidence by the parties. July 13, 2005 Order Concerning Documents Filed Under Seal (Docket #44). Thereafter, the Court denied Plaintiff's motion to alter or amend the July 13, 2005 protective order. In denying the motion to amend the protective order, the Court again reiterated that Plaintiff was to provide the State with Defendant's precise

---

[1] The other pending motions were held in abeyance pending Plaintiff's compliance with the required disclosures and the filing of the State's response after receiving discovery materials and Defendant's location.

[2] Incidentally, the order also indicated that it was "anticipated that the Defendant's precise location will be filed under seal with this Court." Plaintiff has not followed through with this rather elementary step in the proceeding.

2

location, "[t]he Court reemphasizes that [the State] must be given the precise location of Defendant." August 19, 2005 Mem. Op. & Order at 2-3.

Following the denial of the motion to alter the protective order, the Court allowed Plaintiff to file a second amended complaint. The Second Amended Complaint indicated that the previously unidentified Defendant was believed to be "the Griffin," the French explorer La Salle's ship, considered to be the first European vessel to navigate the Great Lakes. The Complaint also identified three circles encompassing approximately 2.3 square miles in which Defendant was purportedly located. Thereafter, although the parties engaged in discussions regarding settlement and a mutual investigation of Defendant, Plaintiff failed to disclose the Defendant's precise location. Accordingly, on July 20, 2006, the Court entered an order to show cause why the Complaint should not be dismissed for failure to comply with the Court's order directing Plaintiff to provide the precise location of Defendant to the State.

II.

The Court's local rules provide that "[a] judicial officer may issue an order to show cause why a case should not be dismissed for lack of prosecution or for failure to comply with these rules, the Federal Rules of Civil Procedure, or any court order." W.D. MICH. LcivR 41.1. If good cause is not shown, the Court may order dismissal of the case with or without prejudice. *Id*.

There are a few federal and state laws that are relevant to the Court's analysis of this issue. Under federal law, title to lands beneath navigable waters within a state is held by that state. Specifically, the Submerged Lands Act, 43 U.S.C. § 1311, provides that:

> (1) title to and ownership of the lands beneath navigable waters within the boundaries of the respective States, and the natural resources within such lands and waters, and (2) the right and power to manage, administer, lease, develop, and use the said lands and natural resources all in accordance with applicable State law be . . . subject to the provisions hereof, recognized, confirmed, established, and vested in and assigned to the respective States . . . .

43 U.S.C. § 1311(a). Thus, in this case, the State holds title to the bottomlands of Lake Michigan identified in the Second Amended Complaint. Because this case appears to involve a shipwreck, the Abandoned Shipwreck Act of 1987 ("ASA"), 43 U.S.C. §§ 2101-2106, is also relevant. Indeed, any claim that the State may assert in this matter is derived from the ASA. The ASA provides in pertinent part:

> (a) United States title
> The United States asserts title to any abandoned shipwreck that is –
> (1) embedded in submerged lands of a State;
> (2) embedded in coralline formations protected by a State on submerged lands of a State; or
> (3) on submerged lands of a State and is included in or determined eligible for inclusion in the National Register.
> . . . .
> (c) Transfer of title to States
> The title of the United States to any abandoned shipwreck asserted under subsection (a) of this section is transferred to the State in or on whose submerged lands the shipwreck is located.

43 U.S.C. § 2105. The ASA explicitly rejects the application of the maritime laws of salvage and finds. *Fairport Int'l Exploration Inc. v. The Shipwrecked Vessel known as the Captain*

*Lawrence*, 177 F.3d 491, 498 (6th Cir. 1999) (quoting 43 U.S.C. § 2106(a)). Consequently, "[i]f a diver now discovers a long-lost ship embedded in the submerged lands of a State, a finding of abandonment leaves the diver with neither title nor a salvage award." *Id*. Additionally, under state law, the State "reserves to itself a possessory right or title superior to that of a finder to abandoned property of historical or recreational value found on the state owned bottomlands of the Great Lakes." MICH. COMP. LAWS § 324.76102(2). Based upon these provisions, the State has a clear interest in exploratory activities taking place on the state-owned bottomlands of Lake Michigan, particularly where the target of the exploration is believed to be a sailing vessel of significant historical value. Moreover, based upon these statutory provisions, the State may have a superior claim of ownership to Defendant. In order to determine any rights it may have or wish to assert in this matter, the State must be given basic information, such as the precise location of Defendant, so that it can investigate its claim under the ASA and other law to determine such basic issues as whether Defendant is a vessel, whether, assuming Defendant is a vessel, it has historical value, and whether it is embedded. Without viewing Defendant in its present condition in its precise location, the State can only speculate as to its rights. Accordingly, it is absolutely necessary that the State be given the precise location of Defendant.

