IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
Northern Division

| | |
|---|---|
| GREAT LAKES EXPLORATION ) <br> GROUP LLC ) <br> ) <br>         Plaintiff, ) <br> ) <br> v. ) <br> ) <br> The Unidentified, Wrecked and (For ) <br> Salvage-Right Purposes), Abandoned ) <br> Sailing Vessel, her tackle, ) <br> apparel, appurtenances, cargo, etc. ) <br> located within a circle having ) <br> a radius of 3.5 statute miles, whose ) <br> center point is at coordinates ) <br> 45° 32.8′ North latitude and 86° 41.5′ ) <br> West longitude, ) <br> ) <br>         *In Rem* ) <br> ) <br>         Defendant, ) | Civil Action No. 1:04-CV-375 <br><br> HON. ROBERT HOLMES BELL <br><br> **INTERVENORS' REPLY TO** <br> **MOTION FOR ARREST, TEMPORARY** <br> **RESTRAINING ORDER AND FOR** <br> **DELAY** |

v

STATE OF MICHIGAN DEPARTMENT
OF HISTORY, ARTS, AND LIBRARIES
AND MICHIGAN DEPARTMENT OF
ENVIRONMENTAL QUALITY,

        Intervenors
_____/

| | | |
|---|---|---|
| Richard Thomas Robol <br> Robol Law Office <br> Attorney for Great Lakes <br> Exploration Group <br> 614/559-3846 | Roger W. Boer <br> Roger W. Boer, LLC <br> Co-Counsel for Great <br> Lakes <br> Exploration Group <br> 616/235-3500 | James R. Piggush (P29221) <br> Assistant Attorney General <br> Environment, Natural <br> Resources <br>   and Agriculture Division <br> Attorney for Intervenors <br> 517/373-7540 |

## INTERVENORS' REPLY TO MOTION FOR ARREST, TEMPORARY RESTRAINING ORDER AND FOR DELAY

On June 7, 2004, Plaintiff filed its complaint to seek salvage rights over a purported wrecked vessel in northern Lake Michigan. The complaint did not satisfy Fed R Civ P, Supp Rule C(2)(b) or Rule E(2). A complaint in rem must describe the property that is the subject of the action. Arrest of a defendant depends upon whether the complaint shows the conditions for an in rem action in the subject property or subject vessel. The complaint must provide particularity sufficient to allow a claimant to investigate the facts and frame a responsive pleading. (Docket 5). Given the defects in the complaint, the court declined to issue any warrant for arrest of any in rem defendant.

Thereafter, Intervenors filed their limited appearance to challenge whether the court can exercise in rem jurisdiction over any of the property referenced in Plaintiff's Amended Complaint. In reply to the Motion to Dismiss, Plaintiff disavowed any claim that the wreck is abandoned sufficient to support a claim to the wrecked vessel itself under the law of finds. As stated in the Motion to Dismiss, if Plaintiff asserted abandonment of the vessel, without limiting that abandonment to "salvage-right purposes," the complaint would provoke operation of the Abandoned Shipwreck Act (ASA), 43 USC 2101, *et seq*, and acknowledge the State's title. (Docket 16, pp 5-9).

Plaintiff's Second Amended Complaint is still silent concerning the condition and location of any artifacts that make up the alleged wreck. Plaintiff still has not shown, and, based upon the evidence so far before the court, cannot show, that it has accomplished any successful, legal salvage that could authorize an in rem action against any salvaged property or support any claim to the status of salvor-in-possession authorizing exclusive access to a wreck site.

Intervenors have submitted evidence that the single artifact that Plaintiff has acknowledged as part of the wreck so far is in place and not yet salvaged and embedded in the soil of Michigan. (Docket 15, Lusardi Affidavit). If the wreck is embedded, Plaintiff cannot be a legal salvor by virtue of Michigan's regulatory provisions, which require a permit to dredge the bottomlands. MCL 324.32512.

