UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREAT LAKES EXPLORATION
GROUP LLC,

      Plaintiff,

v.

THE UNIDENTIFIED, WRECKED
AND (FOR SALVAGE-RIGHT
PURPOSES), ABANDONED SAILING
VESSEL, ETC.,

      Defendant,

v.

STATE OF MICHIGAN DEPARTMENT
OF HISTORY, ARTS, and LIBRARIES,
et. al.,

      Intervenors.
_____/

File No. 1:04-CV-375

HON. ROBERT HOLMES BELL

**O P I N I O N**

On August 21, 2006, the Court issued an order directing Plaintiff to provide Intervenors with the precise location of Defendant within ten days of the entry of the order. (Aug. 21, 2006 Order, Docket #103, at 1.) That order further indicated that the Court would dismiss the case without prejudice if Plaintiff failed to provide Intervenors with the precise location of Defendant within the allotted time period. (*Id.* at 2.) In response to the Court's August 21 order, Plaintiff did not file the precise location of Defendant, instead Plaintiff filed

two motions. The Court has reviewed Plaintiff's motions and Intervenors' reply. For the reasons that follow, the Court denies Plaintiff's motions and dismisses the complaint pursuant to the Court's August 21, 2006, order.

I.

Plaintiff originally filed this complaint on June 7, 2004. Plaintiff also sought an arrest warrant for Defendant and to be appointed custodian for Defendant. The entirety of Plaintiff's description of Defendant was that Defendant was a shipwreck,

> lost in Lake Michigan, and located within a circle located within a circle [*sic*] having a radius of 3.5 statute miles, whose center point is at coordinates 45° 32.8' North latitude and 86° 41.5' West longitude . . . . On information and belief, the vessel was owned by a foreign research expedition operating with the authority of, and possibly under the auspices and/or control of, a foreign sovereign until it became wrecked, lost and abandoned.

(Verified Compl. ¶¶ 2-3, Docket #1.) On June 23, 2004, the Court held that there was an insufficient basis for issuing a warrant for the arrest of the vessel because the complaint did not comply with the requirement that the property be described with reasonable particularity. (June 21, 2004 Order, Docket #5, at 1-2.)

On September 13, 2004, Plaintiff filed an amended complaint. The amended complaint added the following to the original description of Defendant:

> To the best of Defendant's [*sic*] current information and belief, the Defendant shipwreck had, at the time of its sinking, the following characteristics: (a) power system: sail(s) and oars; (b) hull construction: wooden; (c) hull dimensions: (1) length- approximately 40'-60'; (2) breadth- approximately 10'-22; (d) method of construction: hand; (e) approximate crew size: five; (f) approximate tonnage: 45 tons (or tuns); (e) time of construction: believed to be of significant age, prior to 20th century . . . . The Defendant *res* is unique

and there are no other shipwrecks known or believed to be within the geographic area identified above, or at or near the vicinity thereof, having the foregoing characteristics.

(Verified Am. Compl. ¶¶ 6-7, Docket #6.) On November 18, 2004, the Court granted the Michigan Department of History, Arts and Libraries and the Michigan Department of Environmental Quality's motion to intervene. Intervenors filed a motion to dismiss, which the Court denied on May 10, 2005. (May 10, 2005 Order, Docket #39, at 1) The denial of the motion to dismiss was "predicated upon Plaintiff's compliance with Intervenors' request for documents and exhibits and the precise location of Defendant." (*Id.* at 2.) The order also indicated that it was "anticipated that the Defendant's precise location will be filed under seal with this Court." (*Id.*) On July 13, 2005, the Court issued a protective order to govern information disclosed about Defendant. (Order Concerning Docs. Filed Under Seal, Docket #44.) On October 20, 2005, the Magistrate Judge granted Plaintiff's motion to file a second amended complaint. (Oct. 20, 2005 Order, Docket #71, at 1.) The second amended complaint[1] changed the description of the Defendant to the following:

> Defendant [is a ] wrecked and abandoned (for salvage-right purposes) sailing vessel, here tackle, apparel, appurtenances, cargo, etc. (hereinafter "the shipwreck" or "shipwreck site" "believed to be the Griffin, lost in Lake Michigan and located within three circular areas, each having a radius of one

---

[1] The second amended complaint was filed as an exhibit to Plaintiff's renewed motion to file a second amended complaint. (Docket #60.) Though the Magistrate Judge granted Plaintiff's motion to file a second amended complaint, Plaintiff never actually filed the second amended complaint. For the purposes of the matter before the Court, the second amended complaint is deemed to have been filed as if it had been properly filed as its own separate pleading.

