# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

GREAT LAKES EXPLORATION GROUP, LLC,
    *Plaintiff-Appellant,*

v.

UNIDENTIFIED WRECKED AND (FOR SALVAGE-RIGHT PURPOSES), ABANDONED SAILING VESSEL, etc.,
    *Defendant,*

MICHIGAN DEPARTMENT OF ENVIRONMENTAL QUALITY, MICHIGAN DEPARTMENT OF HISTORY, ARTS AND LIBRARIES,
    *Intervenors-Appellees.*

No. 06-2584

FILED - GR
April 24, 2008 10:31 AM
RONALD C. WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: EC /

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 04-00375—Robert Holmes Bell, Chief District Judge.

Argued: March 12, 2008

Decided and Filed: April 22, 2008

Before: KEITH, CLAY, and GILMAN, Circuit Judges.

_____

COUNSEL

**ARGUED:** Richard T. Robol, ROBOL LAW OFFICE, LPA, Columbus, Ohio, for Appellant. James R. Piggush, MICHIGAN DEPARTMENT OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Richard T. Robol, ROBOL LAW OFFICE, LPA, Columbus, Ohio, for Appellant. James R. Piggush, MICHIGAN DEPARTMENT OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

_____

OPINION

_____

    RONALD LEE GILMAN, Circuit Judge. Great Lakes Exploration Group, LLC (GLEG), a private underwater exploration and salvage company, brought an *in rem* admiralty action seeking an arrest warrant for an ancient sailing vessel (The Griffin) that sank in Lake Michigan in the 1600s. The state of Michigan intervened to claim title to the vessel pursuant to the Abandoned Shipwreck

1

Act (ASA), 43 U.S.C. §§ 2101-2106. Under the ASA, when a state does not have actual possession of a shipwreck, the state may establish title if it can show that the vessel is both (1) abandoned, and (2) embedded in the state's submerged lands. Once a state acquires actual possession of a shipwreck, however, the Eleventh Amendment applies and the federal courts lack jurisdiction over the claim.

In the present case, the district court ordered GLEG to disclose the precise location of the vessel so that Michigan could investigate whether the shipwreck was "embedded" within the meaning of the ASA. The court also decided that it would not arrest the vessel until its precise location was disclosed to the state. GLEG refused, arguing that without additional protections to safeguard federal jurisdiction, such as arrest of the shipwreck, the state would be free to claim Eleventh Amendment immunity and divest the district court of jurisdiction. The district court then dismissed GLEG's complaint without prejudice for failure to comply with the court's order.

For the reasons set forth below, we conclude that a district court may require a salvor to reveal the precise location of a shipwreck at the pleading stage where (1) there is a need for the precise location because, for example, the embedded status of the shipwreck under the ASA is in dispute, (2) the requested information is available and in the salvor's possession, and (3) the district court has taken sufficient steps to secure federal jurisdiction over the claim and, when warranted, to protect the information from public disclosure. We therefore **REVERSE** the judgment of the district court dismissing GLEG's claim and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

GLEG contends that it has found the wreckage of The Griffin, one of the first sailing ships to navigate on the Great Lakes. The Griffin was a French vessel commanded by the explorer Robert Cavelier, Sieur de la Salle, and was last seen on September 18, 1670 when it set sail for Niagara.

On June 7, 2004, GLEG filed an *in rem* admiralty action regarding a shipwreck found in Lake Michigan. GLEG requested that it be appointed custodian for the shipwreck and that the court arrest the vessel. In an *in rem* admiralty action, the arrest of a shipwreck is the procedure by which a salvor establishes jurisdiction in federal court. *See* 2-II Benedict on Admiralty § 22 (2007) (explaining that "an admiralty court by seizure *in rem* acquires jurisdiction of all interests in the *res*"); 2 Am. Jur. 2d Admiralty § 32 (2007) ("Generally, to complete the court's jurisdiction, the *res* must be seized and be under the control of the court.").

The district court concluded that there was an insufficient basis for issuing a warrant for the arrest of The Griffin because GLEG's complaint did not comply with the pleading requirements of the Federal Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims (the Supplemental Rules), which require that the *res* at issue (i.e., the shipwreck) be described with "reasonable particularity." Fed. R.Civ. P. Suppl. C(2)(b). GLEG then filed an amended complaint, identifying the vessel as The Griffin and adding additional details to the original description. Before the court acted on GLEG's amended complaint, the state of Michigan, through the Michigan Department of History, Arts, and Libraries and the Michigan Department of Environmental Quality (collectively "Michigan"), sought to intervene in the case to assert title to the shipwreck under the ASA. The district court granted Michigan's motion to intervene.

