IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
Northern Division

| | | |
|---|---|---|
| GREAT LAKES EXPLORATION GROUP LLC | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Civil Action No. 1:04-CV-375 |
| The Unidentified, Wrecked and (For Salvage-Right Purposes), Abandoned Sailing Vessel, her tackle, apparel, appurtenances, cargo, etc. located within a circle having a radius of 3.5 statute miles, whose center point is at coordinates 45° 32.8′ North latitude and 86° 41.5′ West longitude, | ) ) ) ) ) ) ) ) ) ) | HON. ROBERT HOLMES BELL<br><br>**BRIEF IN SUPPORT OF INTERVERNOR'S MOTION FOR SUMMARY JUDGMENT** |
| *In Rem* | ) ) | **Oral Argument Requested** |
| Defendant, | ) | |
| v. | | |
| STATE OF MICHIGAN DEPARTMENT OF HISTORY, ARTS, AND LIBRARIES AND MICHIGAN DEPARTMENT OF ENVIRONMENTAL QUALITY, | | |
| Intervenors. | | |

**BRIEF IN SUPPORT OF INTERVENOR'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This motion seeks dismissal of this action pursuant to Fed. R. Civ. P. Rule 56 because title to the Defendant Shipwreck is in the State of Michigan, and any action regarding the Defendant Shipwreck cannot therefore be brought in federal court due to the prohibitions found in the Eleventh Amendment to the United States Constitution. This Court should find that title to the Defendant Shipwreck is in the State because the wreck is both abandoned and embedded in

the submerged lands of Michigan, the two factors in the Abandoned Shipwreck Act that must be established for a state to have title to a shipwreck.[1] This motion will establish that there can be no legitimate dispute that these factors have been satisfied.

## STATEMENT OF FACTS

The facts are straightforward and most can be found in the Amended Complaint.[2] Plaintiff Great Lakes Exploration Group, L.L.C. (GLEG) asserts that it has discovered a shipwreck in Lake Michigan. GLEG alleges that the wreck is the Griffin, a ship built and owned by the French explorer La Salle that disappeared in 1671. GLEG seeks to be declared the owner and/or salvor of the Defendant Shipwreck. The State of Michigan intervened in the action with a limited appearance for the purpose of asserting its right as owner of the Defendant, and to seek dismissal of the litigation based on the State's Eleventh Amendment immunity. This Court did dismiss this case based in part on Plaintiff's refusal to disclose the precise location of the Defendant. Plaintiff appealed and the U.S. Court of Appeals for the Sixth Circuit reversed the dismissal and remanded with the suggestion that this Court issue a conditional arrest of the Defendant. The Court did issue such an arrest warrant, ordering Plaintiff to publish notice of the arrest in two newspapers. This notice, which advised that anyone who had a claim against the Defendant must assert it within ten days or lose the claim, was published by Plaintiff. No one other than the parties to the litigation has asserted claims against the Defendant.

The Court also ordered Plaintiff to provide the State with coordinates for the precise location of the Defendant, which Plaintiff did. The State was able to send divers to these locations on October 21 and 22, 2008. These divers found nothing, however, that could possibly

---

[1] 43 U.S.C. § 2105.
[2] Docket #124.

be the remnants of a 17th century sailing vessel, with the exception of one wooden timber protruding from the lake bed which had already been photographed by Plaintiff in 2003 or 2004. Plaintiff has previously posted these photos on its webpage and sent copies to Intervenor.[3] This timber was firmly embedded in the lake bed and had not materially changed its position since the original photos of it were taken by Plaintiffs.[4]

## ARGUMENT

I. **STANDARDS FOR DISMISSAL**

This motion is governed by F.R.Civ.P Rule 56 which states:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

The federal courts have explained how this rule should be applied:

> In evaluating summary judgment, we must view all the facts and the inferences drawn from it in the light most favorable to the nonmoving party. *Kleiber [v. Honda of Am. Mfg., Inc.,* 485 F.3d 862 (6th Cir. 2007)], 485 F.3d at 868. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Only disputed material facts, those "that might affect the outcome of the suit under the governing law," will preclude summary judgment. *Id.* at 248. The function of the court in assessing a summary judgment motion is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Walton v. Ford Motor Co.*, 424

---

[3] See Affidavit of Wayne Lusardi, submitted with this motion, but filed under seal (Lusardi Affidavit), as well as the previous Affidavit of Mr. Lusardi, Docket #10 and Plaintiff's filing Docket #58, bates nos. 000041 and 000045.
[4] Lusardi Affidavit.