The Court originally directed Plaintiff to disclose the precise location of Defendant over one year ago on May 10, 2005. *See* May 10, 2005 Order. Almost one year ago to the day, the Court reiterated the need to disclose the precise location of Defendant to the State,

5

indicating that it would speed the investigation of Defendant and greatly assist the proceeding. August 19, 2005 Mem. Op. & Order at 2-3. Despite these clear directives, Plaintiff has yet to provide the State with the precise location of Defendant. Moreover, in response to the State's request to produce documents and exhibits, Plaintiff has repeatedly demonstrated its resolve not to disclose the precise location of Defendant. In response to the State's request, Plaintiff repeatedly indicated that it would only produce documents which "do not compromise the coordinates of the shipwreck." Pl.'s Res. to Intervenor's Request to Produce Nos. 1, 2, 4-8, 13, 14, 17-19, Exhibit 2, Intervenor's Res. Br. (Docket #41). This wilful refusal to disclose the location of the shipwreck is in direct contravention to the Court's order.[3]

Plaintiff maintains that it is in full compliance with the Court's order and has disclosed the precise location of Defendant to the State. Plaintiff relies on the identification of the three circles encompassing approximately 2.3 square miles set forth in the Second Amended Complaint. Plaintiff asserts that, in light of various factors including the nature and condition of Defendant, the passage of time, the changing weather and lake conditions, and

---

[3]In the Court's show cause order it referred to a statement in a newspaper article attributed to Plaintiff's agent, Stephen Libert, that Plaintiff would not let the State know the Defendant's location. Order to Show Cause at 3. Plaintiff contends that the full context of his statement was not contained in the article and that he was not referring to an unwillingness to disclose Defendant's precise location to the State. Libert Supp. Decl. at ¶¶ 4-5, 8-10 (Docket #100). Even assuming Libert's statement was taken out of context, Plaintiff's actions (and inaction) during the course of this litigation in consistently refusing to comply with the Court's order speak louder than Libert's words.

6

scientific and archaeological practices, the three areas identify the location of Defendant as precisely as possible. Further, Plaintiff argues that the Court has never required that the "pinpoint location" of the wreckage comprising Defendant be disclosed.

Plaintiff misinterprets the Court's order to disclose the precise location of Defendant. Plaintiff's position appears to be based on an artificial distinction between the "Defendant shipwreck" and "artifacts associated with the shipwreck." This is a distinction without a difference. Given the passage of time, the weather, lake conditions, and other factors Defendant is apparently comprised of various objects, including wooden beams, artifacts and other appurtenances strewn about the lake bottomland. In other words, the "artifacts associated with the shipwreck" are what make up the Defendant in this case. Thus, there is no difference between artifacts associated with the shipwreck or wreckage comprising the Defendant and reference to the Defendant itself. The objects the State needs to examine to determine its interest are the artifacts that Plaintiff has found on the bottomlands that lead it to believe that it has found Defendant. These items comprise the Defendant and it is the location of these items that must be given to the State.

Moreover, the Court rejects Plaintiff's attempt to distinguish between the "precise location" and "pinpoint location" of Defendant. This too is a distinction without a difference and appears to be nothing more than a semantic, overly technical attempt to avoid disclosure of the precise location of Defendant. This artificial distinction merits little discussion except to note that the common meaning of "pinpoint" is "to locate or aim with *great precision* or

7

accuracy" or "to fix, determine, or *identify with precision*," while "precise" is defined as "exactly or sharply defined or stated," or "minutely exact." WEBSTER'S NEW COLLEGIATE DICTIONARY (1979) (emphasis added). Consequently, there is no difference between reference to the pinpoint location of Defendant or the precise location of Defendant.

Plaintiff's reliance upon the three circles identified in the Second Amended Complaint is misplaced and is directly contrary to the Court's order. The purpose of providing the State with the precise location is to allow it to promptly investigate the Defendant and determine if it will assert a claim to Defendant. The three circles do not accomplish this purpose. In fact, it frustrates the purpose of disclosing the precise location and unnecessarily delays this proceeding. By its own admission, Plaintiff has indicated that the three circles do not identify the precise location of Defendant but are geographic areas within which Defendant is located.[4] At best, these areas provide a starting point for locating Defendant within the areas described. The identification of the three geographic areas does not allow the State to investigate the Defendant, rather, it forces the State into, for lack of a better term, a fishing expedition. This does not comply with the Court's order.

---

[4]Plaintiff's previous filings with the Court also indicate Plaintiff's recognition that it was to identify the precise location of the Defendant, not simply geographic areas in which Defendant might be located. *See* Pl.'s Br. Mot. to Alter/Amend Protective Order at 2 (Docket #45) ("As [of] the date of this Motion, the Court has not directed that Plaintiff disclose any information to Intervenors, *other than the precise location of the shipwreck and debris fields*.") (emphasis added).