If the wreck is embedded in Michigan soil, it is protected from admiralty jurisdiction by the 11th Amendment, whether or not shown to have been abandoned, unless the original owner is before the court because it is in Michigan soil and in the State's possession. Congress asserted ownership of abandoned vessels within state bottomlands and transferred their title to the States. If the wreck is embedded and was abandoned,[1] it belongs to Michigan by operation of the ASA, 43 USC 1205,[2] unless reserved by the State and already the State's property, so that the ASA does not operate. 43 USC 1205(C)). Where an ancient vessel whose location has been lost for centuries is embedded in state soil, it is in the actual possession of the State, and the common law of finds recognizes ownership of the vessel, not in the finder but in the owner of the lands: "When personalty is found embedded in land, however, title to that personalty rests with the owner of the land." *Chance v Certain Artifacts Found and Salvaged from the Nashville*, 606 F

---

[1] Plaintiff says that it only asserts that its find is abandoned for salvage purposes, despite its persisting Petitory/Possessoy and/or Ownership claims, and its request for arrest of the wreck rather than its salvage.

[2] The act provides, in part: "The United States asserts title to any abandoned shipwreck that is (1) embedded in submerged lands of a state." 43 USC 2105. *California v Deep Sea Research, Inc.*, 523 US 491, 497; 118 S Ct 1464; 140 L Ed2d 626 (1998), involved a claim to a vessel under the law of finds and presented only the question of jurisdiction over the Brother Jonathan under the ASA. The State claimed, on one hand, that the vessel was embedded in its lands but stipulated, on the other, that the ship was only upon state Bottomlands. Given the reliance upon the ASA, the state's claimed title could only be activated upon showing of abandonment, as the court ultimately determined. The state made no claim the vessel in its bottomlands in the absence of a showing of abandonment, even though Congress made no claim under the ASA to vessels already held by the states.

Supp 801, 805 (SD Ga 1984). The ownership of the personalty does not depend upon knowledge of its location. Id., p 805. Michigan acquired its bottomlands and all contained within them at time of statehood. It possesses the property within its soil, whoever it may have originally belonged to, and that property belongs to Michigan, by operation of law. Accordingly, the location and condition of the wreck must be disclosed before conditions for an in rem action can appear, and before any arrest occurs.

The court has repeatedly ordered such disclosure. On July 13, 2005, this court issued a protective order to prevent information containing the precise location of the Defendant, and filed under seal, from being disseminated to any third parties, "In consideration of the Plaintiff and the Intervenors' interest in avoiding unnecessary disclosure of the location of archaeological sites, and in view of the Court's obligation to identify the subject of this action and to determine its jurisdiction." (Docket 44, "Order Concerning Documents filed under Seal," p 1).

This court's August 21, 2006 Order (Docket 103),[3] requires Plaintiff to disclose, by August 31, the locations of any known artifacts it claims to be part of the wreck, so that their condition can be determined. Faced with the prospect of dismissal if it does not disclose such locations, Plaintiff now requests arrest of the vessel and an injunction to prevent the Intervenors from using the information to claim actual possession of the wreck or to do anything but pursue this action. None of these requests is appropriate. Neither is the requested delay.

1. <u>In light of the showing already made by Intervenors, arrest of any defendant is improper until Plaintiff shows jurisdiction over some recognized object(s) in which it has a lawful salvage lien.</u>

---

[3] As the court is aware, the order issued after both parties had filed responses to its order to show cause. The Intervenor's filing was served electronically upon both of Plaintiff's attorneys and by mail upon Mr. DeBoer, on August 3, 2006, as disclosed by Docket Entry 99).

4

In this in rem action, it is important to consider the subject over which the court may exercise jurisdiction by arrest. Although Plaintiff does not claim this action arises under the law of finds and represents that it proceeds under the law of salvage, it urges arrest of the vessel or the wreck, as though it possesses the wreck under the law of finds, and presents nothing that it has rescued over which it can state a lien. Michigan has presented evidence that the wreck, so far as it is known, is embedded in Michigan's soil and is under Michigan's control by laws preventing its removal without permit. MCL 324.82512; MCL 324.76106 and MCL 324.76107.