3

half a statute mile, as follows: First area- circle whose center point is 45-32-23 N 86-44-12 W; Second area- circle whose center point is 45-34-48 N 86-43-05 W; Third area- circle whose center point is 45-32-24 N 86-40-00 W.") lost in Lake Michigan, located within a circle having a radius of 3.5 statute miles whose center point is at coordinates 45° 32.8' North latitude and 86° 41.5' West longitude and believed to be The Griffin . . . . To the best of Defendant's current information and belief, the Defendant shipwreck had, at the time of its sinking, the following characteristics: (a) power system; [*sic*] sail(s) and oars; (b) hull construction; [*sic*] wooden; (c) hull dimensions; [*sic*] (1) length - approximately 40' - 60'; (2) breadth - approximately 10' - 22'; (d) method of construction; [*sic*] hand; (e) approximate crew size; [*sic*] five; (f) approximate tonnage: 45 tons (or tuns); (g) time of construction: believed to be the 17th century; (h) date of sinking: approximately September 1679; (i) name of vessel: The Griffin. . . . The Defendant *res* is unique and there are no other shipwrecks known or believed to be within the geographic area identified above, or at or near the vicinity thereof, having the foregoing characteristics.

(Second Am. Compl. ¶¶ 2, 6, 7, Am. Mot. to Am./Correct Compl., Docket #60, Ex. 3.)

On October 25, 2005, the Court entered an order holding this case in abeyance for thirty days to allow the parties to consult regarding the "terms and conditions of a cooperative investigation concerning whether the target is the *Griffin*." (Oct. 25, 2005 Order, Docket #75, at 1-2.) On November 17, 2005, Intervenors filed a renewed motion to dismiss. On February 2, 2006, when no response had been filed to the motion to dismiss and the parties had not advised the Court about the consultation regarding the cooperative investigation, the Case Manager sent a letter to the parties requesting a joint status report within ten days. A joint status report was filed by Plaintiff on February 13, 2006, and the report indicated that the parties were continuing to engage in discussions about a cooperative investigation. On April 17, 2006, Plaintiff filed another joint status report indicating that the discussions about a cooperative investigation were continuing. On May 16, 2006, Intervenors filed a joint

4

status report advising the Court that the parties had been unable to reach an agreement because the "Intervenors continue to lack information on which to base responsible participation in a cooperative investigation or to authorize further investigations by the claimant." (May 16, 2006 Joint Status Report, Docket #83, at 1.) On May 22, 2006, the Court issued an order establishing a briefing schedule for Plaintiff's response to the motion to dismiss and Intervenors' reply. (May 22, 2006 Order, Docket #89, at 2.) On June 22, 2006, the Court granted Plaintiff's request for a four-day extension to the due dates in the briefing schedule. (June 20, 2006 Agreed Order Am.'g Br.'g Schedule, Docket #91, at 1.)

On July 20, 2006, the Court issued a show cause order which directed Plaintiff to show cause why it had failed to provide the precise location of Defendant to Intervenors. (July 20, 2006 Order to Show Cause, Docket #98, at 4.) The order directed the parties to file briefs addressing whether the complaint should be dismissed for Plaintiff's failure to provide Defendant's precise location. (*Id.*) On August 21, 2006, after reviewing the briefs filed in response to the July 20, 2006 order, the Court ordered Plaintiff to advise Intervenors of the precise location of the Defendant within ten days. (Aug. 21, 2006 Order 1.) The order further advised Plaintiff that failure to provide Defendant's precise location would result in dismissal of the case. (*Id.* at 2.) Plaintiff did not comply with the Court's order, instead Plaintiff filed two new motions. Intervenors promptly filed a response to the new motions.

5

II.

**A. Whether Plaintiff has Complied with the Court's Orders to Disclose the Precise Location of Defendant**

The Court's local rules provide that "[a] judicial officer may issue an order to show cause why a case should not be dismissed for lack of prosecution or for failure to comply with these rules, the Federal Rules of Civil Procedure, or any court order." W.D. MICH. LCivR 41.1. If good cause is not shown, the Court may order dismissal of the case with or without prejudice. *Id*.

Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims requires the complaint to "describe with reasonable particularity the property that is the subject of the action . . . ." FED. R. CIV. P. SUPPL. C(2)(b).[2] The Supplemental Rules also require that the complaint state "the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." FED. R. CIV. P. SUPPL. E(2)(a).[3] These standards are compelled by the fact that "[a]n admiralty action in rem involves arrest and seizure of the offending vessel simply upon filing a verified complaint." *Riverway Co. v. Spivey Marine & Harbor Serv. Co.*, 598 F. Supp. 909, 913 (S.D. Ill. 1984). The requirements of Supplemental Rule E(2)(a) are part of the process

---

[2] The amendment to Supplemental Rule C that is set to take effect December 1, 2006, does not alter this provision of the Rule.

[3] The amendment to Supplemental Rule E that is set to take effect December 1, 2006, does not alter this provision of the Rule.

6

that guards against the improper use of the admiralty arrest and seizure powers. *United States v. Mondragon*, 313 F.3d 862, 864-65 (4th Cir. 2002); *Riverway Co.*, 598 F. Supp. at 913.

In response to the order to show cause Plaintiff claimed that it was "unable to provide a more precise location because the Defendant shipwreck does not rest at a single geographical point . . . ." (Pl.'s Br. in Resp. to Order to Show Cause, Docket #100, at ¶ 6.) Plaintiff further claimed that "the location of the Defendant shipwreck has been identified as precisely as the circumstances permit." (*Id.* at ¶ 9.) But Plaintiff acknowledges the inadequacies of the prior disclosures in its briefing in response to the Court's August 21 order:

> Under the *status quo*, Great Lakes Exploration has not provided the precise location of the artifacts believed to be associated with the Defendant. Since Intervenors lack such information, under the *status quo* they may not currently utilize such information about the location of the shipwreck artifacts to take, or attempt to take, actual possession of the shipwreck. Given their lack of such information, under the *status quo*, Intervenors may not utilize such information for purposes other than asserting or protecting its interest in this proceeding.

(Pl.'s Br. in Support of TRO, Docket #104, at 8 (citation omitted).) Plaintiff's concern is that Intervenors will be able to locate Defendant and take actual physical possession of Defendant. Implicit in Plaintiff's contention that Intervenors currently cannot not take possession is the fact that Plaintiff has not provided Intervenors with the information necessary to locate Defendant. If Intervenors already had the information necessary to locate Defendant, then Plaintiff's concerns about Intervenors taking actual physical possession

7

would be moot. Plaintiff's claim with regard to the temporary restraining order make clear that in Plaintiff's view, the information provided to date is insufficient for Intervenors to locate Defendant. Thus, as the Court stated on August 21, 2006, the description of Defendant in the second amended complaint "does not allow the State to investigate the Defendant, rather, it forces the State into, for lack of a better term, a fishing expedition." (Aug. 21, 2006 Opinion, Docket #102, at 8.)

In order for Intervenors to frame a responsive pleading Intervenors must be able to locate Defendant in order to investigate whether Defendant is embedded. If Defendant is an abandoned shipwreck that is embedded in the submerged lands of the State of Michigan, then the Abandoned Shipwreck Act of 1987 ("ASA") transfers title of the ship to Michigan. 43 U.S.C.A. § 2105 (West Supp. 2006); (Aug. 21, 2006 Opinion 4-5.) As the Court previously concluded, and is now admitted by Plaintiff, Plaintiff has not disclosed the precise location of Defendant such that Intervenors would be able "to commence an investigation of the facts and to frame a responsive pleading." FED. R. CIV. P. SUPPL. E(2)(a).