Michigan then filed a motion to dismiss, claiming that (1) GLEG's complaint was insufficient under the Supplemental Rules because it did not state the precise location of the vessel, and (2) the federal court lacked jurisdiction over the case because, under the ASA, the shipwreck belonged to Michigan. The district court denied Michigan's motion based on the court's "anticipat[ion] that the wreck's precise location [would] be filed under seal with [the] Court."

On July 13, 2005, the court issued a protective order to prevent public disclosure of the location of the vessel. The order required that all documents revealing the precise location of The Griffin be filed under seal and maintained in confidence by the parties. GLEG filed a motion to alter or amend the protective order and sought a temporary restraining order (TRO) that would prohibit Michigan from taking actual possession of the shipwreck or related artifacts. The court denied both GLEG's motion to amend and its request for a TRO.

Following the denial of GLEG's motion to amend the July 13, 2005 protective order, the district court allowed GLEG to file a second amended complaint. The second amended complaint changed the description of the shipwreck to the following:

> Defendant [is a] wrecked and abandoned (for salvage-right purposes) sailing vessel, here tackle, apparel, appurtenances, cargo, etc. (hereinafter "the shipwreck" or "shipwreck site" "believed to be the Griffin, lost in Lake Michigan and located within three circular areas, each having a radius of one half a statute mile, as follows: First area-circle whose center point is 45-32-23 N 86-44-12 W; Second area-circle whose center point is 45-34-48 N 86-43-05 W; Third area-circle whose center point is 45-32-24 N 86-40-00 W.") lost in Lake Michigan, located within a circle having a radius of 3.5 statute miles whose center point is at coordinates 45° 32.8' North latitude and 86° 41.5' West longitude and believed to be The Griffin . . . . To the best of [GLEG's] current information and belief, the Defendant shipwreck had, at the time of its sinking, the following characteristics: (a) power system; [sic] sail(s) and oars; (b) hull construction; [sic] wooden; (c) hull dimensions; [sic] (1) length-approximately 40'-60'; (2) breadth-approximately 10'-22'; (d) method of construction; [sic] hand; (e) approximate crew size; [sic] five; (f) approximate tonnage: 45 tons (or tuns); (g)time of construction: believed to be the 17th century; (h) date of sinking: approximately September 1679; (i) name of vessel: The Griffin . . . . The Defendant res is unique and there are no other shipwrecks known or believed to be within the geographic area identified above, or at or near the vicinity thereof, having the foregoing characteristics.

The district court allowed time for the parties to work out the "terms and conditions of a cooperative investigation concerning whether the target is the Griffin." Negotiations between the parties broke down, however, causing Michigan to file a motion to dismiss the second amended complaint on the same grounds as its first motion to dismiss: (1) GLEG's failure to state the precise location of the vessel in accordance with the Supplemental Rules, and (2) lack of federal subject-matter jurisdiction over the shipwreck.

On July 20, 2006, the court issued an order directing GLEG to show cause why it had failed to provide the precise location of the vessel to Michigan. The order directed the parties to file briefs addressing whether the complaint should be dismissed. On August 21, 2006, after reviewing the briefs filed in response to the July 20, 2006 order, the district court once again ordered GLEG to advise Michigan of the precise location of the vessel within ten days. The order informed GLEG that failure to provide Michigan with The Griffin's precise location would result in the dismissal of the complaint without prejudice.

GLEG failed to disclose the precise location of the vessel, and instead filed new motions requesting (1) an arrest warrant for the shipwreck to protect federal subject-matter jurisdiction, (2) a TRO against Michigan, and (3) an extension of time to disclose the vessel's precise location. The court denied GLEG's motions. It then dismissed GLEG's complaint without prejudice pursuant to the local rules of the Western District of Michigan, which allow the court to dismiss a complaint for failure to comply with a court order. *See* W.D. Mich. Local Civ. R. 41.1.

GLEG timely appealed. We must now determine whether the district court erred in (1) interpreting the Supplemental Rules to require GLEG to disclose the precise location of the shipwreck at the pleading stage, and (2) refusing to take additional steps to protect federal jurisdiction, such as arresting the vessel or issuing a TRO/preliminary injunction against Michigan, before dismissing GLEG's complaint.

## II. ANALYSIS

### A.  Standard of review

This court reviews a district court's legal conclusions de novo and its findings of fact under the clearly erroneous standard. *D.A.B.E., Inc. v. City of Toledo*, 393 F.3d 692, 695 (6th Cir. 2005). We review the dismissal of a complaint for failure to comply with a court order under the abuse-of-discretion standard, and will reverse the district court's ruling only if we have a definite and firm conviction that it has committed a clear error of judgment. *Link v. Wabash R. Co.*, 370 U.S. 626, 632 (1962); *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989). Likewise, we apply the abuse-of-discretion standard to review the denial of a protective order under Rule 26(c) of the Federal Rules of Civil Procedure and the denial of a request for a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure. *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 722 (6th Cir. 1996).