F.3d 481, 485 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).[5]

Here the pleadings, affidavits and other materials in the file without more establish that the Defendant is both abandoned and embedded in the bottomlands of Lake Michigan, and that title to Defendant therefore rests in the state. Alternatively, any material factual questions that the Court might have are indisputably answered in the accompanying affidavits of Wayne Lusardi, the state's Maritime Archeologist, and counsel for Intervenor.

## II.   THE ABANDONED SHIPWRECK ACT

The Abandoned Shipwreck Act of 1987 (ASA) was enacted to clarify the status of shipwrecks found in United States waters, specifically, to vest title in a state to abandoned wrecks that have become embedded in submerged lands of that state. The language of the ASA that accomplishes this is straightforward:

> § 2105.  Rights of ownership
>
> (a) United States title. The United States asserts title to any abandoned shipwreck that is--
>   (1) embedded in submerged lands of a State;
>   (2) embedded in coralline formations protected by a State on submerged lands of a State; or
>   (3) on submerged lands of a State and is included in or determined eligible for inclusion in the National Register.
>                                        * * * *
>
> (c) Transfer of title to States. The title of the United States to any abandoned shipwreck asserted under subsection (a) of this section is transferred to the State in or on whose submerged lands the shipwreck is located.[6]

---

[5] *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).
[6] 43 U.S.C.§ 2105.

Thus, if a state can show that a particular shipwreck is both abandoned and embedded in its submerged lands, title to that wreck will be transferred to the state.[7] Here, there can be no legitimate dispute that the wreck in question is both abandoned and embedded in Michigan's submerged lands. Title therefore has vested in the State.

### III. THE DEFENDANT IS ABANDONED

#### A. The Alleged Defendant Is A Long-Lost Shipwreck

There can be no dispute that the Defendant Shipwreck has been abandoned. The Second Amended Complaint states that the Defendant Shipwreck "is the remains of a sailing ship which sank scores of years ago."[8] The Court of Appeals noted that Plaintiff GLEG is contending here that the Defendant is the wreck of the Griffin, a sailing ship last seen on September 18, 1670.[9] This is perfectly consistent with the allegation in at least ten places in the Second Amended Complaint that the Defendant has in fact been "abandoned." Intervenor has admitted in its answer that the Defendant is abandoned,[10] and on the basis of the Complaint and Answer alone, this fact has been established.

The indisputable facts and law support this conclusion. The U.S. Supreme Court has held that "abandonment" for purposes of the ASA is the same as that concept in admiralty law.[11] A finding of abandonment under admiralty law generally arises in the context of a claim under the law of "finds" where a party possessing a shipwreck claims that he or she should be declared the

---

[7] That transfer of title happens immediately. *Fairport Int'l Exploration, Inc. v. Shipwrecked Vessel*, 177 F.3d 491, 498 (6th Cir. 1999).
[8] Docket #124, ¶ 11.
[9] *Great Lakes Exploration Group* at 685-686. This date probably should be September 18, 1679.
[10] Answer to Second Amended Complaint, Docket #123, ¶¶ 2, 5, and 13.
[11] *California v. Deep Sea Research*, 523 U.S. 491, 508 (U.S. 1998).