Moreover, Plaintiff's response to the State's request for documents undermines Plaintiff's assertion that it has provided the precise location of Defendant to the best of its ability. The refusal to disclose the coordinates of the shipwreck clearly indicates that Plaintiff is not being as forthcoming as reasonably possible and is withholding certain reasonably available information regarding the precise location of the Defendant. Plaintiff surely knows the precise location of the objects it considers to be part of Defendant. It is the location of these objects that the State must be given in order to investigate its claim. While the Court recognizes that the passage of time, weather, and other conditions may have resulted in a broad area in which pieces of Defendant may be found, thus necessitating the identification of the three geographic areas in the Second Amended Complaint, disclosing the precise location of the artifacts comprising Defendant within those areas is a necessary step to proceeding with this litigation. This initial disclosure has little to do with preserving good scientific and archaeological practices and everything to do with allowing this litigation to proceed in due course. The disclosure of precise coordinates of the wreckage within the areas identified in the Complaint does not confine Plaintiff to those areas. The disclosure merely allows the State to quickly gather necessary information for determining its interest, if any, in Defendant.

If the present identification of the three geographic areas was sufficient, the State would be put to a costly and wasteful guessing game. While Plaintiff maintains that the shipwreck is not limited to the wooden beam identified in a photograph in the record, *see*

9

Exhibit A, Lusardi Aff. (Docket #10), it has not described or provided the precise location of any portion of Defendant, including the wooden beam. Thus, the State is currently required to blindly search the areas identified in the Complaint for a single wooden beam and other unidentified objects that could be considered wreckage from what is believed to be a 17th century sailing vessel. This is an incredible waste of time and resources.

In addition there are a number of possible scenarios which could result if the identification of the three geographic areas was sufficient. For example, the State could perform multiple investigations of the three areas and not find anything it considers to be part of Defendant.[5] This would be incredibly time-consuming, wasteful, and would not advance the litigation in any way. Moreover, if it did not locate Defendant it would be quite difficult for the State to assert any potential claim it may have. Without investigating the Defendant in its precise location, the State would not know if the wreckage is a vessel, if, assuming it is a vessel, it is the Griffin or another vessel of historic significance, or the condition of the shipwreck, such as whether it is embedded in the bottomlands of the state. Each of these issues is necessary to forming a claim under the relevant statutory laws. Consequently, any claim would be based upon unverified assumptions and speculation. Another situation could

---

[5]The State is correct that its failure to identify Defendant within the three areas does not necessarily mean that it has not seen what Plaintiff considers to be Defendant. Plaintiff's failure to provide the precise location of Defendant puts the State in the awkward position of having to guess what Plaintiff may consider to be the wreckage comprising Defendant. The State is not required to be clairvoyant to investigate Defendant and participate further in this litigation.

arise in the event the State discovered an object that might be considered part of Defendant. Because Plaintiff has not provided the State with the precise coordinates of wreckage or described the present condition of the artifacts, the State would be forced to clear its discovery with Plaintiff, who could quite possibly say that the discovered object is not part of Defendant. Thus, the State would be required to continue blindly hunting, wasting additional resources, and unnecessarily delaying the resolution of this matter. These are just a few of the possible scenarios that could result if the State is not given the precise location of Defendant and each demonstrates that the three geographic areas identified in the complaint are not sufficient.

Finally, Plaintiff contends that requiring disclosure of the precise location of the objects comprising Defendant could place Defendant in danger of destruction from third parties or could result in an award of summary judgment to the State. Neither reason justifies Plaintiff's failure to comply with the Court's order. The precise location of Defendant is subject to the protective order entered in this case and must be maintained by the parties in strict confidence throughout this litigation. Thus, the danger that disclosure to the State will result in destruction of Defendant by third parties is unfounded. Further, the possibility that summary judgment in favor of the State may result from disclosure of the precise location of Defendant is not a reasonable justification for failing to comply with the Court's order. In fact it is absurd and makes a mockery of the rules governing civil litigation in federal courts. Imagine the consequences if litigants refused to disclose highly relevant information

because they were concerned it may lead to their opponent seeking a motion for summary judgment. Civil litigation would grind to a halt. Avoiding a motion for summary judgment is a wholly improper reason for failing to comply with the Court's order.

Accordingly, Plaintiff has failed to demonstrate good cause for its failure to provide the State with the precise location of Defendant. Plaintiff will have 10 days from the entry of this opinion and order in which to provide the State with the precise location of Defendant. In the event, Plaintiff fails to provide the State with the location within the allotted time, the Court will enter an order dismissing the case without prejudice. Of course, any documents or information containing the precise location of Defendant provided to the State are subject to the protective order and must not be publicly disclosed. It is also anticipated that Plaintiff will file the precise location of Defendant with the Court under seal. An order will be entered consistent with this opinion.


Date:   August 21, 2006         /s/ Robert Holmes Bell
                                ROBERT HOLMES BELL
                                CHIEF UNITED STATES DISTRICT JUDGE