The request for arrest must be rejected by the terms of Rule (C)(1)(a), (C)(2)(b) and C(3)(a)(ii)(A). The complaint does not allow claimants to commence an investigation of the facts covering the wreck and frame a responsive pleading, except by speculation, contrary to Rule (E)(2)(a), and it makes no showing of the conditions for an in rem action, such as a lawful lien and identifiable property. Given the location of the artifact so far disclosed within Michigan bottomlands, *Chance v Certain Artifacts and Salvaged items from the Northville*, 606 F Supp 801, 806-807 (SD Ga 1984), if that artifact is associated with a vessel that was abandoned, the court lacks admiralty jurisdiction by operation of the ASA, and if it was not, the court lacks admiralty jurisdiction by operation of the common law, *Klein v The Unidentified, Wrecked and Abandoned Sailing Vessel*, 758 F2d 1511, 1514 (11th Cir 1985), and because the object is possessed by Michigan. In either case, if the subject is embedded in Michigan soil, the court cannot exercise jurisdiction over the wreck because it belongs to the state and is not subject to Federal court jurisdiction under the 11th amendment. *In Re New York*, 256 US 490; 41 S Ct 588; 65 Led 1057 (1926).

Neither can Plaintiff show a lawful lien in an item removed from the bottomlands, given the limitations of MCL 324.32512(c) and R 322.101(h) and the lack of any permit to remove

anything from Michigan bottomland. There has been no legal salvage, and Plaintiff does not identify any rescued item in which it may have a lien *Lathrop v the Unidentified, Wrecked and Abandoned Vessel*, 807 F Supp 953, 963 (MD Fla, 1993) (Docket 76) The conditions for in rem jurisdiction do not yet appear.

*Fathom Exploration LLC v The Unidentified Shipwrecked Vessel or Vessels*, 352 F Supp2d 1218 (SD Ala, 2005), does not counsel arrest where the wreck cannot be located or specified and when conditions for an in rem action are not presented in the complaint. Although the complaint in that action did not name the vessel(s) that the Plaintiff claimed, that defect was not fatal. Plaintiff asserted salvage of specific recovered artifacts, the lack of any owner(s), marine peril, necessity of rescue, and it provided a general location. The Plaintiff claimed title to the vessels under the law of finds and a salvage interest based upon its rescue(s). It sought an injunction against rival salvors within a geographic area. Based upon its initial review of the allegations under the law of finds, the court considered the wreck the subject of in rem jurisdiction, and authorized arrest, with the Plaintiff as substitute custodian. The Plaintiff never returned service on the shipwreck, making the case curious authority for the proposition that a court should acquire immediate jurisdiction over any shipwreck, before evaluating third party challenges to the adequacy of the complaint or the presence of admiralty jurisdiction. 352 F Supp 2d 1221, n 2.

After authorization for arrest, state and federal claimants become aware of Fathom Exploration's claim and they asserted the insufficiency of the complaint to show jurisdiction and support arrest.

As noted in *Fathom Exploration*, 352 F Supp 2d at 1223, although it is common practice, no known cases have actually addressed the propriety of allowing in rem actions against

6

unidentified wrecked vessels in light of the particularity requirements of the Supplementary Rules. The deficiency of this practice is not cured by naming the wreck, since that alone does not make out a claim of lien in un-recovered artifacts in place, particularly where, as here, the plaintiff disavows any claim that the vessel was abandoned and so abandons any claim to the vessel itself under the law of finds, but can only claim an in rem action against objects recovered and seek the status of salvor in possession. See, *Yukon Recovery, LLC v Certain Abandoned Property, in rem*, 205 F3f 1189, 1195 (9th Cir 2000) (Docket 77, p 10). There is no separate, exclusive right to appropriate the value of a find in place. *RMS Titanic v The Wrecked and Abandoned Vessel*, 286 F3d 194, 205 (4th Cir 2002).