Supplemental Rule C(2)(b) requires that the property be described with "reasonable particularity." FED. R. CIV. P. SUPPL. C(2)(b). Plaintiff presumably knows of the exact location of the specific artifacts it has discovered. However, Plaintiff's second amended complaint does not provide the location of those artifacts. Though the remnants of Defendant may be dispersed over a large area, "reasonable particularity" requires Plaintiff to provide the locations of the artifacts that have been discovered. Providing the specific

8

location of these artifacts is reasonable for two reasons. First, Plaintiff is already in possession of the necessary information, so it imposes no additional cost on Plaintiff. Second, the location of the artifacts links Defendant to particular items. In the absence of a connection to any particular artifacts, there is no reference point for defining Defendant. Thus, if any party discovered an artifact generally matching Plaintiff's description of Defendant, then that party would need to clear the discovery with Plaintiff to know whether the artifact was part of Defendant. (*See* Aug. 21, 2006 Opinion 9-11.) But if Plaintiff provided the location of the known artifacts, then Intervenors and other parties would have explicit reference points for what constitutes Defendant. The second amended complaint does not meet the "reasonable particularity" requirement because it not disclose a part of Defendant's description that is known to Plaintiff and which is important to defining Defendant.

Therefore, Plaintiff has not complied with the Court's May 10, 2005, order. The Local Rules provide if a party has not complied with the Federal Rules, then the Court may issue a show cause order. W.D. MICH. LCIVR 41.1. The Court issued such a show cause order on July 20, 2006. On August 21, 2006, in an opinion and order the Court rejected Plaintiff's explanation for refusing to provide Defendant's precise location and gave Plaintiff ten days in which to provide Defendant's precise location. Plaintiff did not provide Defendant's precise location. As indicated in the August 21, 2006, order and in the Local Rules, the

9

consequence of Plaintiff's refusal to provide Defendant's precise location is that Plaintiff's complaint is dismissed without prejudice.

### B. Plaintiff's Request for an Arrest Warrant

In response to the Court's August 21, 2006, order, Plaintiff renews its request that the Court issue an arrest warrant for Defendant. Supplemental Rule C specifies that to issue an arrest warrant the Court "must review the complaint and any supporting papers. If the conditions for an in rem action appear to exist, the court must issue an order directing the clerk to issue a warrant for the arrest of the vessel or other property that is the subject of the action." FED. R. CIV. P. SUPPL. C(3)(a)(ii)(A).[4] To establish that the conditions for an in rem action have been met, Plaintiff must meet the requirements of Supplemental Rules C(2) and E(2)(a). The requirements for the issuance of an arrest warrant are required by due process. FED. R. CIV. P. SUPPL. C cmt. 1985 Amendment; *Riverway Co.*, 598 F. Supp. at 912, 914. Plaintiff has not complied with the requirements of Supplemental Rules C(2) and E(2)(a). *See supra* Part II.A. Until Plaintiff complies with the requirements of Supplemental Rules C(2) and E(2)(a), issuance of an arrest warrant would be improper.

In support of the request for the arrest warrant Plaintiff directs the Court to *Fathom Exploration LLC v. The Unidentified Shipwrecked Vessel or Vessels*, 352 F. Supp. 2d 1218 (S.D. Ala. 2005). Plaintiff argues that *Fathom Exploration* supports the Court issuing the

---

[4] The amendment to Supplemental Rule C that is set to take effect December 1, 2006, does not alter this provision of the Rule, however the citation will change to C(3)(a)(i) after December 1, 2006.

arrest warrant prior to resolving the deficiencies in Plaintiff's second amended complaint. *Fathom Exploration* is distinguishable for several reasons. First, the appropriateness of issuing an arrest warrant for an insufficiently described defendant was not before the court in *Fathom Exploration*. The court in *Fathom Exploration* issued the arrest warrant, and then the State of Alabama and the United States intervened and moved for a more definite statement. *Id.* at 1220-21. At the time the motion for a more definite statement was before the court, the arrest warrant for the shipwreck had not been executed. *Id.* at 1221 n.2. The court in *Fathom Exploration* therefore was not forced to confront any issues arising from arresting a ship based on an insufficient complaint. Second, the plaintiff in *Fathom Exploration* had recovered several artifacts from the shipwreck. *Id.* at 1220. The recovery of the artifacts established a basis for in rem jurisdiction over the artifacts. *See Yukon Recovery, L.L.C. v. Certain Abandoned Prop.,* 205 F.3d 1189, 1195 (9th Cir. 2000) ("Filing an in rem arrest of recovered items merely confers in rem jurisdiction in the district court over the recovered property.") The recovered artifacts allowed the court in *Fathom Exploration* to proceed in rem, independent of the shipwreck. Therefore, *Fathom Exploration* does not provide a basis for issuing an arrest warrant when the complaint does not comply with Supplemental Rules C(2) and E(2)(a).