### B.  Federal law applicable to shipwrecks

Under federal law, title to lands beneath navigable waters within a state is held by the state. Submerged Lands Act, 43 U.S.C. § 1311(a). Title to shipwrecks, however, is governed by the ASA. 43 U.S.C. §§ 2101-2106. The ASA provides that the United States has title to all "abandoned" shipwrecks "embedded in submerged lands of a State," and that it transfers that title "to the State in or on whose submerged lands the shipwreck is located" if a state can prove that the shipwreck is both (1) abandoned, and (2) embedded in the submerged lands of the state (i.e., the bottomlands). 43 U.S.C. § 2105 (a)(1) & (c).

The ASA is significant because the 1987 statute overrides the old maritime laws of salvage and find and provides a method for states to assert claims of title to abandoned shipwrecks. *Fairport Int'l Exploration, Inc. v. The Shipwrecked Vessel, known as the Captain Lawrence*, 177 F.3d 491, 498 (6th Cir. 1999) (citing 43 U.S.C. § 2106(a)). Consequently, under the ASA, "[i]f a diver now discovers a long-lost ship embedded in the submerged lands of a State, a finding of abandonment leaves the diver with neither title nor a salvage award." *Id.*

Because the ASA intersects with the Eleventh Amendment, the Supreme Court has had to address when the Eleventh Amendment bars federal jurisdiction over shipwrecks to which a state claims title. The Court made clear in *California v. Deep Sea Research, Inc.*, 523 U.S. 491, 507-08 (1998), that when a state does not have actual possession over the *res* (i.e., the vessel), the Eleventh Amendment does not bar federal courts from determining the rights of the parties under maritime law or the ASA. As a result, so long as a state has not yet taken actual possession of a shipwreck, federal courts have jurisdiction to determine whether the ASA is applicable. *Id.* If a state has actual possession, however, or if the state otherwise satisfies the requirements of title under the ASA, the federal courts lack jurisdiction over a salvor's *in rem* admiralty claims. *See Fathom Exploration, LLC v. Unidentified Shipwrecked Vessel or Vessels*, 352 F. Supp. 2d 1218, 1227 (S.D. Ala. 2005) (explaining that the Eleventh Amendment does not bar a federal court from determining salvage rights so long as the state is not in actual possession of the *res*); *Zych v. Unidentified, Wrecked, and Abandoned Vessel, Believed to be SB Seabird*, 811 F. Supp. 1300, 1315 (N.D. Ill. 1992) (holding that if a state holds title to a shipwreck, federal courts lack jurisdiction over claims for salvage).

Because the Eleventh Amendment permits federal courts to hear claims under the ASA only if a shipwreck is *not* already in the actual possession of the state, the definition of "possession" is significant. Possession has been defined to mean actual possession, not merely constructive possession. *Deep Sea Research*, 523 U.S. at 507-08; *Fairport*, 177 F.3d at 497 n.3. There is no question in the present case that Michigan did not have actual possession over The Griffin at the time GLEG brought its *in rem* admiralty claim in federal court. As evidenced by its motion to dismiss, Michigan does not even know where the vessel is located. No Eleventh Amendment bar, therefore, prevented the district court from hearing GLEG's admiralty claim or from determining the rights of the parties under the ASA in the first instance.

This case presents an issue of first impression because prior cases decided under the ASA have centered around whether a particular shipwreck is "abandoned" or is within a state's "territorial waters"—not whether a shipwreck is "embedded" in the state's bottomlands. *See* Seena Foster, Annotation, *Validity, construction and appellation of Abandoned Shipwreck Act of 1987*, 163 A.L.R. Fed. 421 § 2b (2000) (noting that no court "has analyzed what is required to establish that wreckage is 'embedded.' Rather the parties have stipulated to this fact."); *see also Fairport*, 177 F.3d at 498-501 (remanding the case to the district court to determine whether the shipwreck had been abandoned for the purposes of the ASA and noting that there was no dispute over whether the shipwreck was embedded); *Fathom*, 352 F. Supp. 2d at 1227 (granting a motion for a more definite statement regarding the specifics of a shipwreck in order to determine, in part, if the vessel was within the state's territorial waters). As a result, the disclosure of the precise location of the shipwreck was not necessary in those cases.

In the present case, however, the question of whether the shipwreck is embedded in the bottomlands is what is in dispute. The precise location of the vessel is therefore of critical importance to Michigan, which needs access to the site in order to gather information about the shipwreck's embedded status for its responsive pleadings. As the district court noted, "to determine any rights it may have or wish to assert in this matter, the State must be given basic information, such as the precise location of [The Griffin], so that it can investigate its claim under the ASA and other law."