5

new owner of the wreck because the former owner has abandoned it.[12]  If the court does not find abandonment, then the party seeking relief generally must do so under the law of salvage which may allow a reward for salvage services, but does not permit transfer of title to the wreck or its contents.[13]

Several courts that have considered this issue have held that it is reasonable to imply abandonment in the case of a long lost historical shipwreck.  For example, in the *Fairport* case, the U.S. Court of Appeals for the Sixth Circuit addressed the abandonment issue:

> We agree that lapse of time, alone, does not necessarily establish abandonment, see e.g., *Wilkie*, 29 F. Cas. at 1247, and an owner's failure to return to a shipwreck site does not necessarily prove abandonment, but we recognize that a combination of several facts, proved clearly and convincingly, see Part III.C infra, may support a finding that an owner has abandoned a shipwreck. Rigid adherence to a doctrine requiring express abandonment would require courts to "stretch[] a fiction to absurd lengths," *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 569 F.2d 330, 337 (5th Cir. 1978), where courts encounter claims to ancient shipwrecks with long-forgotten and undiscoverable owners.[14]

The *Fairport* opinion affirmatively rejected decisions from other circuits that had required a finding of express abandonment of a vessel before allowing a finding of legal abandonment.  It based this finding in part on the ASA itself and on its legislative history.[15]

---

[12] In fact Plaintiff here is making such a claim.  Docket #124, Count One and prayer for relief.
[13] *Fairport Int'l Exploration, Inc. v. Shipwrecked Vessel*, 177 F.3d 491, 498 (6th Cir.1999). Although the Supreme Court has consulted admiralty law to obtain a definition of "abandoned" as used in the ASA, the law of salvage and finds does not apply to a wreck subject to the ASA. 43 U.S.C. § 2106(a); *Fairport*, at 498.
[14] *Fairport* at 499-500.
[15] "We recognize that the legislative history of the ASA also supports this view. See 1988 U.S.C.C.A.N. 365, 366 ('The term 'abandoned' does not require the original owner to actively disclaim title or ownership. The abandonment or relinquishment of ownership rights may be implied or otherwise inferred . . . .')." *Id.*

Given that the alleged Defendant sank over 300 years ago, there can be no dispute that it is an "ancient shipwreck[] with long-forgotten and undiscoverable owners." The Defendant is abandoned.

**B.    No Owner Has Come Forward.**

That the Defendant wreck is abandoned is confirmed by the failure of anyone claiming a pre-existing ownership interest to come forward in response to this lawsuit. This Court ordered GLEG to prepare a notice of the arrest of the Defendant for publication in two newspapers (Docket #114). Such notice was delivered to the U.S. Marshal for publication on July 10, 2008 through July 14, 2008.[16] The Arrest Order states that any persons claiming any interest in the Defendant Shipwreck must file with the Clerk of the Court a verified claim within ten days after the last day on which the public notice appears, and must file an answer within twenty days after the filing of the claim.[17] The Notice that was published in the Grand Rapids Press and the Marquette Mining Journal also specifically warned that anyone with a claim must file it within ten days of the last day on which the Notice appears "on pain of being barred of all relief."[18] The State has received no notice of any claim actually filed in this Court in response to the official published notice, nor is the filing of such a claim reflected in the Court's civil docket for this case.

Several federal courts have held that the failure of an interested party to lay claim to a shipwreck after publication of the required notice is proof of abandonment. For example, in *Columbus-America Discovery Group v. Atlantic Mut. Ins. Co.*,[19] the court noted that

---

[16] (Docket #118 and #120).
[17] (Docket #114, p.3).
[18] See Notices attached as Exhibits A and B to Affidavit of Louis B. Reinwasser.
[19] 974 F.2d 450 (4th Cir. 1992).

7

abandonment can be found where an owner expressly states that the wreck has been abandonment, or where "[i]n the second type of case, items are recovered from ancient shipwrecks and no owner appears in court to claim them."[20] The court then cited several cases with approval where the courts have found that a shipwreck has been abandoned when the former owner fails to show up in court. For instance, it referred to the First Circuit case, *Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked & Abandoned Steam Vessel*,[21] where the court had no trouble finding that a vessel that had sunk in 1906 was abandoned when, after an *in rem* action had been filed, "no person or firm appeared to assert any overall claim of ownership."[22] Similarly, the court in *Hatteras, Inc. v.. The U.S.S. Hatteras, her engines, etc., in rem, and United States of America, in personam*,[23] noted "While mere nonuse of property and lapse of time without more do not establish abandonment, they may, under circumstances where the owner has otherwise failed to act or assert any claim to property, support an inference of intent to abandon."[24] Similarly in *MAREX Int'l v. Unidentified, Wrecked & Abandoned Vessel*[25] the court found abandonment of a vessel that sank in 1840, stating:

> In the present case, neither the owner nor his heirs have ever made any attempt to recover the vessel or the contents thereof since its sinking in 1840. Nor have the owner or his heirs asserted any claim in the present action. The Court concludes

---

[20] *Id.* at 461.
[21] 833 F.2d 1059 (1st Cir. 1987).
[22] *Id.* at 1065.
[23] 1984 AMC 1094 (S.D. Tex. 1981)
[24] *Id.* at n. 5.
[25] 952 F. Supp. 825, 828-829 (S.D. Ga. 1997).

that the S.S. NORTH CAROLINA has been abandoned by its owner and therefore the law of finds applies, making plaintiff's suit for title appropriate.[26]

It would be reasonable to infer from the fact that the Griffin sank over 300 years ago, that the wreck of this vessel is today abandoned on the bottom of Lake Michigan. Combined with the fact that after due notice, no owner has come forward to intervene in this action or otherwise make a claim for the Defendant, only one conclusion can be reached – the shipwreck in question has been abandoned for purposes of application of the ASA.

## IV. THE DEFENDANT IS EMBEDDED

As noted above, the second requirement for application of the ASA is a finding that the shipwreck in question is "embedded in submerged lands of a State." The ASA defines "embedded" to mean "firmly affixed in the submerged lands or in coralline formations such that the use of tools of excavation is required in order to move the bottom sediments to gain access to the shipwreck, its cargo, and any part thereof..."[27] At first blush, it might seem that whether a shipwreck is "embedded" or not is an odd standard for determining whether a state has title to the wreck. This concept has been clarified. "Congress only cared to transfer ownership and ensure protection of shipwrecks of 'historic significance,' House Report at 365. . .In the ASA, the concept of 'embeddedness' serves as a proxy for historic value."[28] Although the *Zych* court did

---

[26] The *Columbus-America* court noted "other reported cases where no owner appeared and the law of finds was applied are *Klein v. The Unidentified Wrecked and Abandoned Sailing Vessel*, 758 F.2d 1511 (11th Cir. 1985) (Eighteenth Century English vessel); *Wiggins [v. 1100 Tons, More or Less, of Italian Marble,* 186 F. Supp. 452, 456 (E.D. Va. 1960)], (Norwegian bark carrying Italian marble which sank in 1894); *Richard v. Pringle*, 293 F. Supp. 981 (E.D.N.Y. 1968) (propeller from a 1902 shipwreck); *Chance v. Certain Artifacts Found and Salvaged From THE NASHVILLE a/k/a THE RATTLESNAKE*, 606 F. Supp. 801 (S.D. Ga. 1984), aff'd, 775 F.2d 302 (11th Cir. 1985) (privately owned Confederate pirate ship sunk in 1863); and Indian River Recovery Co. v. THE CHINA, 645 F. Supp. 141 (D. Del. 1986) (Nineteenth Century vessel)." *Columbus-America* at 462.
[27] 43 U.S.C. 2102.
[28] *Zych v. Unidentified, Wrecked & Abandoned Vessel, etc.*, 941 F.2d 525, 529 (7th Cir. 1991).

9

not explain this statement further, a reasonable interpretation is that Congress believed that if a shipwreck had been on the bottom of the ocean or a lake long enough to be embedded, that it would have some historical significance.

If the Defendant in the case at hand is in fact the Griffin as alleged, there can be no doubt that it has tremendous historic significance.[29] And the fact that it has been on the bottom of Lake Michigan for over 300 years strongly suggests that it would become at least partially buried in the lake bottom.