Indeed, *Fathom Exploration* did discuss and reject the proposition that a claimant must identify and name a vessel to establish jurisdiction. Plaintiff quotes that discussion out of context, as thought it rejects the proposition that an arrest cannot occur before disclosing what is known about a wreck, as necessary to show jurisdiction (Docket 104, p 6). The case hardly serves as authority for the proposition that faced with a complaint that fails to demonstrate jurisdiction and with evidence that the alleged wreck in place is in the actual possession of the State, a court should issue a warrant for un-rescued property, and effectively enjoin State enforcement of laws that regulate recovery as a penalty for obtaining the information that shows admiralty jurisdiction, if it does. The request for arrest must be rejected until there is indication that there is some subject over whom the court may exercise admiralty jurisdiction.

In *RMS Titanic, Inc v The Wrecked and Abandoned RMS Titanic*, 171 F3d 943, 964 (4th Cir 1999), the court spoke of a lien in a wreck, but in *RME Titanic, Inc v The Wrecked and Abandoned Vessel*, 286 F3d 194, 205-206 (4th Cir 2002), it clarified that the salvage lien is in the artifacts recovered, which may be accompanied with a right to exclusive salvage, but "discovery

alone does not amount to salvage service, although it can lead to salvage service," and there is "no lien in property that it merely discovered." These cases do not support the proposition that in rem jurisdiction can or should be asserted before the jurisdictional fact of recovery showing a lien. Since those cases involved the open ocean, they did not provide any occasion to evaluate the significance of a state's claim that the objects recovered belonged to the state or that the shipwreck in place was in the actual possession of the state embedded in its soil.

### 2. Injunctive relief is inappropriate in this in rem action.

As noted, Plaintiff requests not only arrest but also an injunction against the state of Michigan to prevent it "at the very outset," from using information, acquired by "substantial time, money and effort," concerning the location of artifacts believed to be associated with the shipwreck "to defeat federal jurisdiction." That is, Plaintiff asks the court to protect its knowledge of conditions concerning the jurisdiction of the court from being used in a motion under FR Civ P 12(b)(1) or 56. The court has already commented upon the fact that this makes a mockery of the Federal Rules of Civil Procedure.

The present request for injunctive relief, like the amended protective order Plaintiff proposed earlier (Docket 45), is overly broad. It would secure an exclusive proprietary right to obtain information concerning a find and would prevent Michigan from enforcing, against Plaintiff or any other person, the laws by which it secures its bottomlands and protects its cultural heritage. If Michigan ever uses information about the find to obtain information for school textbooks or to require Plaintiff to obtain permits before dredging its bottomlands--it would violate the injunction. There are no such exclusive rights to investigate. But, neither can an admiralty court with in rem jurisdiction award such an injunction against a State that has appeared for a limited purpose under a restricted appearance.

### a) The court lacks jurisdiction to issue an injunction against the state of Michigan in this action.

The Court has entered a protective order (Docket 44) controlling dissemination of material filed under seal disclosing the location of the subject wreck, and it has already rejected Plaintiff's request (Docket 45) that the court's Protective Order be amended to provide that any material designated as confidential be "used solely for purposes of this proceeding." (Docket 45). What was a request for an overly broad protective order is now presented as a request for injunctive relief to permit "meaningfully review on appeal." (Docket 104, p 8). As a result, it is appropriate to point out that the court lacks jurisdiction to issue such affirmative injunctive relief again the state in this in rem action.

A court must have personal jurisdiction over a party against whom equitable relief is sought *Lathrop v Unidentified, Wrecked and Abandoned Vessel*, 817 F Supp 953, 961 (MD Fla, 1993). The Intervenors are present here pursuant to a restricted appearance, as authorized by Rule E(8), to file their motion to dismiss and to defend the state's interest in and jurisdiction over its bottomlands and maritime cultural heritage (Docket 9).