**C. Plaintiff's Request for a Temporary Restraining Order or Preliminary Injunction**

As discussed previously, instead of providing the precise location of Defendant, Plaintiff seeks a temporary restraining order or a preliminary injunction against Intervenors.

11

Plaintiff seeks to restrain Intervenors "from utilizing information provided by Plaintiff regarding the precise location of the artifacts believed to be part of the Defendant shipwreck for (a) the purpose of taking, or attempting to take, actual possession or custody of any such artifacts, and (2) [*sic*] for any purpose other than asserting and protecting their interests in this proceeding." (Pl.'s Br. in Support of TRO 1.) As Intervenors have had an opportunity to respond, the Court will analyze Plaintiff's motion as one for a preliminary injunction, not a temporary restraining order.

The Court must have personal jurisdiction over a party, before the Court can issue injunctive relief against that party. *Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 234-35 (1917); *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006) ("Because personal jurisdiction is a threshold determination linked to any subsequent order issued by the court, we must determine whether the exercise of jurisdiction over Malease was proper before deciding whether the district court erred in the injunctive order."). Intervenors filed a restricted appearance pursuant to Supplemental Rule E(8). (Intervenors' Br. in Supp. of Mot. to Intervene, Docket #9, at 3.) Intervenors' appearance was limited to filing a motion to dismiss. (*Id.*) Supplemental Rule E(8)[5] provides that:

> [a]n appearance to defend against an admiralty and maritime claim with respect to which there has issued process in rem, or process of attachment and garnishment, may be expressly restricted to the defense of such claim, and in

---

[5] The amendment to Supplemental Rule E that is set to take effect December 1, 2006, does not alter this provision of the Rule.

> that event is not an appearance for the purposes of any other claim with respect to which such process is not available or has not been served.

FED. R. CIV. P. SUPPL. E(8). Intervenors' restricted appearance under Supplemental Rule E(8) did not subject them to the Court's personal jurisdiction. *See Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 424 F.3d 852, 863-64 (9th Cir. 2005); *Offshore Marine Towing, Inc. v. MR23,* 412 F.3d 1254, 1255 (11th Cir. 2005); *Sembawang Shipyard, Ltd. v. Charger, Inc.*, 955 F.2d 983, 989-90 (5th Cir. 1992); *United States v. Marunaka Maru No. 88*, 559 F. Supp. 1365, 1370-71 (D. Alaska 1983). As the Court lacks personal jurisdiction over Intervenors, the Court does not have authority to issue an injunction that would operate against Intervenors.

If the Court did have the authority to issue a preliminary injunction against Intervenors, the four factors the Court would need to consider in determining whether to grant or deny the preliminary injunction are: (i) the Plaintiff's likelihood of success on the merits, (ii) whether the Plaintiff may suffer irreparable harm absent the injunction, (iii) whether granting the injunction will cause substantial harm to others, and (iv) the impact of an injunction upon the public interest. *See Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, Tenn.*, 274 F.3d 377, 400 (6th Cir. 2001).

The first factor is the likelihood of Plaintiff's success on the merits. Only upon Plaintiff disclosing Defendant's precise location will it be possible for Intervenors to investigate whether Michigan has possession of Defendant pursuant to the ASA. In the absence of information about Defendant's precise location, it is not possible to assess the

likelihood of Plaintiff's success on the merits. Therefore, the first factor does not weigh in favor of either party, because the condition of Defendant is unknown.

The second factor is whether Plaintiff may suffer irreparable harm absent the injunction. As a preliminary matter, the Court has already issued a protective order designed to eliminate the risks that could come from public disclosure of Defendant's precise location. (Order Concerning Docs. Filed Under Seal; *see also* Aug. 19, 2005 Mem. Op. & Order, Docket #55 (rejecting Plaintiff's request to modify the protective order).) Since the Court has already addressed the risk that could come from public disclosure, Plaintiff's theory of irreparable harm is unclear. Plaintiff's theory of irreparable harm might be that if Intervenors are provided the precise location of Defendant then Intervenors will have the information necessary for a Rule 12(b)(6) or Rule 56 motion. If this is Plaintiff's theory, then Plaintiff's theory of irreparable harm is rejected because to accept the theory would be to make a mockery of the Federal Rules of Civil Procedure. (Aug. 21, 2006 Opinion 11-12 (analyzing this theory in greater depth and ultimately rejecting it).) Alternatively, Plaintiff's theory might be that disclosing the precise location of Defendant will permit Intervenors to take actual physical possession of Defendant. This theory is premised on Intervenors, Michigan, effectively acting in bad faith in an effort to deprive the Court of subject matter jurisdiction. The Court has no basis for ascribing such intentions to Intervenors. Additionally, Plaintiff has not offered any evidence which could be construed to support an inference that