Relying on the Supplemental Rules, the district court found that GLEG had failed to comply with Rules C(2)(b) and E(2)(a), which govern pleadings in admiralty. Supplemental Rule C(2)(b) requires an admiralty complaint to "describe with *reasonable particularity* the property that is the subject of the action," while Supplemental Rule E(2)(a) requires that a complaint state "the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, *without moving for a more definite statement*, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Suppl. C(2)(b), E(2)(a) (emphases added).

The district court interpreted the Supplemental Rules to require GLEG to disclose the precise location of the vessel in an amended pleading before the court could arrest the shipwreck. GLEG refused to disclose the information, arguing that (1) if it revealed the precise location of the shipwreck before the district court had perfected federal jurisdiction, Michigan would be able to take actual possession of the vessel and invoke the Eleventh Amendment to divest the district court of jurisdiction over its claim, and (2) a protective order was required to prevent proprietary information and "trade secrets" from being leaked to the general public.

Although the district court issued a protective order sufficient to satisfy GLEG's interest in not disclosing the location of the shipwreck to the general public, the court refused to arrest the vessel or to otherwise perfect federal jurisdiction before requiring GLEG to reveal the shipwreck's precise location. We must therefore determine whether and under what circumstances (1) a district court must take steps to protect federal jurisdiction before requiring such a disclosure, and (2) the

Supplemental Rules may be read to compel a party to disclose the precise location of a shipwreck at the pleading stage.

We note at the outset that the facts of the present case require us to reconcile the centuries-old maritime law of salvage with the 21-year-old ASA. The ASA, which has supplanted many traditional maritime concepts, clearly requires federal courts to give due weight to the important interests that states have in abandoned shipwrecks embedded in their territorial waters. Maritime law, on the other hand, is premised on the notion that salvors have a right to have their claims heard in a federal forum. *Yukon Recovery, L.L.C. v. Certain Abandoned Prop.*, 205 F.3d 1189, 1196 (9th Cir. 2000) (stating that maritime law is designed to "encourage[] salvors to undertake risks to rescue imperiled maritime property"); *Int'l Aircraft Recovery, L.L.C. v. Unidentified, Wrecked and Abandoned Aircraft*, 218 F.3d 1255, 1261 (11th Cir. 2000) (same).

The two parties before us likewise have differing interests that must be given due consideration. Michigan has a legitimate interest in learning the precise location of the vessel in question so that it may determine whether the shipwreck is embedded in its bottomlands, thereby allowing Michigan to fully litigate its claim of title of the shipwreck under the ASA. GLEG, on the other hand, has a clear interest in retaining federal jurisdiction for the adjudication of its salvage claim—an interest compromised by requiring it to disclose the precise location of the vessel before federal jurisdiction has been perfected.

Although only a handful of cases have adjudicated the rights of parties under the ASA, each court to do so has taken a decisively practical approach and fashioned remedies and rules designed to balance the competing interests of the salvors and the states. *See, e.g., Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 424 F.3d 852, 860-61 (9th Cir. 2005) (protecting federal jurisdiction in an admiralty case by holding that the district court retained jurisdiction over a shipwreck pending the outcome of the first appeal even in the absence of a bond to preserve jurisdiction); *California v. Deep Sea Research*, 523 U.S. 491, 507 (1998) (holding that, "based on longstanding precedent respecting the federal courts' assumption of *in rem* admiralty jurisdiction over vessels that are not in the possession of a sovereign," the Eleventh Amendment will not bar courts from hearing claims under the ASA to determine if title belongs to the salvor or to the state); *Fairport v. The Shipwrecked Vessel, known as the Captain Lawrence*, 177 F.3d 491, 499-500 (6th Cir. 1999) (allowing the state to rely on both circumstantial evidence and inference to prove that a shipwrecked vessel has been abandoned); 3A-XXIII Benedict on Admiralty § 287 (explaining that admiralty courts have often relied on equitable principles and that the "overall object of doing justice to the parties has never yielded to the dogma of strictly following technical rules" or arbitrary procedures).

In reconciling the conflicting bodies of law and the diverging interests of the parties before us, we will likewise attempt to fashion a sensible remedy in this case. To do so, we first determine whether the Supplemental Rules require a salvor to disclose the precise location of a shipwreck at the pleading stage. We then turn to a discussion of federal-court jurisdiction in the context of the ASA and the Eleventh Amendment and analyze what steps a federal court should take to protect federal jurisdiction.