That the Defendant is embedded in Lake Michigan is confirmed by the affidavit of Wayne Lusardi, Michigan's Maritime Archeologist, which proves that the artifact that Plaintiff identifies as part of the Defendant is firmly stuck in the lake bed. This is corroborated by the photos of the artifact attached as exhibits to the Lusardi affidavit, as well as the video excerpt of Mr. Lusardi's dive to the artifact. It is clear from these pictures that this ten plus foot object would have to be firmly embedded in the lake bottom or it would be lying on its side or floating unattached. In fact, a picture of this object was sent to Mr. Lusardi by Mr. Libert back in 2004[30] showing it in essentially the same position and attitude as it is today. As noted by Mr. Lusardi, given the high energy conditions in this area of Lake Michigan, if this object wasn't firmly embedded in the lake bed, the wave and current action would have dislodged it years ago.[31]

---

[29] See affidavit of Steven Libert previously filed in this matter. Docket # 93, ¶ 31.
[30] Libert Affidavit, Docket #93, ¶33.
[31] Plaintiff itself recognized these "high energy" conditions in Lake Michigan and their propensity to scatter objects on the lake bottom. Plaintiff Great Lakes Exploration's Brief in Opposition to Intervenors' Motion to Dismiss (Docket # 20) filed January 27, 2005, p. 10.

Even Plaintiffs' own proposed expert establishes that this object is embedded. In the affidavit of Scott J. Demel,[32] an archeologist from the Field Museum in Chicago, Mr. Demel states that he:

> would not recommend the use of mechanical devices for the initial investigation or testing phase of the shipwreck site. At the current stage of the investigation only limited testing is proposed, which does not include formal excavation. After the initial investigation, the next phase of inquiry ***may be to employ the use of mechanical devices in a limited capacity to aid in further testing, and perhaps also in the actual excavation and recovery of the vessel and its components***." (emphasis added).

This is consistent with the conclusions apparently stated in a letter from Mr. Demel to Steven Libert dated April 21, 2004.[33] Based on his "first hand observations" of the investigation site, Mr. Demel stated in that letter that "the bowsprit appears to be attached to a larger object below the sand and silt." If he is correct, then he is also surely correct that the next phase of the inquiry and any excavation would utilize mechanical devices to gain access to the Defendant. The definition of "embedded" in the ASA is not limited to whether excavation tools are necessary for the initial phase of an underwater investigation. Under this definition, an object is embedded if excavation tools are required at *any* phase of the investigation to gain access to the object. Such is the case here and based on the irrefutable evidence, the Court should find that the Defendant is embedded for purposes of the ASA.

## V. <u>The Eleventh Amendment Precludes Further Proceedings In This Court</u>

Once the Court finds that Michigan has title to the wreck pursuant to the ASA, it must dismiss the case because the State and its property is not subject to suit in federal court. "If a

---

[32] Attached as Exhibit 1 to Plaintiff Great Lakes Exploration's Brief in Opposition to Intervenors' Motion to Dismiss (Docket # 20) filed January 27, 2005.

[33] Copy attached as Exhibit A. Counsel is unsure of the origins of this letter, but has no reason to believe it is other than what it appears to be.

state has actual possession, however, *or if the state otherwise satisfies the requirements of title under the ASA*, the federal courts lack jurisdiction over a salvor's in rem admiralty claims." *Great Lakes Exploration Group, LLC v. Unidentified Wrecked & Abandoned Sailing Vessel.*[34]

---

[34] 522 F.3d 682, 688 (6th Cir. 2008)(emphasis added).

## CONCLUSION

There is no genuine dispute that the Defendant Shipwreck is both abandoned and embedded in the bottom of Lake Michigan. Under the ASA, title has passed to the State. This Court therefore no longer has jurisdiction of this case which should be dismissed pursuant to this motion.

Respectfully submitted,

Michael A. Cox
Attorney General

/s/
Louis B. Reinwasser (P37757)
Assistant Attorney General
Environment, Natural Resources
  and Agriculture Division
P.O. Box 30755
Lansing, MI  48909
517/373-7540
Email:  reinwasserl@michigan.gov

Dated:  December 23, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.

/s/  Louis B. Reinwasser

Louis B. Reinwasser (P37757)
Assistant Attorney General
Environment, Natural Resources
  and Agriculture Division
P.O. Box 30755
Lansing, MI  48909
517/373-7540
Email:  reinwasserl@michigan.gov