According to the Advisory Committee Notes, Rule E(8) authorizes restricted appearances to protect a claimant from having to subject himself personally to the jurisdiction of the court for claims for which process is not available. The court does not have personal jurisdiction over Michigan in this case to enjoin it from enforcing its laws. Plaintiff cannot use this limited appearance to obtain an order that it could not otherwise obtain. Neither does it have a proprietary right to avoid or to prevent compliance with state law that the court can protect. Plaintiff must disclose its information to the court only if it seeks to show the court's jurisdiction, as this court has ruled.

9

### b) The harm Plaintiff represents it will suffer without an injunction is fictional.

Plaintiff represents that it is necessary for the court to prevent Michigan from using the information "to take, or attempt to take actual possession of the shipwreck."

The persisting misrepresentation that Michigan might use the information disclosed to assert actual possession is puzzling.[4] Michigan already claims actual possession of the wreck insofar as it is actually contained in its bottomlands, protected from removal by Michigan law. It so claimed in its original motion to dismiss (Docket 16). Information will not change the location of the wreck.

The persistent expression of anxiety that Michigan will assert actual possession appears related to cases that specify how a finder must sustain actual physical possession of a wreck in order to avoid the claims of rival salvors or finders under the law of finds. *See, Hener v United States*, 525 F Supp 350 (SD NY 1981). The position appears to posit Intervenors as potential competing claimants to the vessel, whose claim depends upon hovering over the site. Rather, Michigan's physical relation to the wreck arises from its ownership of the soil in which the wreck is embedded, and it has police powers regulations by which to control its removal. *See, Hener*, 525 F Supp at 354. No similar claim arises in open ocean cases such as the *SS Central*

---

[4] Plaintiff's misstatement of Michigan's position began in its first reply to Intervenors, Docket 20, p2, "By Intervenors' own admission, Michigan lacks such actual possession." The reference there is to the sort of possession implied by reason of ownership under circumstances favorable to implication of possession. Michigan's claim is the converse, it is the actual possession of the wreck artifacts within the state's soils that gives rise to implication of ownership with title superior to that of all but the original owner, the sort of owner whose successor was the claimant in *Fairport International Exploration, Inc v The Shipwrecked Vessel, known as the Captain Lawrence*, 177 F3d 491 (6th Cir 1999).

10

*America* or the *RMS Titanic* cases, to which Plaintiff refers. Michigan's claim to the wreck depends upon only the location, condition and status of the wreck in its soil. The information that Plaintiff has controls this court's jurisdiction, Michigan's claim, and Michigan's legal responsibilities under Michigan law.

The point of Plaintiff's request for injunction is not, as this court noted when it issued its order compelling disclosure, to protect the physical property from third parties. The court has issued a protective order. Rather, the requested injunction has such breath that it would preempt any effort by Michigan to regulate excavation at the site and from exercising any control over its property.

        **c)    The proprietary right to exclusive appropriation of information asserted by Plaintiff does not exist as an element of Salvage Law.**

While Plaintiff may abandon this action without disclosing the location of its find and so protect the information it has so far acquired and complicate Michigan's enforcement activities, it loses no legitimate right to intellectual property by doing so.

In *Columbus-America Discovery Group, Inc v The Unidentified, Wrecked and Abandoned Sailing Vessel, etc*, 1989 AMC 1955, Lexsee 1989 AMC 1955, (ED Va, 1989), the court made scattered observations about what was then thought to be the wreck of the *S.S. Central America* and observations about Columbus-America's activities supporting enforcement of the law of finds and salvage and about its own prior rulings in the case. In the course of such observations, it recited a laundry list of information considered valuable and proprietary. But, the issue before the court was whether Columbus-America Discovery Groups should be awarded title to salvaged items on Exhibit 1. It was not whether information concerning the location and characteristics of claimed artifacts is protected from disclosure needed to acquire sustain court

11

jurisdiction. Neither did it hold that a finder is entitled to appropriate all knowledge concerning a wreck as its own, whosoever may acquire that information. The "trend" to protecting such information did not occur in that case, and Plaintiff cites no subsequent cases to sustain the trend thereafter.