Intervenors intend to take actual physical possession of Defendant. So the second factor weighs in favor of Intervenors.

The third factor is whether granting the injunction will cause substantial harm to others and the fourth factor is the impact of the injunction upon the public interest. In the context of the proposed injunction, the third and fourth factors largely overlap because the others who would be implicated are the people of Michigan and other users of Lake Michigan. Therefore the Court will analyze the third and fourth factors together.

Plaintiff is seeking a broad injunction against Intervenors. The injunction Plaintiff seeks would bar Intervenors, Michigan, from using the information for any purpose not related to this proceeding. So if Michigan used the information in reference to the enforcement of Michigan law directed at securing its bottomlands, Michigan would violate the injunction. *E.g.*, MICH. COMP. LAWS SERV. § 324.32512 (LexisNexis 2006) (requiring a permit for certain activities involving submerged lands in the Great Lakes). Michigan's laws related to the Great Lakes are presumable intended to further environmental, cultural, recreational and commercial interests. Limiting the ability of Michigan to enforce its laws would impair those four interests. For example, if Michigan learned of a new environmental concern related to it bottomlands through this proceeding, then the injunction Plaintiff seeks would severely impair the ability of the State to respond to that new environmental concern. Additionally, the people of Michigan and anyone using the Great Lakes could be harmed by the State inconsistently enforcing its laws as a result of the injunction. For example, a person

might apply for a permit related to certain activity on the Great Lakes, but in order to grant the permit the State would need to use information obtained as part of this proceeding. If the injunction were granted then the State would be forced to deny the permit, even though the party seeking the permit is entitled to the permit. This would create an inconsistency in the permitting process based on whether information obtained through this proceeding was relevant. In the foregoing examples, the use of the information has no apparent adverse consequences for Plaintiff, which demonstrates the absence of any need for the injunction. In contrast to the absence of injury to Plaintiff, the injunction could harm the interest of Michigan, the people of Michigan and anyone using the Great Lakes. Thus, the third and fourth factors weigh in favor of Intervenors.

Three of the factors weigh against an injunction and the fourth is neutral. Thus, even if the Court had jurisdiction to issue the injunction against Intervenors, the issuance of such a preliminary injunction would be improper.

**D. Plaintiff's Request for an Extension of Time**

The predicate for Plaintiff's request for an extension of time to disclose Defendant's precise location is the Court granting Plaintiff's request for a preliminary injunction. As the Court has explained, issuing the requested injunction would be improper. Moreover, Plaintiff has had ample time to disclose Defendant's precise location. The Court first directed Plaintiff to provide a more precise location for Defendant over eighteen months ago. (May 10, 2005 Order 2.) Over those eighteen months the Court has repeatedly directed Plaintiff

16

to provide Defendant's precise location. (July 13, 2005 Mem Op. & Order, Docket #43, at 2; Aug. 19, 2005 Mem. Op. & Order 2; July 20, 2006 Order to Show Cause 2.) Moreover, most recently the Court indicated that failing to disclose Defendant's precise location would result in dismissal of Plaintiff's complaint. (Aug. 21, 2006 Order 2.) Considering the Court's repeated orders and Plaintiff's persistent non-compliance, no extension of time is justified.

III.

For the foregoing reasons, Plaintiff's motions for a preliminary injunction and for an extension of time are denied. As a result of Plaintiff's failure to comply with the Court's August 21, 2006, order the complaint is dismissed without prejudice. An order will be entered consistent with this opinion.


Date:   November 20, 2006          /s/ Robert Holmes Bell
                                   ROBERT HOLMES BELL
                                   CHIEF UNITED STATES DISTRICT JUDGE