### C.   Sufficiency of the pleadings under the Supplemental Rules

Whether a complaint satisfies the particularity requirements of the Supplemental Rules is a legal question that appellate courts review de novo. *United States v. Mondragon*, 313 F.3d 862, 864 (4th Cir. 2002). In the present case, GLEG argues that the precise location of The Griffin should not be required at the pleading stage because pleadings in admiralty have historically been liberal. *See, e.g., E. J. Dupont de Nemours & Co. v. Vance*, 60 U.S. (19 How.) 162, 171 (1856) (holding, before the existence of the Supplemental Rules, that "[t]he rules of pleading in the admiralty are exceedingly simple"); 3A-XXIII Benedict on Admiralty § 287 (same). As Michigan points out,

however, the cases discussing admiralty's "liberal pleading" standards preceded the passage of both the Supplemental Rules and the ASA.

Recent caselaw addressing the Supplemental Rules supports Michigan's position and suggests that "the standard of particularity for complaints filed pursuant to the Supplemental Rules is more stringent than is that of the Federal Rules." *See United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1547 n.20 (11th Cir. 1987); *see also Mondragon*, 313 F.3d at 864-65 (explaining that the Supplemental Rules are designed to protect due process by "guard[ing] against the improper use of admiralty seizure proceedings"). The court in *Riverway Co. v. Spivey Marine & Harbor Service Co.*, 598 F. Supp. 909, 913 (S.D. Ill. 1984), explained that because "[a]n admiralty action *in rem* involves arrest and seizure of the offending vessel simply upon filing a verified complaint," the Supplemental Rules require pleading information sufficient to give all parties with a potential interest in the newly discovered shipwreck notice that the vessel has been discovered and an opportunity to undertake an investigation so that they may assert their claims. *See also Taylor v. Carryl*, 61 U.S. (20 How.) 583, 599-600 (1857) (discussing the notice process that accompanies an arrest).

Unfortunately, however, there is a dearth of caselaw addressing the scope and requirements of the Supplemental Rules as applied to shipwreck claims. The only court thus far to address whether an admiralty claim may be dismissed at the pleading stage for lack of specificity under the Supplemental Rules noted the "paucity of precedents interpreting [the Supplemental Rules] in the context of salvage operations and unidentified wreck sites." *Fathom Exploration, LLC v. Unidentified Shipwrecked Vessel or Vessels*, 352 F. Supp. 2d 1218, 1224 (S.D. Ala. 2005). That court did, however, interpret the Supplemental Rules to require a salvor to reveal whatever information it had about the location of a shipwreck when that information was necessary to address the issues in dispute by the parties and was readily available to the salvor. *Id.* at 1225-27.

In *Fathom*, the parties disputed whether a vessel was located in navigable waters owned by the state of Alabama or was within United States waters. Alabama filed a motion to dismiss, claiming that the salvor had failed to describe the location of the shipwreck "with reasonable particularity" as required by the Supplemental Rules. Alternatively, Alabama filed a motion for a more definite statement as to the location of the vessel. Rejecting what it called the state's "unduly formalistic, draconian construction of the Supplemental Rules that dismissal is mandated if a salvor brings an action for arrest of a shipwreck before it can positively identify the wreckage," the district court denied Alabama's motion to dismiss. *Id.* at 1224.

The *Fathom* court reasoned that because the salvor did not yet know many of the details related to the location of the shipwreck, which was spread out over a great distance on the ocean floor, there was no reasonable basis to "slam the federal courthouse door" on a salvor at the pleading stage simply because it had "not yet divined . . . an exhaustive description of a sunken vessel [it] has discovered." *Id.* at 1225. Nevertheless, the court did grant the state's request for a more definite statement, holding that the salvor was required to provide the state with the "basic information in its possession that might aid potential claimants in assessing the validity of their claims," and noting that salvors are required to reveal all information that is "reasonably available" about the shipwreck in their complaint. *Id.* at 1226-27.

The court in *Fathom* refused to dismiss the salvor's claim because (1) the salvor had very little information about the exact location of the vessel at the time of the proceeding, and (2) the general location provided by the salvor was sufficient to allow the state to form its responsive pleadings. *Id.* In the present case, however, GLEG knows the precise location of The Griffin and its artifacts, and there is a clear need for Michigan to have access to the actual location of the vessel in order to investigate whether it is embedded in the state's bottomlands. Because GLEG was able to comply with the district court's order to provide a more specific location, the district court had

the authority to dismiss GLEG's claim for failing to comply with its order. *See United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002) (holding that dismissal for failure to comply with a court order is not an abuse of discretion if the party had the ability to comply but chose not to).