To the extent Plaintiff intends to assert a proprietary right to prevent the Intervenors from acquiring their own information about its finds, that sort of right has been repudiated. In *RMS Titanic, Inc v Haver*, 171 F.3d 943, 970 (4th Cir 1999), the salvor claimed an exclusive right of visitation and right to photograph the wreck site, but was ultimately compelled to disgorge the profits of that enterprise and allow others to acquire their own information about the wreck and make their own images. The claimed rights are not justified by the law of salvage or allowed by the law of free navigation of the high seas.

### d) The proposed Injunction is not consistent with public interest or the public interest.

Not only is Plaintiff's request inconsistent with the law of salvage and violative of the law of the high seas, but it also ignores the 11th Amendment and the conditions for acquiring access to the courts. As a matter of public policy, the arrest of a "vessel" or "shipwreck" in place, where that subject is unknown and unspecified, but apparently in the actual possession of the state, is to ignore the 11th amend, which specifies the appropriate relation between the state and federal courts and prejudices the rights of the state.

The public interest is expressed by exception to the law of finds, which recognizes possession and ownership of personalty embedded in the soil; in the federal statute that excludes admiralty jurisdiction over abandoned shipwrecks embedded in state bottomlands or on state bottomlands and of historical significant, 43 USC 1201, *et seq.*, and in state laws that prohibit

12

any removal of artifacts from state bottomlands without a permit, MCL 324.325123, and any removal of abandoned property from in or on Michigan bottomlands without a permit. MCL 324.76107. There is to be no salvage of abandoned vessels from Michigan bottomlands, except according to Michigan law, and Michigan claims an interest in abandoned property of historical interest found upon or within its lands and reserves to itself a possessory right or title superior to that of a finder to abandoned property of historical value found on the state owned bottomlands of the state. MCL 324.76102. Over against such public interest, Plaintiff invokes the expenses of an entrepreneur that undertook its investigations with full knowledge of these policies and of State and Federal efforts to assure state control over ancient shipwrecks in state bottomlands.

3. <u>No injunction should issue in the present circumstances.</u>

The evidence available to date indicates that the subject of this action, as so far identified, was owned by LaSalle and on a commercial mission at the time of its demise (Docket 33, Bruseth; Halsey), that it is embedded in Michigan soil and additional artifacts associated with the wreck are similarly located and subject to location by magnetometer and sub-bottom profiling (Docket 95, Lusardi). Plaintiff seeks to protect the information that will or will not confirm the evidence so far available and relieve the court and the Intervenors of any necessity of speculating concerning the location and condition of the find. It has no right to be protected from use of that information. The purposes outside this litigation for which Michigan might use the information disclosed include: to enforce its laws, to protect state property from private exploitation, and to foster its cultural heritage.

4. <u>Any delay should be rejected.</u>

In a very real sense, the delay requested by Plaintiff may serve Plaintiff as well as the requested injunctions. If Plaintiff can delay disclosure further, so that no meaningful investigation can occur before fall storms, Intervenors may be prejudiced by having to assert their claim in this action without having had the opportunity to investigate the find. And/or Plaintiff may be able to initiate additional work this fall, even before Michigan can document the existing conditions. Plaintiff has delayed required disclosures long enough and should have no further access to the court until it has disclosed the information.

Respectfully submitted,

Michael A. Cox
Attorney General

/s/

James R. Piggush (P29221)
Assistant Attorney General
Environment, Natural Resources
 and Agriculture Division
P.O. Box 30755
Lansing, MI 48909
517/373-7540

Dated: August 28, 2006
s:nrd/ac/cases/open/great lakes exp 04ag/intervenors reply to tro

14