A look at the language of Supplemental Rule E(2)(a) further supports the conclusion that courts should attempt to resolve disputes over the specificity of the pleadings by allowing the parties to amend their pleadings rather than granting a motion for a more definite statement. Supplemental Rule E(2)(a) specifically states that a complaint must state "the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, *without moving for a more definite statement*, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Suppl. E(2)(a) (emphasis added). The problem in the present case, therefore, was not the district court's decision to require specific details about the location of the shipwreck at the pleading stage, but rather its enforcement of that requirement before assuring the continuance of federal jurisdiction over GLEG's salvage claim.

We note that the kind of highly detailed and precise information as to the location of a shipwreck necessary in the present case will not be necessary in most admiralty cases. If the only dispute between the parties is whether a shipwreck is "abandoned," which is often the case, the precise location of the shipwreck is largely irrelevant and need not be disclosed. A general location will likewise be sufficient in most instances to allow the parties to determine in whose territorial waters a vessel lies. When the dispute between the parties is over whether a shipwreck is embedded, however, the precise location of the shipwreck will be necessary in order for the state to undertake an investigation and to frame its responsive pleadings.

A district court may therefore require a salvor to amend its pleadings to reveal the precise location of a shipwreck where (1) there is a clear need for a more precise location (e.g., the embedded status of the shipwreck under the ASA is in dispute), and (2) the requested information is available and in the salvor's possession. We now turn to the question of what steps a district court should take to protect federal jurisdiction before requiring such a disclosure.

### D. Eleventh Amendment immunity, the ASA, and the importance of protecting federal jurisdiction over admiralty claims

As GLEG has pointed out, requiring a salvor to disclose the precise location of a shipwreck before federal jurisdiction has been secured creates a risk that the state may take actual possession of the vessel in an attempt to divest the federal courts of jurisdiction over the salvor's claim. No court, however, has yet addressed what would happen if a state were to do so in an effort to prevent a federal court from determining the rights of the parties under the ASA.

Although the parties dispute both the definition and feasibility of "actual possession" in the present circumstances, we have no need to decide the issue because the district court did not rest its opinion on the ground that Michigan lacked the ability to take possession of The Griffin. The district court instead dismissed GLEG's jurisdictional concerns by expressing doubt that Michigan would try to divest the federal court of jurisdiction. Specifically, the court wrote that GLEG's "theory is premised on Intervenors, Michigan, effectively acting in bad faith in an effort to deprive the Court of subject matter jurisdiction, [but the] Court has no basis for ascribing such intentions to Intervenors." The court also noted that GLEG "has not offered any evidence which could be construed to support an inference that Intervenors intend to take actual physical possession of the wreck."

A review of the record, however, suggests that GLEG's concern that Michigan might attempt to divest the district court of jurisdiction is not unfounded. Michigan filed multiple motions claiming Eleventh Amendment immunity and asserting that the court lacked subject-matter

jurisdiction over GLEG's claim to The Griffin. Under these circumstances, GLEG reasonably sought assurances from the district court that disclosure of the precise location of the vessel would not lead to divestment of federal jurisdiction over its claim.

The federal courts have historically recognized that admiralty law is designed to "encourage[] salvors to undertake risks to rescue imperiled maritime property," *Yukon Recovery, L.L.C. v. Certain Abandoned Prop.*, 205 F.3d 1189, 1196 (9th Cir. 2000), and to "encourage rescue" generally. *Int'l Aircraft Recovery, L.L.C. v. Unidentified, Wrecked and Abandoned Aircraft*, 218 F.3d 1255, 1261 (11th Cir. 2000). As a result, federal courts have sought to retain jurisdiction over salvor's claims. *Fathom Exploration, L.L.C. v. Unidentified Shipwrecked Vessel or Vessels*, 352 F. Supp. 2d 1218, 1224-25 (S.D. Ala. 2005)(discussing the importance of retaining federal jurisdiction over admiralty claims in the first instance in order to encourage and protect salvage operations).

One way that the courts have protected admiralty jurisdiction is by refusing to allow acts of bad faith to be used to divest an admiralty court of jurisdiction. *See, e.g., The Rio Grande*, 90 U.S. (23 Wall.) 458, 465 (1874) (holding that the improper removal of the *res* from the custody of the federal government does not destroy subject-matter jurisdiction over an *in rem* admiralty claim); 2 Am. Jur. 2d Admiralty § 32 (2007) (emphasizing the importance of protecting federal jurisdiction from acts of bad faith, and stating that "[w]here a vessel has been seized and has come under the jurisdiction of the court, jurisdiction is not lost by reason of its later accidental, fraudulent, or improper removal from the territorial ambit of the court's jurisdiction").

The Supreme Court has made clear that courts faced with claims under the ASA should likewise seek to retain federal jurisdiction to fully adjudicate the parties' disputes. *California v. Deep Sea Research, Inc.*, 523 U.S. 491, 508 (1998). In *Deep Sea Research*, the Court held that where an admiralty claim is brought to the federal courts and a state intervenes to assert its rights under the ASA, the Eleventh Amendment may not be used to bar "complete adjudication" of the competing claims in federal court. *Id.* This ruling is clearly designed to protect federal jurisdiction over both the salvor's salvage claim and the state's claim under the ASA. We therefore hold that, before requiring GLEG to disclose the precise location of a shipwreck, the district court should have perfected federal jurisdiction. A discussion of the manner in which the court should have done so is elaborated below.

### E.     Arrest as a means of protecting federal jurisdiction

"An *in rem* action, which is the most common process for enforcing a claim for salvage service, depends on the court's having jurisdiction over the *res*, the property which is named as defendant." *R.M.S. Titanic, Inc., v. Haver*, 171 F.3d 943, 964 (4th Cir. 1999) (citations omitted). Because an *in rem* admiralty action is an action against property—in most instances, a vessel—courts may obtain jurisdiction by ensuring that there is a valid seizure and actual control over the vessel by a marshal of the court. *Id.*; *see also Taylor v. Carryl*, 61 U.S. (20 How.) 583, 591 (1857). It is the court's "exclusive custody and control over the property" that gives an admiralty court jurisdiction to adjudicate the rights of the salvor "against the world. " *Haver*, 171 F.3d at 964 (citation omitted).

To obtain possession over the *res*, district courts sitting in admiralty may issue a warrant of arrest for a physical part of a shipwreck (an "artifact") and, based on this arrest, exercise constructive jurisdiction over the entire shipwreck. *See* 3A-X Benedict on Admiralty § 137 (2007); *see also, e.g., R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 964, 967 (4th Cir. 1999) (recognizing that the district court had constructive *in rem* jurisdiction over a salvage claim because the salvors brought artifacts to the court); *Deep Sea Research*, 523 U.S. at 496 (recognizing a court's *in rem* admiralty jurisdiction on the basis that the salvor presented artifacts from the shipwreck, including china and a bottle of champagne). The arrest does not give the salvor any rights of ownership, but instead protects the salvor's right of salvage. *Havar*, 171 F.3d at 964. Due process is satisfied because, after

the arrest, formal public notice is given. *Id.* at 956 (commenting that if "notice is provided in a newspaper of general circulation, the whole world, it is said, are parties in an admiralty cause").

Although a warrant of arrest secures possession of the shipwreck and protects federal jurisdiction in an *in rem* admiralty action, it does *not* affect the adjudication of the parties' ultimate right of title. *Fl. Dept. of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 697 (1982) (citing *Tindal v. Wesley*, 167 U.S. 204, 223 (1897)). An arrest warrant therefore does not prevent the state from asserting its rights of ownership under the ASA.

Caselaw indicates that an arrest warrant is typically issued in an *in rem* action *before* the state intervenes. *See, e.g., Fathom*, 352 F. Supp. 2d at 1220 (explaining that it was the arrest warrant that first gave the state notice that a shipwreck had been found within the state's territorial waters); *Taylor*, 61 U.S. (20 How.) at 599-600 (noting that, in admiralty, it is "[t]he seizure of the *res*, and publication of the monition or invitation to appear [that] is regarded as equivalent to the particular service of process in the courts of law and equity[,]" thereby demonstrating that arrest is generally the procedure used to give notice to interested parties that they may wish to bring a claim related to the shipwreck).

In the present case, however, Michigan intervened before an arrest warrant was issued. The district court then declined to arrest the vessel, reasoning that because GLEG refused to disclose the precise location of the shipwreck, the company had failed to satisfy the pleading requirements laid out in Supplemental Rule C(3)(a)(i), which governs arrest. We note, for the sake of clarify, that Supplemental Rule C was amended in December of 2006. Although the amendment did not alter the content of the rule, the citation for what was Supplemental Rule C(3)(a)(ii)(A) has been changed to Supplemental Rule C(3)(a)(i). We are using the most recent citation in this opinion.

Supplemental Rule C(3)(a) specifies that, before issuing an arrest warrant, a court "must review the complaint and any supporting papers. If the conditions for an *in rem* action appear to exist, the court must issue an order directing the clerk to issue a warrant for the arrest of the vessel or other property that is the subject of the action." Fed. R. Civ. P. Suppl. C(3)(a)(i). The district court below interpreted Supplemental Rule C(3)(a) to mean that, before issuing an arrest warrant, it must make sure that the party has met the requirements of Supplemental Rules C(2) and E(2)(a), which ensure that the issuance of an arrest warrant satisfies due process. *See Riverway Co. v. Spivey Marine & Harbor Serv. Co.*, 598 F.Supp. 909, 913-14 (S.D. Ill. 1984) (discussing the role that the Supplemental Rules play in protecting due process).

Because the district court determined that GLEG had not complied with the particularity requirements of Supplemental Rules C(2) and E(2)(a) in the first instance (i.e., in its original complaint), the court held that the issuance of an arrest warrant would be improper. GLEG argues on appeal that the general information it provided was sufficient to satisfy the Supplemental Rules for the purpose of allowing the court to arrest the vessel in an *in rem* admiralty action. For the reasons discussed below, we agree.

### 1.   *Application of the Supplemental Rules as applied to an* in rem *action versus their application to the ASA*

To understand the significance of the Supplemental Rules in the present case, we need to distinguish between a court adjudicating the rights of a salvor in an *in rem* admiralty action and a court adjudicating the rights of the parties under the ASA after a state has intervened to claim title to a shipwreck. The justification for requiring the precise location of a vessel for the purposes of the ASA does not exist for the purposes of issuing an arrest warrant in an *in rem* admiralty proceeding.

Under the ASA, if the parties are disputing whether the shipwreck is embedded, the precise location is clearly necessary and due process concerns are heightened because actual title to the vessel is at issue. The arrest of a vessel in an *in rem* admiralty proceeding, on the other hand, does not affect title to the shipwreck, and due process concerns are satisfied by public notice about the vessel so long as the salvor provides a physical description sufficient to (1) give the public and other salvors working in the area notice that the specific vessel has been arrested, and (2) alert any potential owners who have lost a ship in the region that they may have an interest in the litigation. *See, e.g., Columbus-America Discovery Group v. Atlantic Mut. Ins. Co.*, 203 F.3d 291, 302 (4th Cir. 2000) (approving the description of the vessel described in *Columbus-America Discovery Group v. Atlantic Mut. Ins. Co.*, 974 F.2d 450 (1992), within broad coordinates of longitude and latitude that described a 15-mile radius). The precise location of the vessel, so necessary to the adjudication of a dispute over its embedded status under the ASA, is therefore unnecessary in the context of an *in rem* action where due process is satisfied so long as interested parties and the public have notice that a particular shipwreck has been arrested.

Because the general location of The Griffin as provided by GLEG in its last amended complaint gave adequate notice of the arrest to the public and any interested parties, the amended pleading was sufficient to allow the district court to arrest The Griffin. That same information, however, became insufficient after Michigan intervened to assert a claim under the ASA. The district court was therefore correct in finding that the Supplemental Rules allowed it to require such a disclosure after the state intervened to assert a claim under the ASA; its error was simply not first protecting GLEG's interest in preserving federal jurisdiction by arresting the vessel.

In sum, we hold that although a federal court may require a salvor to reveal the precise location of a vessel after a state has intervened to assert a claim under the ASA, the court must first ensure that the state cannot divest the federal court of jurisdiction. This means, in the present case, that the district court should have arrested The Griffin before requiring GLEG to disclose the vessel's precise location.

### 2.     *Additional considerations*

In light of our holding, we address a couple of practical considerations. The first point we wish to make is that we do not interpret the Supplemental Rules to require that the precise location of a shipwreck be disclosed in a salvor's original pleading. Rather, the district court may require a salvor to disclose the precise location of the shipwreck only when the state has intervened to assert a claim under the ASA and where there is a clear need for a more precise location. The court may do so by ordering the salvor to (1) amend its complaint to include an affirmative pledge that it will reveal the precise location of the vessel once the court has secured federal jurisdiction over the parties' claims, and (2) promptly disclose the location (possibly under seal) upon arrest of the vessel or face the dismissal of its complaint.

Second, we recognize that arresting The Griffin would normally entitle GLEG to certain salvage rights, and that salvage operations might jeopardize the interests of Michigan, which could eventually acquire title to the vessel under the ASA. *See Fathom*, 352 F. Supp. 2d at 1227 n.12 (recognizing that "the emergence of facts proving that the ASA applies" could immediately divest the salvor of any rights to the shipwreck). When "jurisdiction of the *res* is obtained by a seizure under process of the court," however, the parties are required "to abide by such order as the court may make concerning it." 2 Am. Jur. 2d Admiralty § 32 (2007) (citing *Cooper v. Reynolds*, 77 U.S. (10 Wall.) 308, 316 (1870) (holding that after a court obtains jurisdiction by attachment of a defendant's property, the court has the authority to render any judgment or decree regarding the *res* that the court finds appropriate)). The district court is therefore free to issue a conditional arrest warrant limiting salvage operations or to take other actions designed to protect the interests and concerns of both parties.

## III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.